IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT, IN AND FOR MARION COUNTY, FLORIDA

CASE NO. 09-636-CA-G

METRY KELLY and EUGENIE KELLY, his wife,

        Plaintiffs

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation,

        Defendant

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DEFENDANT'S MEMORANDUM OF LAW

Plaintiffs, by counsel, respond to Defendant's Motion for Partial Summary Judgement and to Defendant's "Memorandum of Law" in support thereof, and say:

1. Defendant's "Memorandum of Law" cites no case law. It cites only Fla.R.Civ.P. 1.510 (c) for the standard of review and language in the subject insurance policy, policy number 37 1547-A03-19, which contains stackable uninsured motorist coverage, called coverage U, and lists Plaintiffs' 1973 Chevrolet Corvette.

2. Unfortunately for Defendant the cited policy language violates Florida Statute 627.727 (9) and its subparagraph (d), which state:

> (9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer:
>
> > (d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insureds <u>for which uninsured motorist coverage was not purchased.</u> (emphasis added).

OCT 0 7 2009

3. The policy language Defendant relies on is:

"There is no coverage; . . .

2) For bodily injury to an insured:

a. While occupying a motor vehicle owned by or leased to you, your spouse, or any relative <u>if it is not insured for this coverage under this policy.</u> (emphasis added).

See page 3 of Defendant's "Memorandum of Law."

4. Plaintiffs <u>did</u> buy uninsured motorist coverage for the vehicle Metry Kelly was in when the crash occurred, the 2000 GMC pickup truck listed in Defendant's policy number 159 0586-D11-59B, as required by Florida Statute 627.727 (9) (d), quoted above. The policy language quoted above, from policy number 37 1547-A03-19 listing the 1973 Chevrolet Corvette, however, requires that the vehicle Mr. Kelly was in when the crash occurred be <u>"insured for this coverage"</u> [stackable coverage U] <u>"under this policy [policy number 37 1547-A03-19, listing the 1973 Chevrolet Corvette]."</u> (emphasis added).

5. The policy language violates the statute as the policy language limits the circumstances under which the UM coverage is afforded far beyond what the statute allows. In other words, the policy language is much more limited in coverage than the limitation allowed by the statute, quoted above.

6. Therefore the overly-limiting policy language is a nullity and Plaintiffs have UM coverage in the policy listing the 2000 GMC pickup truck, and stackable UM coverage in the policy listing the 1973 Corvette. The stackable UM coverage in the policy listing the 1973 Corvette is available because Plaintiffs purchased UM coverage for the 2000 GMC pickup truck Mr. Kelly was driving at the time of the crash, as required by Florida Statute (9) (d), quoted above.

7. Also, Plaintiffs paid a premium for UM coverage in both the policy covering the 2000 GMC pickup Metry Kelly was driving at the time of the crash, policy number 159 0586-D11-59B,

and they paid a premium for UM coverage in the policy covering the 1973 Chevrolet Corvette, policy number 37 1547-A03-19. "Thus, if the insured pays separate premiums for uninsured motorist protection on separate vehicles, the insured should get the benefit of coverage for each individual premium paid." United Services Automobile Association v. Roth, 744 So.2d 1227, 1229 (Fla.App.4 Dist. 1999). That case involved an umbrella policy for which the insured did not pay additional premiums for additional vehicles, so the umbrella coverage did not stack (only one UM limit was paid from the umbrella policy). A copy of United Services Automobile Association is attached hereto.

8. In Collins v. Government Employees Insurance Company, 922 So.2d 353, 354, 355 (Fla.App. 3 Dist. 2006), plaintiffs unsuccessfully argued for the return of the additional premium paid for stackable UM coverage when she owned only one automobile.

> "Uninsured motorist coverage may be stacked based on the number of uninsured motorist coverages for which the insured has paid a premium rather than just the number of automobiles owned by the insured. <u>It is important to note that uninsured motorist coverage was created by Florida statute and insurers must strictly follow the statutory requirements.</u>" (emphasis added).
>
> It is true that stacked uninsured motorist coverage enables the insured to stack the coverage for one owned automobile onto the coverage of another owned automobile. That is not the only benefit of stacked coverage. Even with one automobile, should the insured have an uninsured motorist claim, stacked coverage provides certain benefits above those received with non-stacked. Section 627.727 (9) (a)-(e) delineates the limitations in uninsured motorist coverage, in addition to the limitation of not being able to stack the coverage from one vehicle onto another, when non-stacked insurance is obtained for a twenty percent decrease in premium. When the insured purchased stacked coverage, the limitations of Section 627.727 (9) (a)-(e) do not apply thereby giving the insured certain benefits for the twenty percent additional premium even when only one vehicle is owned."

A copy of Collins is attached hereto.

9. In Flores v. Allstate Insurance Company, 8119 So.2d 740, 744, 745 (Fla. 2002), the Florida Supreme Court held as a matter of first impression that a fraud in connection with a claim

for PIP benefits did not void the UM coverage. Pertinent to the case sub judice, Justice Pariente said:

> As a fundamental proposition, where the language in an insurance policy is subject to differing interpretations, the policy language "should be construed liberally in favor of the insured and strictly against the insurer." *State Farm Fire & Cas. Co. V. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla.1998). *See Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000). Moreover, it is axiomatic that "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is ambiguous." *Auto-Owners*, 756 So.2d at 34. Policy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy, and exclusions to coverage are construed even more strictly against the insurer than coverage clauses. *See id.*

10. Justice Pariente went on to note that "insurers issuing motor vehicle policies in Florida also are mandated by statute to offer UM coverage unless the insured has expressly rejected the coverage. *See generally § 627.727, Fla. Stat. (1997)*. Pertinent to the case sub judice, she states

> Regarding attempts by insurers to limit UM coverage, we explained in *Salas v. Liberty Mutual Fire Insurance Co.*, 272 So.2d 1, 5 (Fla.1972), that the intention of the Legislature, as mirrored by the decisions of this Court, is plain to provide for the broad protection of the citizens of this State against uninsured motorists. *As a creature of statute rather than a matter for contemplation of the parties in creating insurance policies*, the uninsured motorist protection is not susceptible to the attempts of the insurer to limit or negate that protection.
>
> (Emphasis supplied). Because the uninsured motorist statute was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist; it is not to be 'whittled away' by exclusions and exceptions." *Young*, 753 S.2d at 83.
>
> The principles articulated in *Salas* and reiterated in *Young* do not mean that there is a blanket prohibition against an insurance policy containing general conditions affecting coverage or exclusions on coverage as long as the limitation is consistent with the purposes of the UM statute. See, e.g., *Carguillo v. State Farm Mut. Auto. Ins. Co.*, 529 S.2d 276 (Fla.1988). However, these principles must be kept in mind when considering restrictions on statutorily mandated coverage <u>because of the courts' additional obligation to invalidate exclusions on coverage that are inconsistent with the purpose of the UM statute</u>. (emphasis added).

> In light of the overarching purposes behind the statutory protection, conditions or exclusions must be carefully scrutinized first to determine whether the condition or exclusion unambiguously excludes or limits coverage, and then to determine, if so, <u>whether enforcement of a specific provision would be contrary to the purpose of the uninsured motorist statute</u>. (emphasis added).

A copy of <u>Flores</u> is attached hereto.

11. The policy language which Defendant seeks to impose quoted in paragraph 3, above, exceeds the statutory authority quoted in paragraph 2, above, and is therefore invalid and unenforceable. One wonders how many other insureds were improperly denied uninsured motorist coverage by Defendant on the basis of this statutorily unauthorized, overly-restrictive policy language.

12. Since the issue before this court is purely a question of law, Plaintiffs ask the court to deny Defendant's Motion for Partial Summary Judgment and to enter partial summary judgment in their favor and to award attorney's fees to Plaintiffs pursuant to Fla. Stat. 627.727(8).

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this 6th of October, 2009, to Michael S. Donsky, Esquire, Silverleaf Office Park, 6224 N.W. 43rd Street, Suite B, Gainesville, Florida 32653.

PICCIN LAW FIRM
Post Office Box 159,
Ocala, FL 34478-0159
(352)351-5446
Attorney for Plaintiffs

John H. Piccin
Florida Bar # 0194033

cc: Honorable Brian Lambert, Circuit Judge