UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

METRY KELLY and EUGENIE KELLY,  )
his wife, and all others similarly situated,  )
                                  )
       Plaintiffs,              )
                                  )
vs.                                )     Case No. 5:10-cv-194-TJC-GRJ
                                  )
STATE FARM MUTUAL AUTOMOBILE  )
INSURANCE COMPANY, a foreign  )
insurance corporation,            )
                                  )
       Defendant.             )
_____)

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND**

COMES NOW Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), and respectfully submits this response in opposition to Plaintiffs' Motion to Remand (Doc. No. 19).

**INTRODUCTION**

This Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because Plaintiffs have placed more than $5,000,000 in controversy and all other jurisdictional prerequisites have been met. Any common sense assessment of the plain language of Plaintiffs' Class Action Complaint reveals both the size of the putative class and the claims being placed at issue. Plaintiffs' arguments to the contrary are simply inconsistent with the governing law. Plaintiffs argue that (1) this Court should ignore any information that does not come from Plaintiffs themselves, and (2) any attempt to assess the amount in controversy requires "excessive speculation." These arguments are unpersuasive,

as they are based on Plaintiffs' interpretation of dicta set forth in *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007), that was explicitly rejected by the Eleventh Circuit – one day after Plaintiffs filed their motion to remand – in *Pretka v. Kolter City Plaza II, Inc.*, No. 10-11471, 2010 WL 2278358 (11th Cir. June 8, 2010).

First, *Pretka* makes clear that, in assessing jurisdiction, this Court shall consider the Declaration of Jay Hieb ("Hieb Decl."), attached as Exhibit B to State Farm's Notice of Removal filed with this Court on May 7, 2010.  (*See* Doc. No. 1, Ex. B).  Plaintiffs cannot deny State Farm's right of removal simply because they have artfully pled their class action complaint and refused to request a specific amount of relief.  Second, *Pretka* also makes clear that the law does not demand perfect knowledge of the precise amount each class member would be entitled to recover if their claims were successful, but rather merely requires State Farm to show that it is more likely than not that Plaintiffs are placing more than $5,000,000 at issue.  And, in making this showing, State Farm is entitled to present evidence and draw reasonable inferences, deductions, and extrapolations from the allegations in the Class Action Complaint and the additional evidence submitted in support of CAFA removal.  This kind of reasoning is not to be rejected as impermissible conjecture, speculation or judicial star gazing.

A proper common sense assessment of the Class Action Complaint and the evidence submitted in support of removal provides more than sufficient support for this Court's CAFA jurisdiction.  Plaintiffs allege a class of more than 1,000 members who contend that they are entitled to stackable uninsured/underinsured motorist ("UM") coverage, meaning that State Farm needs to show that it is more likely than not that the average amount in controversy for

each class member is at least $5,000.  Plaintiffs themselves claim entitlement to $100,000 in

purportedly stackable coverage, and the Hieb Declaration establishes that, as of March 31,

2010, $78,923.00 is the average per person policy limit for UM coverage provided under

private passenger automobile policies issued by State Farm in the State of Florida.  (Hieb

Decl., Doc. No. 1, Ex. B, ¶ 4,).  And, State Farm does not issue automobile policies in

Florida with UM coverage in an amount less than $10,000.  (*Id.*, ¶ 5).

While it may be speculative to specify the exact dollar amount at issue in this case, it

is not speculative to conclude that the amount, whatever it is, exceeds $5,000,000.  Far from

requiring "excessive speculation," the jurisdictional amount is shown to be satisfied from

reasonable inferences, deductions and extrapolations from Plaintiffs' claims and the evidence

before this Court, which is precisely what the Eleventh Circuit recently embraced in *Pretka*.

As a result, Plaintiffs' motion to remand should be denied.

## BACKGROUND

On February 3, 2009, Plaintiffs initiated suit against State Farm in the Circuit Court

for the Fifth Judicial Circuit in and for Marion County, Florida.  (*See* Doc. No. 2, Compl.).

The initial complaint set forth Plaintiffs' individual claims seeking UM coverage for

damages arising from an automobile accident involving Plaintiff Metry Kelly.  The initial

complaint did not assert any putative class claims.  Following a year of discovery, Plaintiffs

sought and were granted leave to file the Class Action Complaint, which, for the first time,

raised allegations pertaining to the putative class.  (*See* Doc. No. 10).[1]  On April 8, 2010,

---

[1] While not at issue in this motion, State Farm denies that the cited statute even applies to Plaintiffs'
purportedly stackable "Policy B," which was issued and delivered to Plaintiffs in the State of Maine,
not Florida.  *See Sims v. New Falls Corp.,* No. 3D08-133, 2010 WL 2077145 (Fla. 3d Dist. May 26,

State Farm was served with the state court's order declaring the Class Action Complaint properly filed. (*See* Doc. No. 1, Ex. A, Order Granting Pl.'s Mot. for Leave to File First Am. Class Action Compl.)). State Farm timely removed this action, pursuant to CAFA, on May 7, 2010.

The Class Action Complaint alleges that State Farm systematically and improperly denies the availability of "stackable" UM coverage provided under separate automobile insurance policies issued by State Farm. (*See generally* Class Action Compl., Doc. No. 10, ¶¶ 14-21). Specifically, Plaintiffs contend that State Farm has issued "thousands" of automobile insurance policies in the State of Florida which employ anti-stacking policy language in violation of Florida Statute § 627.727(9)(d). (*See id.* at ¶¶ 16, 18-19, 20-21). Based on a breach of contract theory, Plaintiffs allege that "State Farm is liable to Plaintiffs and [the putative] class members for the full amount of stackable uninsured motorist coverage denied under the illegal language." (*Id.*, ¶ 21).[2] Plaintiffs seek to recover class-wide actual damages, declaratory and injunctive relief, interest, costs, and attorneys' fees. (*See id.*, ¶¶ 21, 49-50, Prayer for Relief at 12). Plaintiffs estimate that "the class contains more than 1,000 persons." (*Id.*, ¶ 27). Plaintiffs do not allege a specific amount of damages for the putative class.

---

2010) (noting that Florida follows the choice-of-law doctrine of *lex loci contractus*, which applies the law of the state in which the contract was made); *see also State Farm Mut. Auto. Ins. Co. v. Duckworth*, 660 F. Supp. 2d 1323 (M.D. Fla. 2009) (holding that because automobile policies were executed in Maryland, Maryland law, which prohibited stacking, applied to action for UM benefits alleging stackable coverage).

[2] Plaintiffs also maintain their individual claims against State Farm, which State Farm moved to dismiss on May 14, 2010. (*See* Def.'s Mot. to Dismiss, For a More Definite Statement and/or to Strike Pl.'s Claims, Doc. No. 13 at 9-12).

Plaintiffs request this Court to remand the action back to the Circuit Court for the Fifth Judicial Circuit in and for Marion County, Florida.  Plaintiffs' sole contention is that State Farm has not met its burden of showing that it is more likely than not that Plaintiffs' claims put at issue more than $5,000,000, the aggregate amount in controversy required for removal under CAFA.

## ARGUMENT AND CITATION TO AUTHORITY

### I.   The Legal Standard for CAFA Removal. [3]

Congress enacted CAFA to expand federal jurisdiction over proposed class actions. CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (1) the number of proposed class members is not less than 100; (2) any member of the proposed plaintiff class is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2), (d)(5) & § 1453(b); *see also Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006).   These requirements of CAFA constitute the jurisdictional prerequisites to federal court jurisdiction, *see Pretka*, 2010 WL 2278358, at *4-5, and the removing party bears the burden of establishing these requirements by a preponderance of the evidence.  *See id.* at *5; *Leonard v. Enters. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002).

Plaintiffs' Motion to Remand presents a single challenge to the first requirement of CAFA jurisdiction – namely, that the aggregated amount in controversy exceeds $5,000,000.

---

[3] Plaintiffs do not challenge the removal on any procedural grounds, and therefore, those requirements are not set forth herein.  (*See* Notice of Removal, Doc. No. 1 (explaining State Farm's compliance with all procedural aspects of removal)).

Courts must analyze CAFA's jurisdictional requirements "at the time of removal, not later." *Pretka*, 2010 WL 2278358, at *4. Where, as here, the plaintiff has not specifically pled the amount in controversy, the removing defendant must prove by a preponderance of the evidence that such amount exceeds the jurisdictional minimum. *See id.* at *5.

Plaintiffs seek to restrict this Court's jurisdictional analysis to the bare allegations on the face of the Class Action Complaint, a position which is exclusively based on Plaintiffs' reading of dicta set forth in *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007). But, on June 8, 2010, one day following Plaintiffs' filing their motion to remand, the Eleventh Circuit rejected the *Lowery* dicta as inapplicable to cases removed under the first paragraph of 28 U.S.C. § 1446(b), and specifically held: "The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation – provided of course that removal is procedurally proper." *Pretka*, 2010 WL 2278358, at *8.

This is a CAFA removal based on the filing of Plaintiffs' initial Class Action Complaint and, as in *Pretka*, "'[i]f the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed.'" *Id.* at *8 (quoting *Williams v. BestBuy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).[4] Such evidence may include

---

[4]  State Farm notes that this CAFA-based removal falls within the first paragraph of 28 U.S.C. § 1446(b) (*i.e.*, cases removed within 30 days after receiving the initial complaint), as the case was removed within thirty days after the receipt by State Farm of Plaintiffs' Class Action Complaint, the initial pleading setting forth the class action claims that trigger CAFA. Plaintiffs' voluntary filing of the Class Action Complaint provided the first opportunity for State Farm to consider and seek

affidavits, declarations, or other documentation submitted by the removing defendant. *Id.* If the jurisdictional amount either is clear on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. *Id.*

Although "the existence of jurisdiction should not be divined by looking to the stars," *Lowery*, 483 F.3d at 1215, "'a plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount.'" *Angrignon v. KLI, Inc.*, No. 08-81218-CIV, 2009 WL 506954, at *3 (S.D. Fla. Feb. 27, 2009) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008)). And, "'[n]othing in *Lowery* says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount.'" *Pretka*, 2010 WL 2278358, at *23 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)); *see also Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1379-80 (M.D. Fla. 2009) (Corrigan, J.) (refusing to "suspend reality" in evaluating the evidence supporting removal). "[V]iewing facts through the lens of common sense is not star gazing." *Pretka*, 2010 WL 2278358, at *23. In *Pretka*, the Eleventh Circuit explained that "*Lowery* did not say, much less purport to hold, that the use of deduction, inference, or other extrapolation of the amount in controversy is impermissible, as some district courts have thought." *Id.* at *7. The *Pretka* court further explained that it is entirely appropriate for a removing defendant to make "specific factual allegations establishing jurisdiction and . . . support them (if challenged by the plaintiff or the

---

removal under CAFA. Thus, the Eleventh Circuit's holding in *Pretka*, applicable to first paragraph removals, controls this case. But, even if *Lowery*'s "receipt from the plaintiff rule" was applicable, reasonable inferences drawn from a common sense analysis of the allegations of the Class Action Complaint including the size of the alleged class and the nature of the claims alleged would support CAFA removal, as Plaintiffs' allegations alone show that it is more likely than not that an aggregate of $5,000,000 is being placed at issue in this case.

court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations.  That kind of reasoning is not akin to conjecture, speculation, or star gazing." *Id.*   The Court went on to explain:  "The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Id.* at *8.  And, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.*[5]

## II.   Plaintiffs' Claims Place At Issue An Aggregate Amount In Excess Of $5,000,000 Establishing This Court's Jurisdiction Under CAFA.

Plaintiffs proffer two arguments in their attempt to defeat jurisdiction.  First, Plaintiffs argue that the "the factual information establishing the jurisdictional amount must come from the plaintiff" (Pl.'s Mot. to Remand, Doc. No. 19 at 4-5, ¶ 10), and urge this Court to simply ignore the declaration attached to State Farm's Notice of Removal.  (*Id.* at 5-8, ¶¶ 12-14).  Second, Plaintiffs contend that calculating the amount in controversy "require[s] excessive speculation." (*Id.* at 7, ¶ 14).  These arguments are not consistent with prevailing law in this Circuit, as articulated in the *Pretka* decision issued on June 8, 2010.

---

[5]  State Farm notes that this is a CAFA-based removal and its removal in this case falls within the first paragraph of 28 U.S.C. § 1446(b) (*i.e.*, cases removed within 30 days after receiving the initial complaint), as the case was removed within thirty days after the receipt by State Farm of Plaintiffs' initial Class Action Complaint.  Plaintiffs' voluntary filing of the Class Action Complaint provided the first opportunity for State Farm to consider and seek removal under CAFA, which was timely filed within 30 days of the filing of that initial class action pleading.  Thus, the Eleventh Circuit's holding in *Pretka*, applicable to first paragraph removals, controls this case.  But, even if *Lowery*'s "receipt from the plaintiff rule" was applicable, reasonable inferences drawn from a common sense analysis of the allegations of the Class Action Complaint including the size of the alleged class and the nature of the claims alleged would support CAFA removal, as Plaintiffs' allegations alone show that it is more likely than not that an aggregate of $5,000,000 is being placed at issue in this case.

**A.**   **The Declaration Of Jay Hieb Is To Be Considered In Determining Amount In Controversy, As Recently Made Clear By The Eleventh Circuit's Decision In *Pretka*.**

To show that it is more likely than not that Plaintiffs' claims are placing more than $5,000,000 in controversy as to the entire class, which Plaintiffs allege includes more than one thousand insureds, State Farm obtained a declaration from Jay Hieb, an Assistant Vice President and Actuary at State Farm.   In that declaration, Hieb states that as of March 31, 2010, the current average per person policy limit for UM coverage provided under private passenger automobile policies issued by State Farm in the State of Florida is $78,923.00. (Hieb Decl., ¶ 4, Doc. No. 1, Ex. B).   Hieb also explains that as of March 31, 2010, the lowest per person UM coverage policy limits on any private passenger auto policy issued by State Farm in the State of Florida is $10,000.00.   (*Id.*, ¶ 5).

Plaintiffs do not challenge the veracity or reliability of these numbers.   Rather, Plaintiffs argue that this Court should ignore this information in considering removal because it did not come from Plaintiffs.   But, as explained above, Plaintiffs' position is based on their reading of dicta set forth in *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007), and on June 8, 2010, the day following Plaintiffs' filing of their motion to remand, the Eleventh Circuit issued its decision in *Pretka* rejecting the *Lowery* dicta and holding that "[t]he substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation – provided of course that removal is procedurally proper."   *Pretka*, 2010 WL 2278358, at *8.   Following *Pretka*, there

is no doubt that this Court may consider State Farm's Notice of Removal, including the Hieb Declaration, in determining whether jurisdiction exists.

      **B.**    **The Amount In Controversy For The Putative Class Members Is Not Speculative, But Rather Is Based On The Allegations Set Forth In The Class Action Complaint And Reasonable And Common Sense Inferences.**

Nor can Plaintiffs defeat jurisdiction with their assertion that determining the amount in controversy requires "excessive speculation." Plaintiffs do not (and cannot) dispute that their individual claims seek to recover "the full extent" (*i.e.*, the coverage limits) of their allegedly stackable UM policy ("Policy B"). (*See* Pl.'s Mot. to Remand, Doc. No. 19, at 7, ¶ 14; *see also* Class Action Compl., Doc. No. 10, ¶ 13). The specific terms of Policy B are incorporated by reference into the Class Action Complaint and reflect a $100,000 amount "in controversy" with respect to Plaintiffs. (*See* Notice of Removal, Ex. A (Am. to Compl., Ex. B at Declarations Page)).

This leaves State Farm with the burden of establishing an aggregate amount in controversy for the remaining members of the class. *See Pretka*, 2010 WL 2278358, at *21 (subtracting undisputed amounts claimed by named plaintiffs from aggregate total). Plaintiffs allege that the putative class "contains more than 1,000 persons." (Class Action Compl., Doc. No. 10, ¶ 27). Assuming only one class member "more than" 1,000 leads to a putative class numbering 1,001 (or, 999 minus each of the Kellys). Therefore, to demonstrate the jurisdictional amount in controversy, State Farm must show that the amount "at issue" for each putative class member is more likely than not to exceed $4,904.91. *See Pretka*, 2010 WL 2278358, at *21.

1.      **The Amount "In Controversy" Is The Aggregate Limits Of UM Coverage.**

Plaintiffs also argue that determining the amount in controversy requires "excessive speculation" because each putative class member will have to prove actual damages, which may or may not exceed the limits of the purportedly stackable insurance coverage.  State Farm concedes that proving the extent of its ultimate liability, if any, will require individualized inquiries into (1) the specific terms and coverage limits of each putative class member's insurance policy, and (2) the available proof of actual damages suffered by each individual.  But, this fact is not dispositive and, in fact, is irrelevant to the jurisdictional issue.  Plaintiffs confuse the issue of ultimate liability with the requirements for establishing the jurisdictional threshold "amount in controversy."

The "'amount in controversy is not proof of the amount plaintiff will recover.  Rather, it is *an estimate of the amount that will be put at issue* in the course of the litigation.'" *Angrignon*, 2009 WL 506954, at *2 n.3 (emphasis added).  If Plaintiffs ultimately establish State Farm's class-wide liability, each putative class member will be entitled to make a claim for payment up to the full UM coverage limits of any stackable insurance policy.  In other words, State Farm's current potential for exposure is both dictated and limited by the aggregate UM coverage limits of each policy now "at issue."  Plaintiffs ignore this fact and essentially argue that jurisdiction is not established unless State Farm can prove the actual damages suffered by each putative class member.  But State Farm is not required "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."  *Pretka*, 2010 WL 2278358, at *8.  It only must show that the estimated amount "that will be put at issue" is more likely than not to equal the UM coverage limits of any allegedly stackable

insurance policy.  *See Angrignon*, 2009 WL 506954, at *2 n.3.  The documents before this Court clearly demonstrate as much.

The Class Action Complaint plainly alleges that (1) Plaintiffs are entitled to the full UM coverage available under Policy B, (2) their "experiences are substantially similar to those of the class members," and (3) proof of the Plaintiffs' claims "will also prove the claims of the class."  (Class Action Compl., Doc. No. 10, ¶¶ 13, 30-31).  Taken together, it is "readily deducible" from these allegations that Plaintiffs intend to pursue – *i.e.*, "put at issue" – State Farm's class-wide liability for the full UM coverage limits of any purportedly stackable insurance policy.  *See Angrignon*, 2009 WL 506954, at *2 n.3.

> **2.**     **The Number Of Putative Class Members Is Not Speculative, But Rather Is Based On The Plain Language Of Plaintiffs' Class Action Complaint.**

> > *a.*      *Plaintiffs' Class Action Complaint Alleges A Class Of More Than 1,000 Putative Members.*

Plaintiffs also dismiss the significance of their own allegations regarding the size of the putative class, claiming that "[t]he 1,000 persons number . . . does not only refer to those Class Members who are entitled to damages, but also those entitled to the declaratory and injunctive relief."  (Pl.'s Mot. to Remand, Doc. No. 19, at 7, ¶ 14).  In other words, Plaintiffs contend *in their motion to remand* that the "1,000 persons number" reflects the minimum number of potentially affected insureds, not the membership of either putative subclass.  Although this argument implies that each subclass is comprised of something less than 1,000 members, that is not how Plaintiffs structured their pleadings, and it is Plaintiffs' operative complaint that controls this issue, not Plaintiffs' new contentions in this motion to remand in attempting to avoid removal.  *See, e.g., Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116 (5th Cir.

1979) ("Whether the case was properly removed is determined by reference to the allegations in a plaintiff's state court pleading."); *Griffith v. State Farm Fire & Cas. Co.*, No. 09-00567, 2010 WL 231743, at *7 (W.D. La. Jan. 14, 2010) (explaining that allegations made in support of motion for remand not articulated in complaint may not be considered in evaluating removal); *see also Webb v. CUNA Mut. Group*, No. 09-0270, 2010 WL 366688, at *4 (S.D. Ala. Jan. 22, 2010) (citing several cases and explaining that removal is controlled by the pleadings at the time of removal and that any attempt by plaintiff to alter the claims post-removal whether by stipulation, affidavit, or amendment of pleadings, does not deprive the district court of jurisdiction).

The Class Action Complaint simply states that "the class" contains more than 1,000 persons and Plaintiffs do not in any way distinguish members of "the Damages Subclass" from members of "the Declaratory/Injunctive Relief Subclass." (Class Action Compl., Doc. No. 10, ¶ 27; *see also id.*, ¶¶ 24-25). In fact, the Damages Subclass, as defined, completely subsumes the Declaratory/Injunctive Relief Subclass. (*Compare id.*, ¶ 24(a) *with* ¶ 25(a)). Furthermore, like Plaintiffs' numerosity allegation, none of the other allegations relating to the Rule 23 requirements differentiate between members of the two alleged subclasses. (*See, e.g., id.*, ¶ 28 (outlining questions of law and fact alleged to be common "to the class")). Plaintiffs refer to "the class" as a single entity almost uniformly throughout the Class Action Complaint. (*See* Class Action Compl., Doc. No. 10, ¶¶ 26-28, 30-33, 35-36). Accordingly, the Class Action Complaint does not support Plaintiffs' contention – made for the first time in this motion to remand – that membership of the Damages Subclass consists of less than 1,000 insureds. If Plaintiffs intended to aver a smaller damages class, it was within their

control to do so; however, having authored the Class Action Complaint, Plaintiffs are stuck with any generalities and/or ambiguities inherent in their pleading.

        b.     *In Any Event, Plaintiffs' Contention That Their "Damages Subclass" Consists Of Less Than 1,000 Persons Does Not Impact The Amount In Controversy Assessment.*

Even accepting Plaintiffs' argument that the "1,000 persons number" is a conglomeration of putative class members seeking *either* damages *or* declaratory and injunctive relief, the total number still applies in considering the aggregated amount placed in controversy in this action.  Plaintiffs simply are incorrect that the value of the declaratory and injunctive relief is too speculative to be instructive.  "When a plaintiff seeks injunctive or declaratory relief, . . . '[t]he amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'"  *Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 510 F. Supp. 2d 691, 714 (M.D. Fla. 2007) (Corrigan, J.) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, Inc.,* 329 F.3d 805, 807 (11th Cir. 2003)).

Here, the requested declaration and corresponding injunctive relief would require State Farm "to provide stackable UM coverage in language as broad as that required by Florida law."  (*See* Class Action Compl., Doc. No. 10, ¶¶ 40-41).  In other words, if granted, the injunctive relief will expose State Farm to liability for the full UM coverage limits of any stackable insurance policy.  From Plaintiffs' perspective, therefore, the full UM coverage limits represent the "value" of what is being placed in controversy with respect to the alleged declaratory and injunctive relief.  *Jackson-Shaw Co.*, 510 F. Supp. 2d at 714.

3.   A "Common Sense" Assessment Of The Class Action Complaint Establishes An Aggregate Amount In Controversy Sufficient To Support Jurisdiction Under CAFA.

Applying common sense principles to the factual information set forth in the Class Action Complaint, this Court can determine the class-wide amount in controversy by aggregating the UM coverage limits "at issue" for each of the putative class members. *See Pretka*, 2010 WL 2278358, at *21-22; *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450 (7th Cir. 2005).

As explained in the Notice of Removal, State Farm does not issue UM coverage in an amount less than $10,000 on any private passenger auto policy issued in the State of Florida. (Notice of Removal, Doc. No. 1, ¶ 27; *see also* Hieb Decl., Doc. No. 1, Ex. B, ¶ 5). This fact is reflected in the terms of each putative class member's insurance policy, which terms are central to this litigation and which Plaintiffs claim are "substantially similar, if not identical" to their own Policy B. (*See* Class Action Compl. at ¶ 19). As such, each insurance contract at issue can be incorporated by reference into the Class Action Complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2006) (noting that "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement . . . ."). Assuming the minimum number of unnamed class members (*i.e.*, 999 plus Plaintiffs) and the minimum amount at issue for each (*i.e.*, $10,000), the amount in controversy is easily established, doubling the $5,000,000 requirement. As explained above, contrary to Plaintiffs' arguments, State Farm's burden is not to prove up the ultimate damages being sought beyond all doubt,

but rather is merely to show that it is more likely than not that Plaintiffs' are placing more than $5,000,000 in controversy.   Considering their Class Action Complaint, the evidence submitted in support of removal, and all reasonable inferences, deductions and extrapolations therefrom, this Court's jurisdiction over this case is plainly supported.

Plaintiffs attempt to disparage State Farm's $10,000 multiplier as "excessive speculation" and align this case with *Thomas v. Bank of America Corp.*, 570 F.3d 1280 (11th Cir. 2009) (per curiam).   But *Thomas* is inapposite and does not undermine this Court's jurisdiction.   The pleadings at issue in *Thomas* provided "no information" indicating the amount in controversy or the number of putative class members. *Id.* at 1282, 1283.   As such, the court could only speculate as to two of CAFA's jurisdictional prerequisites – namely, the $5,000,000 in controversy and the one-hundred or more putative class members. *See id.* at 1282.   Here, in contrast, Plaintiffs need not rely on information extrinsic to the Class Action Complaint to establish that, more likely than not, the aggregate amount in controversy exceeds $5,000,000.   Both the number of putative class members and the basis for establishing the amount "in controversy" – *i.e.*, the UM coverage limits of each purportedly stackable insurance policy – are "readily deducible" from the face of the document.   The specific coverage limits are incorporated by reference into the Class Action Complaint and those limits represent the exact amount "in controversy" for each putative plaintiff.   If State Farm could identify each of the putative class members and attach copies of every insurance policy issued to each, this Court would have proof beyond a reasonable doubt that the aggregate amount in controversy exceeds $5,000,000.

State Farm, however, is not required to prove jurisdiction "beyond all doubt," *Pretka*, 2010 WL 2278358, at *8, and thus is not required to identify and produce the policies issued to each member of the putative class.  In keeping with its burden, State Farm produced evidence showing that, more likely than not, none of the putative plaintiffs hold a private passenger automobile policy with UM coverage less than $10,000.  (*See* Hieb Decl., Doc. No. 1, Ex. B, ¶ 5).   Even the most conservative assumptions establish this Court's jurisdiction – using the smallest number of putative plaintiffs and the minimum available limits of UM coverage (*i.e.*, $10,000), the aggregate amount being placed in controversy easily exceeds $5,000,000.

In fact, in making their argument in opposition to removal, Plaintiffs hypothesize that a particular class member may be able to prove only $5,000 in damages and therefore would only be entitled to $5,000 of the stackable coverage.  (*See* Pl.'s Mot. to Remand, Doc. No. 19 at 7, ¶ 14).  Even if Plaintiffs' hypothetical plaintiff were the average class member, which is not reasonable given coverage limits and averages described above, the amount in controversy still would be satisfied (multiplying $5,000 times the number of class members alleged in the Complaint and then including the named Plaintiffs' claim for $100,000). Plaintiffs' own hypothetical further illustrates that jurisdiction is clearly established in this case.

Moreover, viewing the Class Action Complaint "through the lens of common sense," *Pretka*, 2010 WL 2278358, at *23, it is more likely that many of the putative plaintiffs will have policies with coverage limits above the $10,000 minimum and closer to the $100,000 being placed "at issue" by Plaintiffs.  (*See* Hieb Decl., Doc. No. 1, Ex. B, ¶ 4 (stating average

of $78,923.00 for Florida policies as of March 1, 2010)).   If Plaintiffs' claims are substantially similar in amount to those of the other putative class members, then the amount being placed in controversy would far exceed the jurisdictional amount by as much as ***twenty fold***.  (*See* Class Action Compl., Doc. No. 10, ¶¶ 27, 29, 30).  Or, put another way, it would take ***only 50*** class members asserting claims similar in size to those being asserted by Plaintiffs to meet the jurisdictional threshold.   Plaintiffs assert a class of more than one thousand members.[6]

Applying judicial experience and common sense, and considering the nature of the allegations and claims asserted and the types of damages and relief sought, it is "readily deducible" and "facially apparent" from the documents properly before this Court that the compensatory damages claimed by the putative class places in controversy an amount well in excess of the jurisdictional threshold under CAFA.  *See generally Devore*, 658 F. Supp. 2d at 1381 (denying remand after "adding a dose of common sense" to determine a jurisdictional showing by a preponderance of the evidence); *Roe*, 637 F. Supp. 2d at 999-1002 (denying remand after applying "'judicial experience and common sense'" and declining to "suspend reality" in ascertaining the amount in controversy from unspecified requests for compensatory and punitive damages); *see also Blackwell v. Great Am. Fin. Res., Inc.*, 620 F. Supp. 2d 1289 (N.D. Ala. 2009) (denying remand after considering unspecified requests for punitive damages and attorneys' fees and reasoning that a punitive damages award on top of compensatory damages of $23,172.28 would likely exceed the jurisdictional amount).

---

[6]   While Plaintiffs' typicality allegation does not, by itself, provide a basis to conclude that the amount in controversy is satisfied, this Court certainly can consider the average UM coverage limits and the amount being sought by the Kellys in conjunction with all of the other evidence that supports CAFA jurisdiction.

Plaintiffs cannot rely on "'artful pleading'" to undermine the purpose of the removal statute – *i.e.*, "to encourage expeditious removals from state to federal court" – and thereby "subject [State Farm]'s right to remove to the caprice of the plaintiff, which the Supreme Court has said in another context that [courts] should not do." *Pretka*, 2010 WL 2278358, at *19-20 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) (prohibiting remand based upon a plaintiff's post-removal amended pleading reducing the amount in controversy)).

This Court has jurisdiction, the removal was timely, and Plaintiffs' request for remand must be denied.[7]

## CONCLUSION

For the reasons stated herein, State Farm respectfully submits that this Court has jurisdiction over this matter pursuant to Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 because (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs,

---

[7] Plaintiffs apparently recognize that the intervening *Pretka* decision has fatally undercut all of their *Lowery*-based arguments set forth in their motion to remand. Abandoning their position that the Court cannot consider anything other than the allegations set forth in Class Action Complaint, on June 18, 2010, Plaintiffs filed a misguided and legally unsupportable motion seeking post-removal "jurisdictional discovery." (Pls.' Mot. for Jurisdictional Disc., June 18, 2010, Doc. No. 21). State Farm opposes such request. While Plaintiffs cite *Pretka* as support for their request, and although that decision authorizes this Court to consider a variety of evidence in determining its jurisdiction as explained above, there is nothing in *Pretka*'s holding approving jurisdictional discovery by Plaintiffs aimed at disproving the basis for removal. In fact, the concurring opinion on which Plaintiffs rely explicitly acknowledges that, under the Court's holding in *Lowery*, "jurisdictional discovery is unavailable to prove the amount in controversy." *Id.* at *29 (Pryor, J., concurring). Because Plaintiffs' request to disprove the amount in controversy is not authorized by law, and furthermore, is entirely inappropriate and unnecessary in this case, State Farm opposes the request and will be filing a brief in opposition to that motion. In fact, a review of Plaintiffs' laundry list of discovery topics set forth in their motion shows that this is nothing more than a veiled attempt by Plaintiffs to obtain early discovery on issues relevant to class certification. Such an effort to open discovery is particularly astonishing given that just weeks ago, following State Farm's removal, Plaintiffs sought and obtained State Farm's consent to stay briefing on State Farm's motion to dismiss.

(2) Plaintiffs and State Farm are citizens of different states, and (3) there are more than one-hundred putative plaintiffs.  State Farm thus requests that this Court retain full jurisdiction over this action as provided by law.

Respectfully submitted this 24th day of June, 2010.

  /s/   KYLE G.A. WALLACE
CARI K. DAWSON (admitted *pro hac vice*)
cari.dawson@alston.com
KYLE G. A. WALLACE (admitted *pro hac vice*)
kyle.wallace@alston.com
ALLISON S. THOMPSON (admitted *pro hac vice*)
allison.thompson@alston.com

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000
(404) 881-7777 (*Facsimile*)

JOHN W. WEIHMULLER, ESQ.
Florida Bar No. 0442577
jweihmuller@butlerpappas.com
BRIAN D. WEBB, ESQ.
Florida Bar No. 0073989
bwebb@butlerpappas.com

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
777 S. Harbour Island Boulevard Suite 500
Tampa, Florida 33602
(813) 281-1900
(813) 281-0900 (*Facsimile*)

*Attorneys for Defendant State Farm*
*Mutual Automobile Insurance Company*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

METRY KELLY and EUGENIE KELLY,  )
his wife, and all others similarly situated,  )
  )
      Plaintiffs,  )
  )
vs.  )      Case No. 5:10-cv-194-TJC-GRJ
  )
STATE FARM MUTUAL AUTOMOBILE  )
INSURANCE COMPANY, a foreign  )
insurance corporation,  )
  )
      Defendant.  )
_____)

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the within and foregoing **DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to:

> John Piccin, Esq.
> jp@piccinlawfirm.com
> Piccin Law Firm
> Post Office Box 159
> Ocala, FL 34478
>
> Paul S. Rothstein, Esq.
> paul.s.rothstein@att.biz
> 626 N.E. First St.
> Gainesville, FL 32601

This 24th day of June, 2010.

/s/ Kyle G.A. Wallace
KYLE G.A. WALLACE