UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

METRY KELLY and EUGENIE KELLY, )
his wife, and all others similarly situated, )
)
    Plaintiffs, )
)
vs. )   Case No. 5:10-cv-194-TJC-GRJ
)
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, a foreign )
insurance corporation, )
)
    Defendant. )
_____ )

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S RESPONSE TO MOTION FOR JURISDICTIONAL DISCOVERY**

COMES NOW Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), and respectfully submits this response in opposition to Plaintiffs' Motion for Jurisdictional Discovery (Doc. No. 21).[1]

**INTRODUCTION**

Plaintiffs' request for jurisdictional discovery is both misguided and legally unsupportable. Having initially moved for remand using the *Lowery*-based argument that "the factual information establishing the jurisdictional amount must come from the plaintiff," (Pl.'s Mot. to Remand, Doc. No. 19, at 4-5), Plaintiffs now embrace the entirely opposite approach and request the Court to permit them to solicit post-removal jurisdictional

---

[1] State Farm notes that its Notice of Removal (Doc. No. 1) and Response to Plaintiffs' Motion to Remand (Doc. No. 23) further establish the reasons why this motion should be denied and that the wide-ranging, burdensome discovery sought by Plaintiffs is neither appropriate nor necessary to this Court's threshold determination as to whether jurisdiction exists under CAFA. Pursuant to Fed. R. Civ. P. 10(c), State Farm incorporates by reference those prior pleadings.

discovery from State Farm. Specifically, Plaintiffs seek to require State Farm to identify the putative class members and produce information regarding each putative member's individual damages. Plaintiffs seek such discovery in the hope that the information will disprove that the aggregate amount in controversy exceeds the $5,000,000 required under the Class Action Fairness Act ("CAFA").

State Farm is not aware of any precedent to support Plaintiffs' request, and allowing the proposed discovery would unfairly burden State Farm with responding to what amounts to early discovery on class certification issues. State Farm should not be required to jump-start Plaintiffs' class action, much less at a point when this Court has not yet determined whether it intends to retain jurisdiction *and* before the Court rules on State Farm's pending motion to dismiss and/or for a more definite statement of Plaintiffs' claims on the merits.[2] The only issue presently before the Court is whether jurisdiction exists, and the requested discovery is completely unnecessary to the resolution of this issue. The plain allegations in the Class Action Complaint, coupled with the uncontroverted facts State Farm submitted at the time of removal, demonstrate that it is more likely than not that the aggregate amount in controversy far exceeds the $5,000,000 jurisdictional minimum. That is the end of the inquiry, and there is no legal basis for Plaintiffs to insist on further and exacting examination and inquiry into the merits of the insurance claims of putative class members. State Farm's Notice of Removal (Doc. No. 1) establishes the remaining jurisdictional prerequisites, which

---

[2] Plaintiffs actually sought and obtained State Farm's consent to stay all substantive proceedings in this case until this Court ruled on the motion for remand. (*See generally* Pls.' Unopposed Mot. to Stay, Doc. No. 17; Order, Doc. No. 18).

provides the Court with everything it needs to make its threshold determination as to jurisdiction under CAFA.

The Court should not embrace Plaintiffs' attempt to put the proverbial cart before the horse. Although *Pretka* clarifies the right of removing defendants to "introduce their own affidavits, declarations, or other documentation" to establish jurisdiction, there is nothing in *Pretka* – or any other case – endorsing Plaintiffs' request, as the non-removant, to conduct post-removal discovery to disprove the amount in controversy. *See Pretka v. Kolter City Plaza, II, Inc.*, No. 10-11471, 2010 WL 2278358, at *8 (11th Cir. June 8, 2010). In fact, Plaintiffs' request is contrary to well-established law regarding State Farm's burden to establish jurisdiction. Without any additional evidence, based solely upon Plaintiffs' own allegations and the evidence presented at the time of removal, the Court can determine that it is more likely than not that the CAFA jurisdictional prerequisites are satisfied. Accordingly, Plaintiffs' Motion for Jurisdictional Discovery should be denied.

### ARGUMENT AND CITATION TO AUTHORITY

**I. There Is No Legal Basis For Granting Plaintiffs' Request For Discovery To Disprove Jurisdiction.**

State Farm is not aware of a single federal court that has permitted a plaintiff opposing removal to conduct a post-removal, pre-remand fishing expedition for evidence to defeat jurisdiction. Plaintiffs certainly have not cited to any. The only support Plaintiffs provide for their position is a misguided interpretation of the concurring opinion in *Pretka*, which simply predicts that the Eleventh Circuit may, at some point in the future, revisit the current rule prohibiting a removing defendant from seeking jurisdictional discovery to prove the amount in controversy. *See Pretka*, 2010 WL 2278358, at *27-29 (Pryor, J., concurring).

Nothing in this concurrence – or in *Pretka*'s majority holding – even addresses, much less purports to hold, that a plaintiff opposing removal may conduct jurisdictional discovery to disprove an amount in controversy that was properly established at the time of removal.

In fact, Plaintiffs' request is contrary to the well-established law regarding State Farm's burden, as the party seeking to invoke jurisdiction, to establish each prerequisite of CAFA removal, including the amount in controversy. The law is clear as to what that burden is: "'Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a ***preponderance of the evidence*** that the amount in controversy exceeds the jurisdictional requirement.'" *Pretka*, 2010 WL 2278358, at *5 (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (emphasis added)); *see also*, *e.g.*, *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1326 (11th Cir. 2006); *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1379 (M.D. Fla. 2009) (Corrigan, J.). State Farm "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 2010 WL 2278358, at *8. Plaintiffs here seek to require State Farm to prove the exact number of putative class members and produce evidence of individualized damages in order to support jurisdiction and, ultimately, the propriety of removal. (*See* Pls.' Mot. for Jurisdictional Disc., Doc. No. 21, at 2-5). This heightened level of proof "beyond all doubt" is not required of State Farm to avoid remand. *See Pretka*, 2010 WL 2278358, at *8 ("The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life."). Accordingly, Plaintiffs' request to require additional evidence of the amount in controversy is improper and should be denied.

## II. This Court Can Determine Jurisdiction Based Upon The Present Allegations And Evidence Before It.

Even if Plaintiffs otherwise would be entitled to seek additional evidence to disprove jurisdiction, such evidence is not necessary where, as here, the removing defendant produced sufficient information at the time of removal for the Court to determine its jurisdiction. As noted above, State Farm is not required "to banish all uncertainty about" the amount in controversy in order to establish CAFA jurisdiction. *Pretka*, 2010 WL 2278358, at *8. Instead, it is sufficient for State Farm to point to "specific factual allegations . . . and . . . evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star gazing." *Id.* at *7; (*see also* Def.'s Resp. to Pls.' Mot. to Remand, Doc. No. 23, at 9-19).

Here, the Court can determine the aggregate amount in controversy through reasonable deductions, inferences, and extrapolations from the clear allegations in Plaintiffs' Class Action Complaint, coupled with the evidence State Farm provided at the time of removal. Plaintiffs plainly alleged the size of the putative class in the Class Action Complaint, and State Farm produced evidence of the minimum amounts "at issue" for each putative class member. Using these numbers, the Court can reasonably deduce an aggregate amount in controversy that far exceeds the $5,000,000 requirement. *Accord Pretka*, 2010 WL 2278358, at *21-22; *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450 (7th Cir. 2005).[3] Thus, the Court can (and should) rule on Plaintiffs' Motion to Remand without ordering State Farm to produce additional evidence related to the amount in controversy.

---

[3] *See also Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009) (explaining that it must be readily deducible that the total amount in controversy exceeds the

### A.     The putative class contains "more than 1,000 persons."

State Farm removed this action based upon the plain allegations in the Class Action Complaint, including, among others, that the putative class "contains more than 1,000 persons." (Class Action Compl., Doc. No. 10, ¶ 27). Notwithstanding Plaintiffs' attempt to dismiss the significance of their own allegation (*see* Pl.'s Mot. to Remand, Doc. No. 19, at 7), both State Farm and this Court are entitled to rely on the contents of Plaintiffs' operative pleading at the time of removal to determine whether federal jurisdiction exists. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294-95 (1938) (holding that "subsequent reduction of the amount claimed cannot oust the district court's jurisdiction" because the contrary rule would expose "the defendant's supposed statutory right of removal . . . to the plaintiff's caprice"); *Pretka*, 2010 WL 2278358, at *4 ("A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later."). The Class Action Complaint does not differentiate between members of the two alleged subclasses (*compare, e.g.*, Class Action Compl., Doc. No. 10, ¶ 24(a) *with id.*, ¶ 25(a)), and Plaintiffs refer to "the class" as a single entity almost uniformly throughout the Class Action Complaint. (*See id.*, ¶¶ 26-28, 30-33, 35-36). Accordingly, the Class Action Complaint does not support Plaintiffs' contention – made for the first time in their motion to remand – that the proposed damages subclass is comprised of less than 1,000 State Farm insureds.[4]

---

jurisdictional amount, not proof of an exact and precise amount in controversy).

[4]  Even if Plaintiffs actually had alleged a damages subclass of less than 1,000, Plaintiffs unequivocally maintain that the entire class is greater than 1,000. (*See generally* Class Action Compl., Doc. No. 10; *see also* Pls.' Mot. to Remand, Doc. No. 19, at 7-8). As State Farm previously explained (*see* Def.'s Resp. to Pls.' Mot. to Remand, Doc. No. 23, at 14), this Court can readily

Having alleged a putative class containing "more than 1,000 persons," Plaintiffs cannot demand State Farm to provide evidence to impeach this allegation and defeat jurisdiction. The clear allegation of a damages class of "more than 1,000 persons" fixed State Farm's right to remove this action, and Plaintiffs cannot now amend their pleading to defeat such removal. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 292 ("And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."). Nor can Plaintiffs require State Farm to prove the ultimate truth of the alleged class size or suffer remand as a consequence. *See Pretka*, 2010 WL 2278358, at *8. In fact, whether Plaintiffs have correctly alleged the number of putative class members is irrelevant for jurisdictional purposes. Regardless of whether Plaintiffs' allegation is factually correct, it supports State Farm's statutory right to removal. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 294 ("The claim, whether well or ill founded in fact, fixes the right of the defendant to remove[.]").

**B.     The minimum UM coverage limits establish the requisite amount in controversy.**

State Farm is similarly entitled to rely on Plaintiffs' allegations describing the nature of the controversy presented. Plaintiffs clearly allege that "State Farm is liable to Plaintiffs and [the putative] class members for the full amount of stackable uninsured motorist coverage denied under the illegal language." (Class Action Compl., Doc. No. 10, ¶ 21). The amount "that will be put at issue" for each putative class member is the "full amount" – *i.e.*,

---

determine the amounts in controversy for the entire class, not just the purported damages class, and thus the 1,000-persons number is clearly relevant to establishing jurisdiction.

the policy limits – of any insurance policy under which the parties dispute the availability of "stackable" UM coverage. At the time of removal, State Farm produced evidence that, as of March 31, 2010, $10,000 is the absolute minimum amount of UM coverage issued under any private passenger automobile policy in the State of Florida. (Decl. of Jay Hieb ("Hieb Decl."), Doc. No. 1-1, ¶ 5). Thus, from the allegations in the Class Action Complaint and the uncontroverted facts presented in the Hieb Declaration, and making reasonable inferences, deductions and extrapolations therefrom, this Court can readily determine that it is more likely than not that the aggregate amount in controversy far exceeds $5,000,000.[5] *See Pretka*, 2010 WL 2278358, at *7. There is no legal basis for requiring State Farm to produce additional evidence to determine that it is more likely than not that CAFA jurisdiction exists.

        C.        **Discovery related to ultimate class-wide damages is irrelevant to jurisdiction and is overly burdensome at this stage in the litigation.**

The majority of information Plaintiffs seek to elicit from State Farm relates to the specific amount of unpaid damages for which each putative class member ultimately may seek stackable UM coverage from State Farm. As an initial matter, any information related to the potential for ultimate class-wide relief is neither relevant to nor determinative of the jurisdictional issue, which exclusively relates to the aggregate coverage limits Plaintiffs have placed "at issue." *See Pretka*, 2010 WL 2278358, at *4 ("'[T]he plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately

---

[5] As State Farm explained in response to Plaintiffs' Motion to Remand, the most conservative assumptions as to both the size of the putative class (*i.e.*, only one "more than" 1,000) and the minimum coverage limits at issue for each (*i.e.*, $10,000) reveal an aggregate amount in controversy that is more than **double** the $5,000,000 required under CAFA. (*See* Def.'s Resp. to Pls.' Mot. to Remand, Doc. No. 23, at 15-18).

likely to recover.'") (quoting *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009)); *see also Angrignon v. KLI, Inc.*, No. 08-81218-CIV, 2009 WL 506954, at *2 n.3 (S.D. Fla. Feb. 27, 2009) ("'[A]mount in controversy is not proof of the amount plaintiff will recover.  Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.'") (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008)).

Moreover, Plaintiffs' request for jurisdictional discovery in this case is overly burdensome and entirely inappropriate.  Responding to the topics outlined in Plaintiffs' motion – none of which contain any temporal limitations – would require State Farm to conduct a manual file-by-file review of what is almost certain to amount to thousands of individual claim files.  (*See* Decl. of Clifton L. Nix ("Nix Decl."), ¶¶ 5-6).  All of the topics for which Plaintiffs seek discovery would require State Farm to identify and isolate all Florida UM claim files involving an issue of "stackable" coverage.  (*Id.*, ¶ 5).  For example, Topic 5(a) requests State Farm to identify and count the number of persons in Plaintiffs' putative damages class, the definition of which includes all persons who, among other things, "received no payment from stackable UM coverage provided by any other automobile liability policy issued by Defendant State Farm."  (*See* Pls.' Mot. for Jurisdictional Disc., Doc. No. 21, at 2-3).  Topics 5(b), 5(c) and 5(d) request information about the details of each UM claim filed by a putative class member, including, but not limited to: (1) whether State Farm denied the purportedly "stackable" UM coverage on the basis of exclusionary policy language that is the same or similar to the language in Plaintiffs' policy; (2) the total amount of damages for which each putative class member sought UM coverage; (3) whether and by

how much such damages exceeded UM coverage limits under the primary insurance policy; and (4) the coverage limits of any purportedly "stackable" insurance policy.[6] (*See id.*).

State Farm cannot simply run an electronic search to identify all the individual claim records involving issues of stackable UM coverage. (*See* Nix Decl., ¶ 6). Instead, to provide the information requested by Plaintiffs, State Farm would have to pull each and every Florida UM claim record maintained in the State Farm database and perform a manual file-by-file review to determine which claims may have raised stacking issues.[7] (*See id.*, ¶¶ 5-6). In fact, a manual fail-by-file review would be required to respond to each of Plaintiffs' extensive list of discovery topics. (*See id.*). Such a time-consuming and costly procedure would impose an unfair and undue burden on State Farm,[8] particularly given the stage of these proceedings and the relatively low threshold of proof needed to establish the jurisdictional amount in controversy, which is plainly met in this case. And, importantly, it is highly likely that even a file-by-file review of the claim records will not reveal much of the requested information regarding each putative class member's specific damages claims. UM coverage claims may involve a variety of damages, including, among other things, medical

---

[6] Plaintiffs' remaining requests – Topics 5(e) through 5(i) – likewise would require State Farm to identify the specific Florida UM claim files involving claims for stackable coverage. (*See, e.g.*, Pls.' Mot. for Jurisdictional Disc., Doc. No. 21, at 3-4, ¶ 5(e) (requesting "information regarding the average monetary amount of damages paid out by State Farm on stackable UM coverage . . . in Florida")).

[7] Due to the absence of any temporal limitation to Plaintiffs' requests, State Farm literally would have to manually review every Florida UM claim record ever created in order to properly respond to the proposed discovery. (*See* Nix Decl., ¶¶ 5-6).

[8] Given the lack of a specific timeframe, it is difficult for State Farm to provide any type of estimate as to the time and expense associated with a manual file-by-file review, which necessarily would include privilege and privacy redactions. That said, it is obvious that performing a manual review of thousands of individual claim files would require enormous effort and expense. Should the Court desire more specific information regarding the burden, time and expense Plaintiffs' requests will impose on State Farm, State Farm requests an opportunity to provide such information, through supplemental pleading and evidence, after Plaintiffs have specified a timeframe for their requests.

expenses, lost wages and pain and suffering, which are incapable of any precise quantification. (*See*, *e.g.*, *generally* Class Action Compl., Doc. No. 10). Thus, the type of information generally contained in the individual claim files is not likely to reveal the specific amount of damages being claimed by a particular putative class member. Given the immense burden Plaintiffs' discovery would impose and the limited benefit it would yield, State Farm should not be required to undertake a manual file-by-file review simply to avoid remand.

The wide-ranging list of topics included in Plaintiffs' discovery requests also suggests that Plaintiffs seek to obtain "jurisdictional discovery" as a means of jump-starting discovery on class certification issues. Such a veiled attempt to advance the litigation would be puzzling in light of Plaintiffs' own admission that any activity *before* this Court rules on Plaintiffs' Motion to Remand "would be detrimental to judicial efficiency." (Pls.' Unopposed Mot. to Stay Determination of Def.'s Mot. to Dismiss, Doc. No. 17, at 2 (requesting this Court to stay all proceedings, including Plaintiffs' obligation to respond to the Motion to Dismiss, pending resolution of the jurisdictional issues)). State Farm's Notice of Removal (Doc. No. 1) and Plaintiffs' Motion to Remand (Doc. No. 19) present a jurisdictional question, not one related to the ultimate proof of the merits of Plaintiffs' substantive claims. State Farm has more than satisfied its burden to establish this Court's jurisdiction under CAFA and it is not obligated to respond to onerous and exacting discovery concerning the precise merits of Plaintiffs' claims in order to survive the motion for remand and maintain this Court's jurisdiction.

## **CONCLUSION**

For the reasons stated herein, State Farm respectfully requests this Court to deny Plaintiffs' Motion for Jurisdictional Discovery (Doc. No. 21) and to rule on Plaintiffs' Motion to Remand (Doc. No. 19) based on the allegations in the Class Action Complaint (Doc. No. 10), State Farm's Notice of Removal (Doc. No. 1) and the evidence presented therewith, and the reasonable inferences, deductions and extrapolations to be drawn from the items presented at the time of removal.

Respectfully submitted this 6th day of July, 2010.

    /s/   KYLE G.A. WALLACE
CARI K. DAWSON (admitted *pro hac vice*)
cari.dawson@alston.com
KYLE G. A. WALLACE (admitted *pro hac vice*)
kyle.wallace@alston.com
ALLISON S. THOMPSON (admitted *pro hac vice*)
allison.thompson@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000
(404) 881-7777 (*Facsimile*)

JOHN W. WEIHMULLER, ESQ.
Florida Bar No. 0442577
jweihmuller@butlerpappas.com
BRIAN D. WEBB, ESQ.
Florida Bar No. 0073989
bwebb@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
777 S. Harbour Island Boulevard Suite 500
Tampa, Florida 33602
(813) 281-1900
(813) 281-0900 (*Facsimile*)

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

METRY KELLY and EUGENIE KELLY, )
his wife, and all others similarly situated, )
)
    Plaintiffs, )
)
vs. )   Case No. 5:10-cv-194-TJC-GRJ
)
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, a foreign )
insurance corporation, )
)
    Defendant. )
_____)

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the within and foregoing **DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S RESPONSE TO MOTION FOR JURISDICTIONAL DISCOVERY** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to:

    John Piccin, Esq.
    jp@piccinlawfirm.com
    Piccin Law Firm
    Post Office Box 159
    Ocala, FL 34478

    Paul S. Rothstein, Esq.
    paul.s.rothstein@att.biz
    626 N.E. First St.
    Gainesville, FL 32601

This 6th day of July, 2010.

                        /s/ Allison S. Thompson
                        ALLISON S. THOMPSON