UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

METRY KELLY and EUGENIE KELLY, his
wife, and all others similarly situated,

                    Plaintiffs,

v.                                 Case No.  5:10-cv-194-Oc-32GRJ

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign insurance
corporation,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

Pending before the Court are Plaintiffs' Motion to Remand (Doc. 19) and Motion For Jurisdictional Discovery. (Doc. 21.)  Defendant has filed a Response To Plaintiffs' Motion To Remand (Doc. 23) and a Response To Motion For Jurisdictional Discovery (Doc. 24) opposing each motion and, accordingly, the motions are ripe for review. For the reasons discussed below, Plaintiffs' Motion To Remand and Motion For Jurisdictional Discovery are both due to be **DENIED**.

## I. BACKGROUND AND INTRODUCTION

On February 3, 2009, Plaintiffs filed the original Complaint in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida against Defendant. (Doc. 2.)

On March 18, 2010, Plaintiffs requested leave to file a First Amended Class Action Complaint (Doc 10) which the state court granted on April 8, 2010.

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

On May 7, 2010, Defendant removed the case pursuant to 28 U.S.C. § 1441 on the basis that the Court has subject matter jurisdiction under the Class Action Fairness Act of 2005[2] ("CAFA").  (Doc. 1.) On June 7, 2010, Plaintiffs moved to remand this action arguing that Defendant has not met its burden of establishing the jurisdictional amount in controversy required for removal under CAFA. (Doc.19.)

Thereafter, on June 18, 2010, Plaintiffs filed a Motion For Jurisdictional Discovery, seeking limited jurisdictional discovery on the issue of the amount in controversy and the number of putative class members. (Doc. 21.)

In the First Amended Class Action Complaint Plaintiffs allege that plaintiff Metry Kelly was operating a motor vehicle covered by an automobile policy ('Policy A") issued by Defendant when she was negligently struck by another motor vehicle on or about September 24, 2008.  Plaintiffs contend that at all times prior to this accident they maintained two separate automobile insurance policies issued by Defendant and that they have paid all premiums in full for each policy.  Plaintiffs further allege that as a result of the collision Plaintiff Metry Kelly suffered bodily injuries and incurred expenses for hospitalization, medical and nursing care and treatment.  Plaintiffs received and were given written permission by Defendant to accept the liability insurance coverage and uninsured/underinsured motorist coverage ("UM coverage") provided under Policy A.  Plaintiffs allege, however, that the value of their damages exceeds the available liability insurance coverage and UM coverage limits provided under Policy A.  According to Plaintiffs, they attempted to collect the stackable UM coverage available to them

---

[2] 28 U.S.C. § 1332(d).

under their second policy with Defendant ("Policy B") to cover the excess damages, but that Defendant denied Plaintiffs the UM coverage from the second policy pursuant to policy language that limited the stackability of UM coverage.  This policy language provides in relevant part that: "There is no coverage . . . 2) For bodily injury to an insured: a. While occupying a motor vehicle owned by or leased to you, your spouse, or any relative if it is not insured for this coverage under this policy."

Plaintiffs allege in their First Amended Class Action Complaint that the Policy B language purporting to limit the availability of stackable insurance coverage is void because it violates Fla. Stat. Section 627.727(9)(d).  That statutory provision provides in relevant part that:

> (9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer: (d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insured for which uninsured motorist coverage was not purchased.[3]

Plaintiffs allege that Defendant has issued thousands of automobile policies that included stackable UM coverage in Florida and that those policies include limitations on stackable UM coverage in identical or substantially similar language to that in Plaintiffs' Policy B.  Plaintiffs further allege that because this policy language purportedly violates Florida law it is void and Defendant is liable to Plaintiffs and all putative class members for the full amount of stackable UM coverage provided under policies that contain the purportedly illegal policy language.

---

[3] FLA. STAT. § 627.727(9)(d).

Plaintiffs bring this class action on behalf of themselves and all other others similarly situated.  Plaintiffs subdivide the putative class members into two subclasses – a damages subclass and a declaratory/injunctive relief subclass.  The damages subclass consists of all persons who suffered damages by being denied the benefit of the stackable UM coverage under policy language that Plaintiffs allege is illegal. Plaintiffs seek declaratory relief on behalf of themselves and all putative class members contending that the policy language limiting the stackability of UM coverage violates Fla. Stat. Section 627.727(9)(d) and is therefore void.  Plaintiffs seek injunctive relief requiring Defendant to (i) provide stackable UM coverage in language as broad as required under Florida law and (ii) base further determinations as to the stackability of UM coverage on the language of Fla. Stat. Section 627.727(9)(d) rather than the purportedly illegal policy language contained in the policies. Plaintiffs contend that the total number of putative class members exceeds 1,000 persons and Plaintiffs seek to recover class-wide actual damages, interest, costs and attorney's fees for themselves and the putative class members

## II. <u>DISCUSSION</u>

### A.     Removal under CAFA – Plaintiffs' Motion To Remand

CAFA was enacted by Congress in 2005 to "address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel" and did so by enlarging the universe of cases that can be removed

pursuant to 28 U.S.C. § 1441 to include proposed class actions.[4]  This enactment was performed "with an eye toward curbing abuses of the class action device that have (A) harmed class members with legitimate claims and defendants that have acted responsibly; (B) adversely affected interstate commerce; and (C) undermined public respect for our judicial system.'"[5] In enacting CAFA Congress "perceived that state courts were overly friendly toward class certification, provided insufficient notice to class members, and favored some plaintiffs over others in making class awards."[6]

CAFA bestows subject-matter jurisdiction on a federal court, thus allowing for the removal of class action suits, only if: (I) the number of proposed class members is not less than 100; (ii) minimal diversity exists in that a member of the proposed class is a citizen of a state different from any defendant; and (iii) the aggregate amount in controversy, excluding interest and costs, exceeds $5,000,000.[7]  The party removing an action under CAFA bears the burden of establishing that CAFA's requirements have been met by a preponderance of the evidence, meaning that such party must show that it is more likely than not that CAFA's requirements have been met.[8]

Satisfying CAFA is not the only requirement. As the party removing the action Defendant also bears "the burden of establishing both federal jurisdiction and

---

[4] Lowery v. Alabama Power Co., 483 F.3d 1184, 1193 (11th Cir. 2007); 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & JOAN E. STEINMAN., FEDERAL PRACTICE AND PROCEDURE § 3724 (4th ed. 2009).

[5] Cappuccitti v. DirecTV, Inc., No. 09-14107, 2010 WL 2803093, at *1 (11th Cir. July 19, 2010) (quoting Pub. L. No. 109-2, § 2(a)(2), 119 Stat. 4, 4 (2005)).

[6] Id. at *1.

[7] 28 U.S.C § 1332(d)(11).

[8] Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010).

compliance with the procedures for removal set out in 28 U.S.C § 1446, as a matter of fact and law."[9]  The traditional procedural rules governing removal under 28 U.S.C.  § 1446 still apply to CAFA removals and must also be satisfied even if CAFA's requirements are otherwise met.[10]

Pursuant to 28 U.S.C.  § 1446(b) removal is proper in two instances.  In the first instance, which is delineated in the first paragraph of section 1446(b), removal is based upon the plaintiff's initial pleading.  In a first paragraph Section 1446(b) removal the notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."[11]

There is a second time period for removal. A defendant can remove under the second paragraph of Section 1446(b) even if the case stated by the initial pleading was not removable if the defendant "receives a copy of an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable."[12]  Generally, a second paragraph Section 1446(b) removal can be made provided that not more than one year has passed since the action was commenced. However, pursuant to 28 U.S.C. § 1453(b) the one year limited removal period for diversity suits was eliminated for removal of class actions and therefore the

---

[9] <u>Englemann v. Hartford Cas. Ins. Co.</u>, No. 8:09-cv-2274-T-30EAJ, 2009 WL 5166551, at *1 (M.D. Fla. Dec. 23, 2009).

[10] 28 U.S.C. § 1453(b).

[11] 28 U.S.C § 1446(b).

[12] 28 U.S.C § 1446(b).

removal in this case was not untimely even though it was removed more than one year from the date the action was commenced.

Two of CAFA's requirements are not seriously in dispute in this case. Plaintiffs have alleged in the First Amended Class Complaint that it is believed the class contains more than 1,000 persons, which is well over CAFA's 100 person requirement. Second, Defendant is a foreign insurance corporation and Plaintiffs are residents of Florida, thus, ensuring that the minimal diversity requirement is met.  Thus, the contested issue in this case is whether State Farm has satisfied CAFA's jurisdictional amount in controversy requirement.

In determining whether subject matter jurisdiction has been satisfied the Court must focus upon the amount in controversy at the time that the case is removed and not at any later point.[13]  The typical rule for determining the amount in controversy where an action has been removed "is said to be measured for subject matter jurisdiction purposes by the value of the right that the plaintiff seeks to enforce or to protect against the defendant or the value of the object that is the subject matter of the action."[14]  The question is not how much the plaintiff will ultimately recover in the case, but instead "'the pertinent question is what is *in controversy* in the case.'"[15]

Actions seeking injunctive and/or declaratory relief present a somewhat different analysis because a claim for injunctive relief  may not specify a particular dollar amount

---

[13] See Poor v. American-Amicable Life Ins. Co. Of Texas, 218 F.3d 1287, 1290-91 (11th Cir. 2000); Lake County v. NRG/Recovery Group, Inc., 144 F. Supp.2d 1316, 1319 (M.D. Fla. 2001).

[14] WRIGHT, MILLER, COOPER & STEINMAN, *supra* note 5, § 3708.

[15] Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) (quoting Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009)).

being sought by the plaintiff.  Nonetheless, even where injunctive relief is sought courts generally will use the same test in determining the amount in controversy.[16]  That is, "when a plaintiff seeks injunctive or declaratory relief, . . . 'the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'"[17]

In this action, Plaintiffs seek declaratory and injunctive relief as well as class-wide actual damages, attorneys' fees and costs for the named Plaintiffs and putative class members.  The First Amended Class Action Complaint is, however, silent on its face as to the value of the declaratory and injunctive relief that the Plaintiffs are seeking for themselves and the putative class members, although Plaintiffs claim personally to have suffered $100,000 in damages, as that was the limit on UM coverage under Policy B. Despite the fact that the First Amended Class Complaint is silent on its face as to the value of the declaratory and injunctive relief sought by Plaintiffs for themselves and the putative class members, the Court must still attempt to determine the "monetary value of the litigation from the plaintiff's perspective"[18] to determine if removal was proper.

Contrary to Plaintiffs' view, the subject matter of the instant action is the legality of the policy language that purports to limit the stackable UM coverage.  Plaintiffs allege that "Defendant State Farm had and has an obligation under its contract with Plaintiffs contained in Policy B to provide Plaintiffs with the stackable UM coverage contained in

---

[16] WRIGHT, MILLER, COOPER & STEINMAN, *supra* note 5, § 3725.1.

[17] Jackson-Shaw  Co. v. Jacksonville Aviation Auth., 510 F. Supp. 2d 691, 714 (M.D. Fla. 2007) (quoting Federated Mut. Ins. Co. v. McKinnon Motors, Inc., 329 F.3d 805, 807 (11th Cir. 2003)).

[18] Federated Mut. Ins. Co. v. McKinnon Motors, Inc., 329 F.3d 805, 807 (11th Cir. 2003).

Policy B."[19]  Plaintiffs allege that the language in their own Policy B is void because it

violates Fla. Stat. Section 627.727(9)(d) and that substantially similar or even identical

language in the policies issued by Defendant to putative class members is similarly void.

Plaintiffs assert in their First Amended Complaint that "State Farm is liable to Plaintiffs

and the class members for the *full amount* of stackable uninsured motorist coverage

denied under the illegal language."[20]  Plaintiffs do not, however, provide any further

information as to what is the full amount sought by the putative class members.

Defendant argues that it is " 'readily deducible'" from the allegations in the First

Amended Class Action Complaint that Plaintiffs seek the full UM coverage limits of any

stackable insurance policies for themselves and all class members.  According to

Defendant, if the policy language purporting to limit the stackability of the UM coverage

in the putative class members' policies is indeed void as Plaintiffs contend, then each

putative class member, much like Plaintiffs, would also be entitled to recover from

Defendant the full UM coverage limit in his or her policy.   Defendant's ultimate class-

wide liability, therefore, would be the aggregate amount of the full UM coverage limit in

each stackable insurance policy held by putative class members.

The value of this litigation to Plaintiffs and each putative class member is

therefore the full limit on stackable UM coverage provided under each insurance policy

issued by Defendant to Plaintiffs and putative class members.  If the Court granted

Plaintiffs the relief they request, then Plaintiffs would recover the entire $100,000 UM

---

[19] Id. ¶ 46.

[20] Plaintiffs' First Amended Class Action Complaint, Doc. 10,  ¶ 21. (emphasis added).

coverage under their policy and every putative class member would receive the limit on stackable UM coverage in the class member's particular policy. The total amount in controversy is, therefore, the aggregate of the limit on stackable UM coverage for each putative class member.

Having determined that the amount in controversy is the full amount of stackable UM coverage provided in each putative class member's policy, the Court must determine whether the dollar amount of the aggregate of the claims of each class member exceeds the sum of $5,000,000. In making this calculation the Court also must determine whether the Court is limited to the allegations in the First Amended Class Action Complaint or may rely upon evidence submitted by Defendant in conjunction with the allegations in the First Amended Class Action Complaint.

The Court will first address the threshold issue of whether the Defendant is entitled to rely upon declarations submitted by it to meet its burden of demonstrating the requisite amount in controversy. The parties sharply dispute this issue. Relying upon *Lowery v. Ala. Power Co.*[21] Plaintiffs contend that because this case was removed under the second paragraph of § 1446(b) the Defendant can establish the amount in controversy only based upon information contained in a paper or pleading submitted by Plaintiffs and not based upon information submitted by the Defendant. Relying upon *Pretka v. Kolter City Plaza II, Inc.*[22] –   the Eleventh Circuit's most recent pronouncement on the issue – Defendant argues that *Pretzka* distinguished *Lowery* and held that the

---

[21] 483 F.3d 1184, 1213-15 (11th Cir. 2007)

[22] 608 F.3d 744 (11th Cir. 2010)

10

"evidence the defendant may use to establish the jurisdictional facts is not limited to that which it received from the plaintiff or the court."[23]  Resolution of the issue is not as straightforward as both sides suggest.

Plaintiffs read *Lowery* much too broadly. As the *Pretzka* panel correctly points out, *Lowery* was a second paragraph 1446(b) removal and therefore anything the *Lowery* panel may have said about removals under the first paragraph of § 1446(b) is pure *dicta* and not controlling. Second, *Lowery* did not establish a hard and fast rule that a removing defendant may not submit evidence outside the pleadings to establish the jurisdictional prerequisites to removal where the complaint seeks unliquidated damages.

Defendant, on the other hand, reads *Pretzka* as endorsing an across the board rule that a removing defendant may always rely upon its own declarations to establish the amount in controversy. While *Pretzka* certainly endorsed the use by a removing defendant of its own declarations in meeting its burden of establishing the amount in controversy – rather than being limited to information received from the plaintiff – *Pretzka* expressly limited its holding to removals under the first paragraph of § 1446(b). Thus, the Eleventh Circuit has not yet extended the holding in *Pretzka*  to removals under the second paragraph of § 1446(b).

The removal in this case constitutes a removal under the second paragraph of § 1446(b). The original complaint and amendment to complaint were filed in state court on February 3, 2009 and do not on their face state a basis for removal. While diversity of jurisdiction existed between the Plaintiffs and Defendant there is no suggestion in the

---

[23] Id. at 767

complaint or amendment to complaint that the amount in controversy exceeded the sum of $75,000.00. The First Amended Class Action Complaint was filed in state court on March 18, 2010 and leave to proceed on the class action complaint was granted by the state court on April 8, 2010. The Notice of Removal was filed on May 7, 2010, which was thirty days after the "receipt by the defendant ... of a copy of an amended pleading ... order .. or other paper from which it may first be ascertained that the case is one which is or has become removable ... " 28 U.S.C. § 1446(b). There is little question that the initiation of the class action is the paper which triggered CAFA and which was the paper "from which it may first be ascertained that the case is one which ... has become removable."  Thus, because this case is a removal under the second paragraph of § 1446(b) — and *Lowery* was a second paragraph removal – logic would dictate that *Lowery* should control.  While *Lowery* applies, a closer reading of *Lowery* and the analysis of *Lowery* by the *Pretzka* panel does not establish, as Plaintiffs suggest, a bright line rule that a removing defendant can never in a second paragraph removal include in its notice of removal – and rely upon – a declaration to demonstrate that the requisite amount in controversy has been satisfied. Rather, *Lowery* and *Pretzka* read together establish that a removing defendant may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal – including a defendant's own declarations – so long as the evidence includes "[s]pecific factual allegations establishing jurisdiction [which defendant] can support .. with evidence combined with reasonable deductions, reasonable inferences or other reasonable extrapolations."[24]

---

[24] <u>Pretzka</u> at 754.

12

In *Lowery* the defendant filed its notice of removal three years after the original complaint was filed. Unlike the Defendant here, the removing Defendant in *Lowery* simply stated in conclusory language in its notice of removal, and without supporting underlying facts, that CAFA's jurisdictional amount in controversy requirement had been satisfied. Only later and in response to Plaintiff's motion to remand, the *Lowery* defendant filed a supplement to its notice of removal pointing out that other plaintiffs in recent mass tort cases had received jury verdicts in excess of the CAFA limit. Conspicuously absent, however, from the supplemental information was any explanation of the facts of the other tort cases or any link between those facts and the facts in *Lowery*. The *Lowery* court therefore concluded that the supplemental information submitted by the removing defendant was insufficient to establish federal jurisdiction by a preponderance of the evidence because the evidence was "bereft of detail" about whether the plaintiffs complaint was similar to the other tort cases. As such the *Lowery* panel found that "[t]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars."[25] Because there was no other information in the amended complaint to establish the jurisdictional amount under CAFA the *Lowery* panel concluded that remand to state court was appropriate.

In *Pretzka* the Eleventh Circuit examined *Lowery* and concluded that the *dicta* in *Lowery* about the type of evidence a defendant that removes may use in establishing the requisite amount in controversy need not be followed – at least in a removal under

---

[25] <u>Lowery</u>, at 1215.

the first paragraph of § 1446(b). While *Pretzka* carefully limited its holding to removals under the first paragraph of § 1446(b) – so as not to overrule *Lowery* in contravention of the prior panel precedent rule – the panel in *Pretzka* emphasized that *Lowery's* receipt from the plaintiff rule should be considered *dicta* and that a removing defendant may use its own declarations submitted with its notice of removal to establish the jurisdictional facts necessary to satisfy its burden of establishing by a preponderance of the evidence the requisite amount in controversy. The Court, therefore, concludes that the Defendant may rely upon the declaration of Jay Hieb, which was attached to its notice of removal.

In his declaration, Mr. Hieb, an employee at Defendant's corporate headquarters in Illinois, avers that he is personally acquainted with the records that Defendant regularly maintains in the ordinary course of business regarding the limits of UM coverage provided under automobile policies issued by Defendant in Florida. Mr. Hieb further avers that the current average limit of UM coverage provided under Florida policies as of March 31, 2010 was $78,923 while the lowest limit offered by Defendant in Florida under such policies is $10,000.

According to Defendant, because the value of this litigation to each putative class member is the limit of UM coverage offered under that particular class member's policy with Defendant, the lowest that limit possibly could be is $10,000, the minimum amount of UM coverage offered under the policies issued by Defendant in Florida. Multiplying that amount by 1,000 – the minimum number of class members alleged by Plaintiff in the

First Amended Class Action Complaint – results in a damage figure of at least $10,000,000, more than sufficient to satisfy the $5,000,000 threshold in CAFA.[26]

      Plaintiffs challenge Defendant's calculations by advancing several arguments. Plaintiffs argue it is flawed to assume that all class members will have damages equal to the full amount of the stackable UM coverage provided in the putative class member's policy.  While Plaintiffs allege they suffered injuries in excess of the full amount of the stackable UM coverage they argue that might not be the case  for every other putative class member.  In establishing the requisite amount in controversy the Defendant is not, however, required to submit "proof of the amount plaintiff will recover" but is instead only required to submit "an estimate of the amount that will be put at issue in the course of the litigation."[27]

      Moreover, the information provided in the Declaration of Jay Hieb does not require the Court to engage in excessive speculation or judicial stargazing.  Rather, as the *Pretka* panel observed, a removing defendant may sometimes be in a unique position to supply information on the value of the claims of the plaintiff as well as those of other class members.[28]   The Defendant in this case is in such a unique position to shed light on the value of the claims of the putative class members.  Defendant has

---

[26] Defendant also makes an additional argument that if Plaintiffs' claims are substantially similar to those of the other class members, then the amount in controversy would exceed the jurisdictional requirement under CAFA by almost twenty-fold. Defendant arrives at this figure by multiplying the actual damages of $100,000 that Plaintiffs seek for themselves by the 1,000 putative class members to arrive at a total amount in controversy of $100,000,000.  Alternatively, Defendant also notes that it would only take 50 class members with claims equal in size to the $100,000 Plaintiffs claim to have suffered to meet the CAFA jurisdictional amount in controversy requirement.

[27]   Angrignon v. KLI, Inc., No. 08-81218-CIV, 2009 WL 506954, at *2 n.3 (S.D. Fla. Feb. 27, 2009).

[28] Pretka, at 754.

unique access to crucial sources of information as to the possible extent and amount of the claims of the putative class members, as Defendant issued all the policies at issue and maintains a database containing records of the limits of UM coverage provided under the policies issued to the putative class members. Accordingly, the information supplied by Mr. Hieb is fact specific, not speculative, and is more than sufficient to establish the amount in controversy to satisfy the $5,000,000 CAFA threshold.

Plaintiffs also points to the fact that because the class in this case is divided into a damages subclass and a declaratory/injunctive relief subclass the damage claims of each subclass cannot be treated the same because each subclass seeks different remedies. This argument ignores the fact that even though different remedies may be sought in each subclass the value of the litigation is the same for each subclass. Members of each subclass are owners of an automobile policy issued by Defendant, which contains the purportedly illegal policy language.  While members of the damages subclass already have been denied the UM coverage –  and members of the declaratory/injunctive relief subclass have not yet been denied the stackable UM coverage –  liability as to either subclass is dependent upon whether the language in the policy is void.  Thus, the value of this action to the members of the declaratory/injunctive relief subclass is the full limit of the UM coverage under their policy, the same amount at issue for members of the damages subclass, who already have been denied their claims. Therefore, contrary to Plaintiffs' view, the amount in controversy with respect to each subclass is also the same.

 Accordingly, based upon the calculations extrapolated from the declaration of Jay Hieb and read in conjunction with the allegations in the First Amended Class Action

16

Complaint, the Court concludes that the minimum amount in controversy in this case is at least $10,000,000[29] and, therefore, the Defendant has met is burden of satisfying the $5,000,000 amount in controversy requirement under CAFA. Plaintiffs' Motion To Remand is, therefore, due to be **DENIED**.

**B.      Plaintiffs' Motion For Jurisdictional Discovery**

Curiously, although Plaintiffs contend *Pretzka* does not control the Court's resolution of Plaintiffs' Motion to Remand, Plaintiffs point to *Pretzka* in support of their motion for permission to conduct jurisdictional discovery regarding the amount in controversy under CAFA. (Doc. 21.)

According to  Plaintiffs, allowing limited jurisdictional discovery focusing on the CAFA amount in controversy and the number of putative class members would "serve the interests of judicial economy and would establish this Court's jurisdiction, or lack thereof, efficiently."[30]  Specifically, Plaintiffs seek leave from this Court to discover information regarding, *inter alia*, the number of persons encompassed within the damages subclass, any claims filed by members of that subclass with Defendant, the monetary value of any such claims as well as the amount of UM coverage from another policy issued by Defendant that members of the damages subclass sought recovery.

---

[29] Because the amount in controversy at a minimum is double the threshold jurisdictional amount under CAFA the Court need not address Defendant's assertion in its Notice of Removal that the attorney's fees and costs recoverable under Fla. Stat. § 627.428 also should be included in determining the amount in controversy.

[30] Doc. 21, ¶ 2.

Plaintiffs' argument that they have a right to limited discovery on the issue of the amount in controversy is premised entirely upon a misreading of Judge Pryor's concurring opinion in *Pretka*. Judge Pryor wrote a concurring opinion in *Pretzka* to explain why "[he] doubt[s] the validity of the related holding of *Lowery v. Alabama Power Co.* that district courts may not also allow post-removal discovery regarding the amount in controversy under the Class Action Fairness Act." According to Judge Pryor "[t]hat view is inconsistent with Supreme Court precedent, the precedent of this Court, and hornbook law about federal practice."[31]  The right to take limited discovery that Judge Pryor referred to is, however, the right of the removing defendant to take limited discovery and not the right of the Plaintiffs to do so to bolster a motion to remand. This is so because the removing party – and not the plaintiff –  has the burden of establishing that the court has subject matter jurisdiction over the removed action. Thus, in his concurrence Judge Pryor was clarifying post-*Lowery* confusion and endorsing the right of removing defendants to take limited jurisdictional discovery in meeting their burden of establishing jurisdiction. The Plaintiffs, on the other hand, have no burden to satisfy and thus there would be no reason to allow the Plaintiffs to take limited jurisdictional discovery before a court addresses a motion to remand.

Accordingly, for this reason, Plaintiff's Motion for Jurisdictional Discovery (Doc. 21) is due to be **DENIED**.

---

[31] Pretzka at 774.

18

### III.  <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiffs' Motion To Remand (Doc. 19) and Motion For Jurisdictional Discovery (Doc. 21) should both be **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on September 23, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record