UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | | |
|---|---|---|
| METRY KELLY and EUGENIE KELLY, | ) | |
| his wife, and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 5:10-CV-194-OC-32GRJ |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | |
| INSURANCE COMPANY, a foreign | ) | |
| insurance corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR LEAVE TO FILE PLAINTIFFS'
SECOND AMENDED CLASS ACTION COMPLAINT**

COME NOW, METRY KELLY and EUGENIE KELLY, by and through their

undersigned counsel, and move this Court for leave to file Plaintiffs' Second Amended Class

Action Complaint, a copy of which is attached hereto, pursuant to Fed. R. Civ. P. 15(a)(2), and in

support thereof say:

1.      Fed. R. Civ. P. 15(a)(2) states that "a party may amend its pleading... with... the

court's leave.  The court should freely give leave when justice so requires."

2.      Though the grant or denial of an opportunity to amend is within the discretion of

the District Court, "Rule 15 (a) declares that leave to amend 'shall be freely given when justice

so requires'; this mandate is to be heeded. [Citation omitted].  If the underlying facts or

circumstances relied upon by the plaintiff may be a proper subject for relief, he ought to be

afforded an opportunity to test his claim on the merits." *Forman v. Davis*, 371 U.S. 178, 182 (1962).

3.     This amended pleading will in no way prejudice Defendant, given that there is still ample time before trial for Defendant to establish a defense against the pleading. Furthermore, the privilege to amend has not been abused, nor would the proposed amendment be futile.  This motion and Plaintiffs' Second Amended Class Action Complaint are not submitted for the purposes of effecting undue delay, or for any bad faith or dilatory motive.

4.     Plaintiffs' counsel has conferred with Defendant's counsel regarding this motion. Defendant does not oppose this motion and has specifically responded as follows:  "Defendant does not oppose Plaintiffs' motion for leave to file its Second Amended Class Action Complaint, although its non-opposition in no way shall be construed as any concession by Defendant that the proposed amended complaint sets forth any viable class action or that Plaintiffs are adequate representatives of the putative class they seek to represent."

WHEREFORE, Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Leave to File Plaintiffs' Second Amended Class Action Complaint.

Respectfully submitted this 12th day of November, 2010

                                              /s/ Paul S. Rothstein
                                              Paul S. Rothstein
                                              Attorney for Plaintiffs
                                              Florida Bar No.: 310123
                                              626 N. E. First Street
                                              Gainesville, Florida 32601
                                              Phone: (352) 376-7650
                                              Fax: (352) 374-7133

## CERTIFICATE OF SERVICE

I certify I presented the foregoing PLAINTIFFS' MOTION FOR LEAVE TO FILE PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT to the Clerk of Court for filing and uploading to the EM/ECF system, which will send a Notice of Electronic Filing to the following:

John W Weihmuller
weihmuller@butlerpappas.com
Brian D. Webb
bwebb@butlerpappas.com
Butler Pappas, LLP
Suite 500
777 S Harbour Island Blvd
Tampa, FL 33602-5723
813/281-1900
813/281-0900 (fax)

Kyle G.A. Wallace
kyle.wallace@alston.com
Allison S. Thompson
allison.thompson@alston.com
Alston & Bird, LLP
Suite 4200
1201 W Peachtree St NE
Atlanta, GA 30309-3424
404/881-7000
404/881-7777 (fax)

Cari K. Dawson
cari.dawson@alston.com
Alston & Bird, LLP
1201 W Peachtree St
Atlanta, GA 30309-3424
404/881-7766
404/881-7777 (fax)

This 12th day of November, 2010.

_____/s/ Paul S. Rothstein_____
PAUL S. ROTHSTEIN

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

METRY KELLY and EUGENIE KELLY,  )
his wife, and all others similarly situated,  )
                                        )
        Plaintiffs,  )     Case No.: 5:10-CV-194-OC-32GRJ
                                          )
v.  )
                                          )
STATE FARM MUTUAL AUTOMOBILE  )
INSURANCE COMPANY, a foreign  )
insurance corporation,  )
                                          )
        Defendant.  )
_____)

## PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

COME NOW PLAINTIFFS, Metry Kelly and Eugenie Kelly (collectively "Plaintiffs"),

on behalf of themselves and all others similarly situated, by and through their undersigned

counsel, and file this Plaintiffs' Second Amended Class Action Complaint against Defendant

State Farm Mutual Automobile Insurance Company ("Defendant State Farm"), and in support

thereof state:

### I.  Jurisdiction and Venue

1.     This action was originally filed in the Circuit Court for the Fifth Judicial Circuit, in and

       for Marion County, Florida.  Defendant State Farm subsequently removed this action to

       this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Plaintiffs filed

       Plaintiffs' Motion to Remand on June 7, 2010.  Defendant State Farm responded and the

       matter was referred to a magistrate.  On September 23, 2010 Magistrate Judge Gary R.

       Jones issued a Report and Recommendation recommending that Plaintiffs' Motion to

1

Remand be denied.  The 14 days in which Plaintiffs had to object to that recommendation have elapsed, and Plaintiffs have not objected.  Thus this Court has jurisdiction over this action, and venue is proper, based on the foregoing facts.

## II.  General Allegations

2.    At all material times hereto, Plaintiffs maintained an insurance policy with State Farm, policy number 159-0586-D11-59B ("Policy A"), which contained uninsured/underinsured motorist ("UM") coverage.  The declaration page and insurance policy are attached hereto as Exhibit "A."  Policy A was delivered or issued for delivery in the State of Florida.

3.    At all times material hereto Plaintiffs maintained an insurance policy issued by Defendant State Farm to Plaintiffs, policy number 37 1547-A03-19 ("Policy B"), which contained UM coverage.  Attached hereto as Exhibit "B" is a copy of the Coverages and Limits for the policy and a copy of the policy.  Policy B was originally purchased by Plaintiffs in the State of Maine.  Plaintiffs subsequently moved to Florida.  After Plaintiffs moved to Florida, Policy B was subsequently delivered or issued for delivery in the State of Florida on a vehicle principally garaged in Florida.

4.    When Policy B was delivered or issued for delivery in the State of Florida, State Farm failed to provide Plaintiffs with notice of the limitations on UM coverage contained in Florida Statutes § 627.727(9)(a) through (9)(e), and of the fact that the limitations on UM coverage contained in Policy B was an alternative to coverage without such limitations, as required by Florida Statutes § 627.727(9).

5.    At all times material hereto, Plaintiffs have timely paid the premiums on both insurance policies.  Plaintiffs have in this and all other ways fulfilled any and all conditions

precedent to Defendant State Farm's performance under both insurance policies.

6.      On or about September 24, 2008, Muraice E. Reid owned a motor vehicle which was
operated with his consent by Jelecia Reid in or around Ocala, Florida.  At that time and
place Jelecia Reid negligently operated and/or Muraice E. Reid negligently maintained
the motor vehicle so that it collided with the vehicle owned and operated by Plaintiff
Metry Kelly, and insured under Policy A.

7.      As a direct and proximate result of the foregoing negligence of Muraice E. Reid and/or
Jelecia Reid, as described in Paragraph 5, Plaintiff Metry Kelly suffered bodily injury and
resulting pain and suffering, impairment, disability, disfigurement, mental anguish, loss
of capacity for the enjoyment of life, expense of hospitalization, medial and nursing care
and treatment, and aggravation of a previously existing condition.  The injury to Plaintiff
Metry Kelly is permanent within a reasonable degree of medical probability and Plaintiff
Metry Kelly will continue to suffer the losses in the future.

8.      As a further, direct and proximate result of the foregoing negligence of Muraice E. Reid
and/or Jelecia Reid, as described in Paragraph 5, Plaintiff Eugenie Kelly has incurred
medical and hospital expenses for the treatment and care of her husband, Plaintiff Metry
Kelly, and has in the past and will in the future suffer the loss of her husband's services,
companionship, and consortium.

9.      The value of Plaintiffs' damages exceeds the available liability insurance coverage
(which Plaintiffs have already received and were given written permission by Defendant
State Farm to accept), and available UM coverage under Policy A, policy number 159-
0586-D11-59B.  The value of Plaintiffs' damages also exceeds the UM coverage under

3

Policy B, policy number 37 1547-A03-19, which Plaintiffs were denied based on policy

language inconsistent with Florida law.

10.    Plaintiffs have attempted to collect the UM coverage available to them under Policy B,

policy number 37 1547-A03-19, however, Defendant State Farm has denied Plaintiffs the

UM coverage from Policy B, policy number 37 1547-A03-19.

11.    The language in Plaintiffs' Policy B limiting the UM coverage is on page 16 of the policy

under the section **If There Is Other Coverage**.

12.    The above referenced language in Plaintiffs' Policy B on page 16, under the section **If**

**There Is Other Coverage**, ambiguously and unclearly limits Plaintiffs' UM coverage in

violation of Florida Statute § 627.727(9)(a), read in conjunction with  Florida Statute §

627.727(9)(c), which state:

 "(9) Insurers may offer policies of uninsured motorist coverage containing policy
 provisions, in language approved by the office, establishing that if the insured accepts
 this offer: (a) The coverage provided as to two or more motor vehicles shall not be added
 together to determine the limit of insurance coverage available to an injured person for
 any one accident, except as provided in paragraph (c). ... (c) If the injured person is
 occupying a motor vehicle which is not owned by her or him or by a family member
 residing with her or him, the injured person is entitled to the highest limits of uninsured
 motorist coverage afforded for any one vehicle as to which she or he is a named insured
 or insured family member. Such coverage shall be excess over the coverage on the
 vehicle the injured person is occupying."

13.    Upon information and belief, Defendant State Farm has denied Plaintiffs' UM coverage

under Policy B, policy number 37 1547-A03-19, based on the policy language referenced

in Paragraph 10, which is inconsistent with Florida law.

14.    The language in Plaintiffs' Policy B limiting the UM coverage is on page 16 of the policy

under the section **When Coverage U Does Not Apply**, which states: "There is no

4

coverage... 2) For bodily injury to an insured: a. While occupying a motor vehicle owned by or leased to you, your spouse, or any relative if it is not insured for this coverage under this policy."

15.   The above-quoted language purporting to limit the application of the UM coverage violates Florida Statute § 627.727(9)(d), which states:

 "(9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer: (d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insured for which uninsured motorist coverage was not purchased."

16.   Upon information and belief, Defendant State Farm has denied Plaintiffs' UM coverage under Policy B, policy number 37 1547-A03-19, based on the policy language quoted in Paragraph 13.

17.   As a result of Defendant State Farm's failure to provide Plaintiffs the notice required by Florida Statutes § 627.727(9), as alleged in Paragraph 4, the language limiting UM coverage in Policy B is void and cannot be used to limit the stackability of the UM coverage under Policy B.

18.   Upon information and belief, Defendant State Farm has issued more than 100 automobile insurance policies which: (1) include UM coverage, (2) purport to limit UM coverage in a way inconsistent with Florida law, (3) were first issued in a state other than Florida, and (4) were subsequently delivered or issued for delivery in the State of Florida by Defendant State Farm with respect to a motor vehicle registered or principally garaged in Florida.

5

19.    These policies include limitations on UM coverage which use substantially similar, if not identical language as those in Plaintiffs' Policy B.

20.    Upon information and belief, Defendant State Farm has denied UM coverage to numerous class members based on the same or substantially similar language in their insurance policies, which language is the same or substantially similar as the language in Policy B that purports to limit UM coverage.

21.    Because Defendant State Farm relied and continues to rely on language in its insurance policies that limits the UM coverage in a way inconsistent with Florida law, those provisions are void, and Defendant State Farm is liable to Plaintiffs and class members for the full amount of UM coverage denied under the illegal language.

22.    Upon information and belief, Defendant State Farm has issued more than 100 automobile insurance policies which: (1) include UM coverage, (2) included limitations on UM coverage, (3) were first issued in a state other than Florida, (4) were subsequently delivered or issued for delivery in the State of Florida by Defendant State Farm with respect to a motor vehicle registered or principally garaged in Florida, and (5) regarding which State Farm did not provide notice of the limitations on UM coverage and that such limited coverage is an alternative to coverage without those limitations, as required by Florida Statutes § 627.727(9).

23.    Upon information and belief, Defendant State Farm has denied and will continue to deny UM coverage to numerous class members based on language that is void because those class members did not receive the notice required by Florida Statutes § 627.727(9).

6

### III.  Class Representation Allegations

24.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as

members of two Damages Subclasses, pursuant to Rule 23, Fed. R. Civ. P. for breach of

contract based on violations of F.S. § 627.727(9).  Plaintiffs bring this action on behalf of

themselves and all others similarly situated as members of two Declaratory/Injunctive

Relief Subclasses pursuant to Rule 23, Fed. R. Civ. P.

25.     The Damages (Inconsistent Language) Subclass is defined as:

    a.    Each person who is, or was, an insured under multiple (i.e., two or more) automobile liability insurance policies,
        i.    Both of which (1) were purchased on different vehicles owned by an insured; and (2) included UM coverage; and
        ii.    At least one of which (1) purported to limit UM coverage in a way inconsistent with Florida law, and (2) was first issued in a state other than Florida, and (3) was subsequently delivered or issued for delivery in the State of Florida by Defendant State Farm with respect to a motor vehicle registered or principally garaged in Florida;
    b.    Who was damaged as a result of the fault of an uninsured and/or underinsured motorist;
    c.    Whose damages exceeded available liability coverage from the insurance of the uninsured/underinsured driver and the UM coverage available under the policy covering the vehicle in which the insured was injured; and
    d.    Who attempted to stack the UM coverage of the policy that purported to limit UM coverage in a way inconsistent with Florida law with the UM coverage available under the policy covering the vehicle in which the insured was injured; and
    e.    Who was denied UM coverage from the policy that purported to limit UM coverage in a way inconsistent with Florida law; and
    f.    Who met the preceding conditions not more than six (6) years before April 8, 2010.

26.     The Damages (Notice) Subclass is defined as:

    a.    Each person who is, or was, an insured under multiple (i.e., two or more) automobile liability insurance policies,
        i.    Both of which (1) were purchased on different vehicles owned by an insured; and (2) included UM coverage; and
        ii.    At least one of which (1) included language that limited UM coverage, and

(2) was first issued in a state other than Florida, and (3) was subsequently delivered or issued for delivery in the State of Florida by Defendant State Farm with respect to a motor vehicle registered or principally garaged in Florida, and (4) regarding which policy Defendant State Farm did not provide notice as required by Florida Statutes § 627.727(9);

b.  Who was damaged as a result of the fault of an uninsured and/or underinsured motorist;

c.  Whose damages exceeded available liability coverage from the insurance of the uninsured/underinsured driver and the UM coverage available under the policy covering the vehicle in which the insured was injured; and

d.  Who attempted to stack the UM coverage of the policy regarding which Defendant State Farm did not provide the notice required by Florida Statutes § 627.727(9) with the UM coverage available under the policy covering the vehicle in which the insured was injured; and

e.  Who was denied UM coverage from the policy regarding which Defendant State Farm did not provide the notice required by Florida Statutes § 627.727(9); and

f.  Who met the preceding conditions not more than six (6) years before April 8, 2010.

27.  The Declaratory/Injunctive Relief (Inconsistent Language) Subclass is defined as:

a.  Each person who is insured under an automobile liability insurance policy that:
    i.  Includes UM coverage,
    ii.  Purports to limit UM coverage in a way inconsistent with Florida law,
    iii.  Was first issued in a state other than Florida, and
    iv.  Was subsequently delivered or issued for delivery in the State of Florida by Defendant State Farm with respect to a motor vehicle registered or principally garaged in Florida.

28.  The Declaratory/Injunctive Relief (Notice) Subclass is defined as:

a.  Each person who is insured under an automobile liability insurance policy that:
    i.  Includes UM coverage,
    ii.  Includes language limiting UM coverage,
    iii.  Was first issued in a state other than Florida,
    iv.  Was subsequently delivered or issued for delivery in the State of Florida by Defendant State Farm with respect to a motor vehicle registered or principally garaged in Florida, and
    v.  Regarding which Defendant State Farm did not provide notice as required by Florida Statutes § 627.727(9).

29.  Excluded from the class are Defendant, any entity in which Defendant has a controlling

8

interest, or which has a controlling interest in Defendant, and Defendant's officers, directors, agents, servants, employees, and legal representatives, and the members of the immediate family of any such person, as well as Defendant's assigns and successors. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family.  In addition, excluded from the class are (1) all persons who properly execute and timely file a Request for Exclusion, and (2) any persons who have obtained a judgment against Defendant on the claims here presented on or before the date of the filing of this action.

30.    The class is so numerous that joinder of all class members is impracticable. Upon  belief, the number of policies pertinent to this action exceeds the minimum number of policies necessary to warrant being brought as a class action.

31.    There are numerous questions of law and fact common to the class which predominate over any questions affecting only individual class members.

    a.    Common questions of fact include but are not limited to:

        i.    Whether Defendant State Farm breached its contract with Plaintiffs and class members by its refusal to allow Plaintiffs and class members to stack UM coverage;

        ii.    Whether Defendant State Farm provided notice to Plaintiffs and Class members as required by Florida Statutes § 627.727(9); and

        iii.    Whether Plaintiffs and class members are entitled to declaratory and injunctive relief.

    b.    Common questions of law include but are not limited to:

9

      i.     Whether the language of Defendant State Farm's automobile insurance policies (initially issued in a state other than Florida but subsequently delivered or issued for delivery in the State of Florida by Defendant State Farm with respect to a motor vehicle registered or principally garaged in Florida) purporting to limit UM coverage violates Florida Statutes § 627.727(9); and

      ii.     Whether Defendant State Farm's attempt to limit UM coverage in a way inconsistent with the Florida Statutes voids the UM coverage limitation provisions in the policies.

32.    Plaintiffs are typical class members.  Plaintiffs are members of both subclasses as defined.

33.    Plaintiffs will fairly and adequately protect and represent the interests of the class. Plaintiffs do not have any conflicts of interest with the class, since Plaintiffs' experiences are substantially similar to those of the class members.

34.    Proof of the claims of the Plaintiffs will also prove the claims of the class.

35.    Plaintiffs have retained counsel competent and experienced in class action litigation, and who will fairly and adequately represent the interests of the class.

36.    Plaintiffs and their counsel have or can acquire adequate financial resources to ensure that interests of the class will not be harmed.

37.    Class representation is superior to other available methods for the fair and efficient adjudication of the controversy.

      a.     This case is easily managed as a class action.  Plaintiffs believe that Defendant

10

State Farms's records of insurance policies are computerized, and that class members can be identified and notified without undue effort.

b.      A class action will allow the expeditious resolution of a large number of identical claims without duplication of time, effort and expense.

38.   Defendant State Farm has acted and refused to act upon grounds generally applicable to the class, therefore making final injunctive and declaratory relief concerning the class as a whole appropriate pursuant to Rule 23(b)(2), Fed. R. Civ. P.

39.   The Plaintiffs believe and therefore aver that the Plaintiffs and a significant number of class members are residents of Florida, that a significant number of members of the class conducted business transactions with Defendant State Farm in Florida, and that Defendant State Farm has offices and does business in the Middle District of Florida, making the Middle District of Florida the appropriate forum for the litigation of the claims of the entire class.

40.   Because the claims of the class members are so similar, the prosecution of separate claims by each class member would create a risk that inconsistent or varying adjudications concerning individual class members which would establish incompatible standards of conduct for the party opposing the class, or the prosecution of separate claims by each class member would create the risk of adjudications which would be dispositive of other class members who were not parties to the adjudications, or would substantially impair or impede the ability of other class members who are not party to the adjudications to protect their interests.

11

**Count I**
**Declaratory and Injunctive Relief**

41.   Plaintiffs incorporate and reallege paragraphs 1 through 40 as if fully set forth herein.

42.   Plaintiffs and Class members are without adequate remedy at law, making injunctive and
declaratory relief appropriate.

43.   Plaintiffs and Class members will suffer irreparable harm if the Court does not render the
injunctive and declaratory relief requested in this complaint.

44.   Upon information and belief, without declaratory and injunctive relief, Defendant State
Farm will continue to improperly deny class members UM coverage for which class
members paid premiums, based on policy language that violates the laws of Florida
and/or based on policy language that is void as a result of Defendant State Farm's failure
to provide the notice required by Florida Statutes § 627.727(9).

45.   There is an actual case and controversy between Plaintiffs and class members and
Defendant State Farm regarding Defendant's obligations to stack UM coverage under
automobile insurance policies.  Plaintiffs and class members have an interest in the
declaration of their rights and legal relations to Defendant State Farm regarding their
policies of UM coverage.  The two issues in controversy are (1) whether Defendant State
Farm has and is attempting to limit UM coverage in a way inconsistent with Florida
Statutes § 627.727(9), and (2) whether Defendant State Farm has and is attempting to
deny UM coverage based on language that is void as a result of Defendant State Farm's
failure to provide the notice required by Florida Statutes § 627.727(9).

46.   Plaintiffs and class members are informed and believe that they are entitled to declaratory

12

relief declaring that the above-referenced language in Defendant State Farm's automobile insurance policies violates F.S. § 627.727(9) and is therefore void, and that Defendant State Farm has and is attempting to limit UM coverage in a way inconsistent with Florida law.  Plaintiffs and class members are informed and believe that they are entitled to injunctive relief requiring Defendant State Farm to provide UM coverage in language consistent with Florida law, and requiring Defendant State Farm to base any future determination of the stackability of UM coverage on the language of the Florida statutes, rather than on the illegally limiting language of its policies.  Plaintiffs and class members are informed and believe that they are entitled to injunctive relief prohibiting Defendant State Farm from limiting UM coverage in a way inconsistent with Florida law.

47.   Plaintiffs and class members are informed and believe that they are entitled to declaratory relief declaring that the limitations on UM coverage contained in policies regarding which Defendant State Farm failed to provide the notice required by Florida Statutes § 627.727(9) are void, and that Defendant State Farm has and is attempting to deny UM coverage based on language that is void under Florida law.  Plaintiffs and class members are informed and believe that they are entitled to injunctive relief requiring Defendant State Farm to cease denying UM coverage based on language limiting UM coverage in policies regarding which Defendant State Farm has not provided the notice required by Florida Statutes § 627.727(9).

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.   Certify a statewide class pursuant to Rule 23, Fed. R. Civ. P.;

B.   Appoint the Plaintiffs to be the representatives of the Class;

13

C.     Appoint the undersigned attorneys as counsel for the Class;

D.     Enter an order granting the following Declaratory and Injunctive relief:

1.     Declaring that the language in Defendant State Farm's automobile insurance policies purporting to limit UM coverage violates F.S. § 627.727(9) and is therefore void, and that Defendant State Farm has limited and is attempting to limit UM coverage in a way inconsistent with Florida law;

2.     Declaring that the limitations on UM coverage contained in policies regarding which Defendant State Farm failed to provide notice as required by F.S. § 627.727(9) are void, and that Defendant State Farm has denied and is attempting to deny UM coverage based on language that is void under Florida law;

3.     Enjoining Defendant State Farm from limiting UM coverage in a way inconsistent with Florida law, and requiring Defendant State Farm to base any future determination of UM coverage on the language of the Florida statutes, or policy language consistent with the Florida statutes;

4.     Enjoining Defendant State Farm from denying UM coverage based on language limiting UM coverage in policies regarding which Defendant State Farm has not provided the notice required by Florida Statutes § 627.727(9);

F.     Award attorneys' fees and costs; and

14

G.      Grant such further relief as this Court deems just and proper.

## Count II
## Breach of Contract

48.     Plaintiffs incorporate and reallege paragraphs 1 through 40 as if fully set forth herein.

49.     Plaintiffs have timely paid the premiums on both Policy A and Policy B issued by Defendant State Farm and containing UM coverage.  Plaintiffs have fulfilled any and all other conditions precedent to Defendant State Farm's performance under Policy A and Policy B.

50.     Plaintiffs made a proper and timely claim for the UM coverage contained in Policy B.

51.     Defendant State Farm has denied Plaintiffs UM coverage under Policy B.

52.     Defendant State Farm had and has an obligation under its contract with Plaintiffs contained in Policy B to provide Plaintiffs with the UM coverage contained in Policy B.

53.     Defendant State Farm has failed to, and continues to fail to, meet its obligations to provide Plaintiffs with UM coverage under Policy B.

54.     Defendant State Farm's refusal to allow Plaintiffs to "aggregate" or "stack" the UM coverages provided under Policy B onto that provided by Policy A constitutes a material breach of contract by Defendant State Farm.

55.     As a direct and proximate result of Defendant State Farm's breach of contract, Plaintiffs have suffered actual damages.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.      Certify a statewide class pursuant to Rule 23, Fed. R. Civ. P.;

B.      Appoint the Plaintiffs to be the representatives of the Class;

15

C.     Appoint the undersigned attorneys as counsel for the Class;

D.     Award actual damages to Plaintiffs and other class members;

E.     Award attorneys' fees and costs; and

F.     Grant such further relief as this Court deems just and proper.

## Demand For Jury Trial

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this ___ of November, 2010.

_____

Paul S. Rothstein
Attorney for Plaintiffs
Florida Bar No.: 310123
626 N. E. First Street
Gainesville, Florida 32601
Phone: (352) 376-7650
Fax: (352) 374-7133

John Piccin
Attorney for Plaintiffs
Florida Bar No. 0194033
PICCIN LAW FIRM
Post Office Box 159
Ocala, Florida 34478-0159
Phone: (352) 351-5446
Fax: (352) 351-8057

16

## CERTIFICATE OF SERVICE

I certify I presented the foregoing PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT to the Clerk of Court for filing and uploading to the EM/ECF system, which will send a Notice of Electronic Filing to the following:

John W Weihmuller
weihmuller@butlerpappas.com
Brian D. Webb
bwebb@butlerpappas.com
Butler Pappas, LLP
Suite 500
777 S Harbour Island Blvd
Tampa, FL 33602-5723
813/281-1900
813/281-0900 (fax)

Kyle G.A. Wallace
kyle.wallace@alston.com
Allison S. Thompson
allison.thompson@alston.com
Alston & Bird, LLP
Suite 4200
1201 W Peachtree St NE
Atlanta, GA 30309-3424
404/881-7000
404/881-7777 (fax)

Cari K. Dawson
cari.dawson@alston.com
Alston & Bird, LLP*
1201 W Peachtree St
Atlanta, GA 30309-3424
404/881-7766
404/881-7777 (fax)

This ___ day of November, 2010.


_____
PAUL S. ROTHSTEIN

17



Feb. 8. 2010. 9:48AM    RANDOM Piccin & Glynn

State Farm Mutual Automobile Insurance Company
740 Cypress Gardens Boulevard
Winter Haven FL 33888

**PREMIUM NOTICE**    No. 9067    P. 4

| POLICY NUMBER | 159 0586-D11-59B |
|---|---|
| APR 11 2008 to OCT 11 2008 | |

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| APR 11 2008 | $293.15 |

ATT
KELLY, METRY & EUGENIE    633D -6859    A
10511 SW 66TH CT
OCALA FL 34476-9365

| | Coverages and Limits | Premiums |
|---|---|---|
| A | Liability | |
| | Bodily Injury 100,000/300,000 | |
| | Property Damage 100,000 | 134.28 |
| P10 | No Fault | 34.41 |
| D | 1000 Ded Comprehensive | 15.31 |
| G | 1000 Deductible Collision | 40.46 |
| U3 | Uninsured Motor Vehicle | |
| | Bodily Injury 100,000/300,000 | 65.79 |
| | Premium Amount | 290.25 |
| | Plus FHCF Assessment | 2.90 |
| | **Amount Due** | **$293.15** |

*Your premium is based on the following . . . if not correct, contact your agent.*
2000 GMC C3500    VIN  1GTHC39J6YF457394
Class   6B3H50H000

Drivers of vehicle in your household...
Principal driver is age 50 - 74 and there are no unmarried drivers under 25 assigned to this car.
As of APR 11 2008 our records show the principal driver of this vehicle will be age 54.

Ordinary use of vehicle...
Pleasure or not more than 30 miles weekly to and from work or school. Driven over 7,500 miles annually. (National average is 12,000 miles annually.)

Your premium has already been adjusted by the following:

Premium Reductions
| Multiple Line | 37.12 |
|---|---|
| Antilock Brakes | 8.93 |
| Multicar | 42.15 |
| Antitheft | 1.27 |
| Vehicle Safety | 17.45 |
| Accident-Free | 56.60 |

Your policy has increased 1% due to the Florida Hurricane Catastrophe Fund Assessment.

**CONVENIENT PAYMENT OPTION:** To use State Farm's 50-50 payment plan, submit one half of your premium plus a $2.00 handling charge. The balance will be due 60 days after your renewal date.

Your premium may be influenced by the drivers listed below and other individuals permitted to operate your vehicle. This list does not extend or expand coverage beyond that contained in this automobile policy. The drivers listed below are the drivers reported to us that own or regularly operate any vehicle in your household.

JOEL KELLY, METRY KELLY, EUGENIE KELLY.

If the above information is incomplete or inaccurate, or if you want to confirm the information we have in our records please contact your agent.

*** Your policy has the Guaranteed Renewal Endorsement. ***

*Thanks for letting us serve you...*

Agent   BARBARA J YOUNG INS AGCY INC
Telephone   (352)854-1800



**EXHIBIT**
A

87 7032 3983
See reverse side for important information.
Please keep this part for your record.
Prepared   FEB 21 2008



PLEASE READ YOUR POLICY CAREFULLY. IF YOU HAVE AN ACCIDENT, CONTACT YOUR STATE FARM AGENT OR ONE OF OUR CLAIM OFFICES AT ONCE. (SEE "REPORTING A CLAIM-INSURED'S DUTIES" IN THIS POLICY.)

Authorized Representative

State Farm Mutual Automobile Insurance Company, Home Office, Bloomington, Illinois

Florida Office   •   7401 Cypress Gardens Boulevard   •   Winter Haven, Florida 33888-0027

SPECIMEN POLICY

YOUR
STATE FARM
CAR
POLICY

SPECIMEN POLICY

Florida
Policy Form 9810.7

EXHIBIT "A"



# STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
## BLOOMINGTON, ILLINOIS
### A MUTUAL COMPANY

## DEFINED WORDS
### WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. You can pick them out easily.

*Bodily Injury* – means bodily injury to *a person* and sickness, disease or death which results from it.

*Car* – means a land motor vehicle with four or more wheels which is designed for use mainly on public roads. It does not include:

1. any vehicle while located for use as a dwelling or other premises; or

2. a truck-tractor designed to pull a trailer or semitrailer.

*Car Business* – means a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers.

*Insured* – means the person, persons or organization defined as *insureds* in the specific coverage. If the information you have provided State Farm is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period as set out in the provision titled *Premium* of the *Conditions* section of this policy.

*Loss* – defined in Sections IV and V.

*Newly Acquired Car* – means a *replacement car* or an *additional car*.

*Replacement Car* – means a car purchased by or leased to *you* or *your spouse* to replace *your car*. This policy will only provide coverage for the *replacement car* if *you* or *your spouse*:

1. tell us about it within 30 days after its delivery to *you* or *your spouse*; and

2. pay us any added amount due.

*Additional Car* – means an added car purchased by or leased to *you* or *your spouse*. This policy will only provide coverage for the *additional car* if:

1. it is a *private passenger car* and we insure all other *private passenger cars*; or

2. it is other than a *private passenger car* and we insure all *cars* owned by *you* or *your spouse* on the date of its delivery to *you* or *your spouse*.

This policy provides coverage for the *additional car* only until the earlier of:

1. 12:01 A.M. on the 31st day after the delivery of the car to *you* or *your spouse*; or

2. the effective date and time of a policy issued by us or any other company that describes the *car* on its declarations page.

*You* or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car*. Such policy will be issued only if both *you* and the vehicle are eligible for coverage at the time of application.

If a *newly acquired car* is not otherwise afforded comprehensive or collision coverage by this or any other policy, this policy will provide the comprehensive or collision coverage not otherwise provided for the *newly acquired car*. If such coverage is provided by this paragraph, it will apply only until 12:01 A.M. Standard Time at the address shown on the declarations page on the sixth day after the delivery of the *car* to *you* or *your spouse*. Any comprehensive or collision coverage provided by this paragraph is subject to a deductible of $500.

*Non-Owned Car* – means a *car* not owned, registered or leased by:

1. *you, your spouse*;

2. any *relative* unless the *car* meets the requirements described below;

3. any other person residing in the same household as *you*, *your spouse* or any *relative*; or

4. an employer of *you, your spouse* or any *relative*.

A *car* owned, registered or leased by a *relative* is considered a *non-owned car* if, at the time of the accident or loss, the *car* has been insured for liability

coverage within the last 30 days and is driven by an **insured** who does not own or lease the car.

**Non-owned car** does not include:

1. rented car while it is used in connection with the **insured's** employment or business; or

2. car which has been operated or rented by or in the possession of an **insured** during any part of each of the last 21 or more consecutive days. If the **insured** is an **insured** under one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy.

A **non-owned car** must be a car in the lawful possession of the person operating it.

**Occupying** – means in, on, entering or alighting from.

**Person** – means a human being.

**Private Passenger Car** – means a car:

1. with four wheels;

2. of the private passenger or station wagon type; and

3. designed solely to carry persons and their luggage.

**DECLARATIONS CONTINUED**

We, the **State Farm Mutual Automobile Insurance Company**, agree to insure **you** according to the terms of this policy based:

1. on **your** payment of premium for the coverages **you** chose; and

2. in reliance on **your** statement in these declarations.

**You** agree, by acceptance of this policy that:

1. the statements in these declarations are **your** statements and are true; and

2. we insure **you** on the basis **your** statements are true; and

3. this policy contains all of the agreements between **you** and us or any of our agents.

**Relative** – as used in Sections I, III, IV and V means a **person** related to **you** or **your** spouse by blood, marriage or adoption (including a ward or foster child) who resides primarily with **you**. It includes **your** unmarried and unemancipated child away at school.

As used in Section II, **relative** means a relative of any degree by blood or by marriage who usually makes his home in the same family unit, whether or not temporarily living elsewhere.

**Spouse** – means **your** husband or wife who resides primarily with **you**.

**Temporary Substitute Car** – means a car not owned by **you** or **your** spouse. If it replaces **your** car for a short time. Its car has to be with the consent of the owner. **Your** car has to be out of use due to its breakdown, repair, servicing, damage or loss. A temporary substitute car is not considered a non-owned car.

**Utility Vehicle** – means a motor vehicle with:

1. a pickup, panel or veh body; and

2. a Gross Vehicle Weight of 10,000 pounds or less.

**You or Your** – means the named insured or named insureds shown on the declarations page.

**Your Car** – means the car or the vehicle described on the declarations page.

Unless otherwise stated in the exceptions space on the declarations page, **your** statements are:

1. **Ownership. You** are the sole owner of **your** car.

2. **Insurance and License History** Neither **you** nor any member of **your** household within the for past 3 years has had:

   a. vehicle insurance canceled by an insurer;

   b. a license to drive or vehicle registration suspended, revoked or refused.

3. **Use. Your** car is used for pleasure and business.

8307

# WHEN AND WHERE COVERAGE APPLIES

**When Coverage Applies**

The coverage you chose apply to accidents and losses that take place during the policy period.

The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which you pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

**Where Coverage Applies**

1. The liability, medical payments, and insured motor vehicle and physical damage coverage of you chose apply:

   a. in the United States of America, its territories and possessions or Canada; or

   b. while the insured vehicle is being shipped between their ports.

If a creditor is shown in the declarations, we may pay any comprehensive or collision loss to:

1. you and/or unpaid the repairer; or

2. you and such creditor, as its interest may appear, when we find it is not practical to repair your car; or

3. the creditor, as to its interest, if your car has been repossessed.

When we pay the creditor for loss for which you are not covered, we are entitled to the creditor's right of recovery against you to the extent of our payment. Our right of recovery shall not impair the creditor's right to recover the full amount of its claim.

The liability, medical payments and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage loss in Mexico is determined on the basis of cost at the nearest United States point.

2. The no-fault coverage you chose applies:

   a. in Florida, and

   b. outside Florida, but:

      (1) within the United States of America, its territories or possessions or Canada; or

      (2) in Mexico within 50 miles of the United States border.

   to you or a relative, while occupying your car, a newly acquired car, a non-owned car, a temporary substitute car or a trailer which would be covered at no additional charge under the Trailer Coverage provision of either of the liability coverages.

3. The death, dismemberment and loss of sight coverage you chose applies anywhere in the world.

# FINANCED VEHICLES

The coverage for the creditor's interest only is valid until we terminate it. We will not terminate such coverage because of:

1. any act or negligence of the owner or borrower; or

2. a change in the ownership or interest unknown to us unless the creditor knew of it and failed to tell us within 10 days; or

3. an error in the description of the vehicle.

The date of termination of the creditor's interest will be at least 10 days after the date we mail the termination notice.

8107

## REPORTING A CLAIM — INSURED'S DUTIES

**1. Notice to Us of an Accident or Loss**

The *insured* must give us or one of our agents written notice of the accident or *loss* as soon as reasonably possible. The notice must give us:

a. *your* name; and

b. the names and addresses of all *persons* involved; and

c. the hour, date, place and facts of the accident or *loss*; and

d. the names and addresses of witnesses.

**2. Notice to Us of Claim or Suit**

If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice, claim, summons or legal process received.

**3. Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the property also shall:

a. make a prompt report to the police when the *loss* is the result of theft or larceny.

b. protect the damaged vehicle. We will pay any reasonable expense incurred to do it.

c. show us the damage, when we ask.

d. provide all records, receipts and invoices, or certified copies of them. We may make copies.

e. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

**4. Other Duties Under No-Fault, Medical Payments, Uninsured Motor Vehicle and Death, Dismemberment and Loss of Sight Coverages**

Any *person* who suffers a *bodily injury* which results in a MEDICAL PAYMENTS COVERAGE C claim must notify us of the claim in writing as soon as reasonably possible after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may give us the required notice on behalf of the injured *person*.

The *person* making claim also shall:

a. give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

b. be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative, if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

c. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

d. under the uninsured motor vehicle coverage:

(1) report an accident to the police within 24 hours and to us within 30 days if the accident involves a land motor vehicle with an unknown owner or driver.

(2) let us see the *insured car* the *person* occupied in the accident.

e. under the no-fault and uninsured motor vehicle coverage, send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

f. under the no-fault and death, dismemberment and loss of sight coverages, give us proof of claim as soon as practicable on forms we furnish.

**5. Insured's Duty to Cooperate With Us**

The *insured* shall cooperate with us and, when asked, assist us in:

a. making settlements;

b. securing and giving evidence;

c. attending, and getting witnesses to attend, hearings and trials.

d. The *insured* shall not, except at his or her own cost, voluntarily:

e. make any payment or assume any obligation to others; or

f. incur any expense, other than for first aid to others.

# SECTION I – LIABILITY COVERAGES

**LIABILITY – COVERAGE A.** You have this coverage if "A" appears in the "Coverages" space on the declarations page.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to or destruction of property including loss of its use,

   caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident:

1. Court costs of any suit for damages.

2. Interest on damages owed by the *insured* due to a judgment and accruing:

   a. after the judgment; and until we pay, offer or deposit in court, the amount due under this coverage; or

   b. before the judgment, when owed by law, but only on that part of the judgment we pay.

3. Premiums or costs of bonds:

   a. to secure the release of an *insured's* property attached under a court order. The amount of the bond we pay for shall not be more than our limit of liability; and

   b. required to appeal a decision in a suit for damages if we have not paid our limit of liability that applies to the suit; and

   c. up to $250 for each bail bond needed because of an accident or traffic violation.

   We have no duty to furnish or apply for any bonds.

4. Expense incurred by an *insured*:

   a. for loss of wages or salary up to $35 per day if we ask the *insured* to attend the trial of a civil suit.

---

   b. for first aid to others at the time of the accident.

   c. at our request.

We have the right to investigate, negotiate and settle any claim or suit.

**Coverage for the Use of Other Cars**

The liability coverage extends to the use, by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

**Who is an Insured**

When we refer to *your car*, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using such a car if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of such a car by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any *person* or organization which does not own or hire the car but is liable for its use by one of the above *persons*.

THERE IS NO COVERAGE FOR *NON-OWNED CARS*:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE IT IS:

   a. BEING REPAIRED, SERVICED, OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY CAR BUSINESS; OR

   b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or occupied

7p
8107

by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

## Trailer Coverage

1. Trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below, are covered while owned or used by an *insured*.

Farm implements and farm wagons are considered trailers while pulled on public roads by a car we insure for liability.

These trailers are not described in the declarations and no extra premium is charged.

2. The following trailers are covered only if described on the declarations page and extra premium is paid:

a. Unless trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

(1) if designed to carry *persons*; or

(2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

(3) while used as premises for office, store or display purposes; or

b. any trailer not designed for use with a *private passenger car* or a *utility vehicle*.

**THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE OWNED OR HIRED BY *YOU* WHICH WE DO NOT INSURE FOR LIABILITY COVERAGE.**

## Limits of Liability

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to *bodily injury* to two or more *persons* in the same accident.

The amount of property damage liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Property Damage, Each Accident."

We will pay damages for which an *insured* is legally liable up to these amounts.

The limits of liability are not increased because more than one *person* or organization may be an *insured*.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased.

When two or more motor vehicles are insured under this section the limits apply separately to each.

## When Coverage A Does Not Apply

In addition to the limitations of coverage in Who Is an Insured and Trailer Coverage:

**THERE IS NO COVERAGE:**

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

a. RENTED TO OTHERS OR USED TO CARRY PERSONS FOR A CHARGE. This does not apply to the use on a share expense basis of:

(1) a *private passenger car*; or

(2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

b. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A CAR BUSINESS. This does not apply to:

(1) *you* or *your spouse*;

(2) any *relative*;

(3) any resident of *your* household; or

(4) any agent, employee or partner of *you*, *your spouse*, any *relative* or such resident.

This coverage is excess for (3) and (4) above.

2. FOR ANY BODILY INJURY TO:

a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. You and *your spouse* are covered for such injury to a fellow employee.

b. ANY EMPLOYEE OF AN *INSURED* ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is not covered or required to be covered under any worker's compensation insurance.

**e.** ANY *INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD.

**3.** FOR:

  **a.** THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

  **b.** ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**4.** FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN CHARGE OF OR TRANSPORTED BY AN *INSURED* But coverage applies to a rented:

  **a.** residence; or

  **b.** *private* garage;

damaged by a *car* we insure.

**5.** FOR ANY OBLIGATION OF AN *INSURED* OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKER'S COMPENSATION OR DISABILITY OR SIMILAR LAW.

**6.** FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

**If There Is Other Liability Coverage or If You Own More Than One Vehicle**

**1. Vehicles You Own**

  **a.** If the vehicle *involved* in the accident is owned by you or *your* spouse, this coverage applies only if it is:

    (1) *your car;* or

    (2) a trailer described under "Trailer Coverage" for which no extra premium is charged; or

    (3) a *newly acquired car.* THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON THE *NEWLY ACQUIRED CAR.*

  **b.** If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed that of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us, bears to the sum of

---

the limits of liability of the policies issued by us and the other company.

**2. Policies Issued by Us to You, Your Spouse, or Any Relative**

If two or more vehicle liability policies issued by us to *you, your spouse,* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

**3. Temporary Substitute Car, Non-Owned Car, Trailer**

If a *temporary substitute car,* a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it, then this coverage is excess.

**4. Other Liability Coverage Available From Other Sources**

Subject to items 1, 2 and 3, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

**1. Out-of-State Coverage**

If an *insured* under the liability coverage in another state or in Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

  **a.** the policy will be interpreted to give the coverage required by the law; and

  **b.** the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

**2. Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

9
9067

**PROPERTY DAMAGE LIABILITY - COVERAGE B.** *You* have this coverage if "B" appears in the "Coverages" space on the declarations page.
We will:

1. pay, damages which *an insured* becomes legally liable to pay because of damage to or destruction of property including, loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend a suit against an *insured* for such property damage with attorneys hired and paid by us. If a suit seeks damages due to both property damage and *bodily injury* we will only defend the claim for property damage and the *insured* will be required to hire and pay attorneys to defend the claim for damages due to *bodily injury*. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

We have the right to investigate, negotiate and settle any claim or suit.

**Coverage for the Use of Other Cars**

The property damage liability coverage extends to the use by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

**Who Is an Insured**

When we refer to *your car*, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you*;
2. *your spouse*;
3. the *relatives* of the first person named in the declarations;
4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and
5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first person named in the declarations;
2. his or her *spouse*;
3. their *relatives*; and
4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above *persons*.

THERE IS NO COVERAGE FOR *NON-OWNED CARS*:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE:
   a. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR
   b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a private passenger car driven or occupied by the first person named in the declarations, his or her *spouse* or their *relatives*.

**Trailer Coverage**

1. **Trailers** designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below, are covered while owned or used by an *insured*.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

   These trailers are not described in the declarations and no extra premium is charged.

2. The following trailers are covered only if described on the declarations page and extra premium paid:
   a. those trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:
      (1) designed to carry *persons*; or
      (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not so shown and no extra premium paid); or
      (3) while used as premises for office, store or display purposes; or
   b. any trailer not designed for use with a *private passenger car* or *utility vehicle*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE OWNED OR HIRED BY *YOU* WHICH WE DO NOT INSURE FOR LIABILITY COVERAGE OR PROPERTY DAMAGE LIABILITY COVERAGE.

**Limit of Liability**

The amount of property damage liability coverage is shown on the declarations page.

10
6107

We will pay damages for which an *insured* is legally liable up to this amount.

The limit of liability is not increased because more than one *person* or organization may be an *insured*.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased.

When two or more motor vehicles are insured under this section the limit applies separately to each.

**When Coverage B Does Not Apply**

In addition to the limitations of coverage in Who Is an Insured and Trailer Coverage:

**THERE IS NO COVERAGE:**

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

   a. RENTED TO OTHERS OR USED TO CARRY *PERSONS* FOR A CHARGE:

      This does not apply to the use on a share expense basis of:

      (1) a *private passenger car*; or

      (2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers;

   b. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*. This does not apply to:

      (1) you or your spouse;

      (2) any *relative*;

      (3) any resident of your household; or

      (4) any agent, employee or partner of you, your spouse, and *relative* or such resident.

      This coverage is excess for (3) and (4) above.

2. FOR ANY *BODILY INJURY*.

3. FOR:

   a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

   b. ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN THE

CHARGE OF OR TRANSPORTED BY AN *INSURED*. But coverage applies to a rented:

a. residence; or

b. private garage

damaged by a car we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKERS' COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

**If There Is Other Liability Coverage or If You Own More Than One Vehicle**

1. **Vehicles You Own**

   a. If the vehicle involved in the accident is owned by you or your spouse, this coverage applies only to the:

      (1) *your car*; or

      (2) a trailer described under Trailer Coverage for which no extra premium is charged; or

      (3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON THE *NEWLY ACQUIRED CAR*.

   b. If *your car* is also described in a policy issued to you by another company, the total limit of liability shall not exceed that of the policy with the highest limit of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limit of liability of the policies issued by us and the other company.

2. **Policies Issued by Us to You, Your Spouse or Any Relative**

   If two or more vehicle liability policies issued by us to you, your spouse, or any *relative* apply to the same accident, the total limit of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

14
8107

**3. Temporary Substitute Car, Non-Owned Car, Trailer**

If a temporary substitute car, a non-owned car or a trailer designed for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it then this coverage is excess.

**4. Other Liability Coverage Available From Other Sources**

Subject to items 1, 2 and 3 of other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

**1. Out-of-State Coverage**

If an *insured* under the liability coverage is in another state or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance; financial responsibility or similar law:

a. the policy will be interpreted to give the coverage required by the law, and

b. the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a car insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *portion* collect more than once.

**2. Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

If you have Coverage B, the following changes are made to any endorsements which are a part of your policy:

1. The phrase "PROPERTY DAMAGE LIABILITY — COVERAGE B" replaces the phrases "Section I—Liability — Coverage A" and "Liability — Coverage A" wherever they are found.

2. The phrase, "When Coverage B Does Not Apply," replaces the phrase "When Coverage A Does Not Apply," wherever it is found.

3. Any reference to *bodily injury* is deleted from any provision which item 1 or 2 above makes applicable to PROPERTY DAMAGE LIABILITY — COVERAGE B.

## SECTION II — NO-FAULT — COVERAGE P AND MEDICAL PAYMENTS — COVERAGE C

**NO-FAULT — COVERAGE P.** You have this coverage if "P" with a number beside it appears in the "Coverages" space on the declarations page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the schedule in the Limits of Liability for the choice of options *you* made.

**What We Pay**

We will pay in accordance with the *No-Fault Act* for *bodily injury* in an accident caused by an accident resulting from the ownership, maintenance or use of a *motor vehicle*.

1. **Medical Expenses.** 80% of the reasonable charges incurred for necessary:

   a. medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitation services,

   b. eyeglasses, hearing aids and prosthetic devices, and

   c. remedial religious treatment or services by a recognized method of healing.

2. **Income Loss.** 60% of loss of income and earning capacity due to the *insured's* inability

12

9407
PMJ

to work caused by his of her *bodily injury* during the time the *insured* is not able to work.

3. Replacement Services Loss. Reasonable expenses incurred for ordinary and needed services the *insured* would have done, except for the injury, for the benefit of his or her household during the time the *insured* is not able to work.

**4. Death Benefit:** Death benefits of $5,000 per *person*.

*Insured* – means:

1. *you* or any *relatives*:

   a. while *occupying* a *motor vehicle*; or

   b. struck as a *pedestrian* by a *motor vehicle*.

2. anyone else while *occupying* of *which struck* as a *pedestrian* by *your car*, a *newly acquired car*, a *non-owned car*, a *temporary substitute car* or a trailer which would be covered if no additional charge under the Trailer Coverage provision of either of the liability coverages.

*Motor Vehicle* – means a vehicle with four or more wheels that:

1. is self-propelled and is of a type:

   a. designed for; and

   b. required to be licensed for use on Florida highways; or

2. is a trailer or semitrailer designed for use with a vehicle described in 1 above.

It does not include:

1. a mobile home; or

2. any motor vehicle which is:

   a. used in mass transit, other than public school transportation; and

   b. designed to transport more than five passengers, exclusive of the operator; and

   c. owned by a municipality, a transit authority, or a political subdivision of the state.

*No-Fault Act* – means the Florida Motor Vehicle No-Fault Law and any amendments.

*Pedestrian* – means a person while not an occupant of any self-propelled vehicle.

**Disputes Regarding Charges for Treatment of Injured Persons**

Any claim dispute involving medical benefits under this section of the policy, between us and a medical services or supplies provider (hereinafter referred to as health care provider) who has agreed to accept an assignment of personal injury protection benefits shall be decided by arbitration upon written request of either party, to wit:

Upon written request for arbitration, each party shall select an arbitrator. The two arbitrators shall attempt to select a third arbitrator. If they are unable to agree on a third arbitrator within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to appoint the third arbitrator. A written decision concurred upon by any two arbitrators shall be binding on each party.

As a condition of maintaining a claim dispute in arbitration, the health care provider shall make available for inspection and copying the entire file pertaining to the patient that is the subject of this proceeding. This file shall include patient questionnaires, reports, and test results, unless we advise in writing that certain of such materials need not be provided. No arbitration may be held until 30 days after the required request for arbitration and patient file has been supplied to us. Any arbitration award shall not exceed the personal injury protection coverage limits remaining on the policy.

The prevailing party to the arbitration shall be entitled to attorney's fees and costs. The prevailing party is determined as follows:

1. When the amount of personal injury protection benefits determined by arbitration exceeds the sum of the amount offered by us at arbitration plus 50 per cent of the difference between the amount of the claim asserted by the claimant at arbitration and the amount offered by us at arbitration, the claimant is the prevailing party.

2. When the amount of personal injury protection benefits determined by arbitration is less than the sum of the amount offered by us at arbitration plus 50 per cent of the difference between the amount of the claim asserted by the claimant at arbitration and the amount offered by us at arbitration, we are the prevailing party.

3. When neither subparagraph 1 above nor subparagraph 2 above applies, there is no prevailing party. For purposes of this paragraph, the

amount of the offeror claim at arbitration is the amount of the last written offer or claim made at least 30 days prior to the arbitration.

In the demand for arbitration, the party requesting arbitration must include a statement specifically identifying the issues for arbitration, for each examination or treatment in dispute. The other party must subsequently issue a statement specifying any other examinations or treatment and any other issues that it intends to raise in the arbitration. The parties may amend their statements up to 30 days prior to arbitration, provided that arbitration shall be limited to those identified issues and neither party may add additional issues during arbitration.

The arbitration shall take place in the county in which the health care provider is located. If they are located out of state, arbitration shall take place in the county in which the *insured* resides, unless the health care provider, and we agree to another place. Arbitration is subject to the provisions of the Florida Arbitration Code, Chapter 682 of the Florida Statutes.

This arbitration provision does not apply to disputes regarding the termination of personal injury protection benefits.

**Payment of Any Amount Due**

We will pay any amount due:

1. to an *insured*;

2. to a parent or guardian, if the *insured* is a minor or an incompetent *person*;

   a. to the surviving *spouse* or,

   at our option,

   to a *person* authorized by law to receive such payment; or

   b. to the *person* or organization rendering the treatment or services.

**When Payments Are Reduced**

We will reduce the amount payable by:

1. the deductible amount shown in the Schedule for *your* coverage symbol. The deductible amount does not apply to death benefits.

2. Military benefits paid or payable when the schedule shows the reduction for *your* coverage symbol; and

3. the amount of any workers' compensation benefits paid or payable for the same items of loss or expense.

**No Duplication of Benefits**

No *insured* shall recover twice for the same expense or loss under this or similar vehicle insurance or self-insurance.

**Reimbursement**

We have a right to recover our no-fault payments from the owner of or the company insuring a *motor vehicle* of a type not included in Par. 2b below if:

   we make a payment for *bodily injury* resulting from the *insured's occupying* or being struck as a *pedestrian* by that *motor vehicle*; and

2. the *motor vehicle* we insure for no-fault coverage is:

   a. a sedan, station wagon or jeep type vehicle; or

   b. a pickup, panel, van, camper or motor home type and not used mainly in an occupation, profession or business.

**Limits of Liability**

1. The most we pay.

The most we pay for each *insured* for all loss and expense from one accident shall be $10,000 less the amount of any reduction described under When Payments Are Reduced that applies to that *insured*.

## 2. SCHEDULE

| Coverage Symbol | Deductible That Applies To You | Deductible That Applies To Each Of Your Dependent Relatives | Reduction for Military Benefits Applies | Loss of Income Benefits Eliminated |
|---|---|---|---|---|
| P10 | None | None | No | No |
| P12 | None | None | No | No |
| P14 | None | None | No | Yes |
| P16 | None | None | Yes | Yes |
| P20 | $250 | None | No | No |
| P21 | $250 | $250 | No | No |
| P30 | $500 | None | No | No |
| P31 | $500 | $500 | No | No |
| P40 | $1000 | None | No | No |
| P41 | $1000 | $1000 | No | No |
| P50 | $2000 | None | No | No |
| P51 | $2000 | $2000 | No | No |

**If There Is Other No-Fault Coverage or If You Own More Than One Vehicle**

**1. Vehicles You Own**

a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

(1) *your car*; or

(2) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER NO-FAULT COVERAGE ON THE *NEWLY ACQUIRED CAR*.

b. If *your car* is also described in a policy issued to you by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

**2. Policies Issued by Us to You**

If two or more policies providing no-fault coverage issued by us to *you* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

**3. Coverage Available From Other Sources**

Subject to items 1 and 2 if other no-fault coverage applies, we will pay only our share. Our share is the per cent that the limit of liability of the policy issued by us bears to the total of all coverages applicable to the accident.

## What Is Not Covered Under Coverage P.

THERE IS NO COVERAGE:

**1. FOR *BODILY INJURY* TO:**

a. ANY *PEDESTRIAN* NOT A LEGAL RESIDENT OF FLORIDA. This does not apply to *you* or any *relative*.

b. ANY *PERSON* ENTITLED TO NO-FAULT BENEFITS FROM:

(1) THE OWNER OF A *MOTOR VEHICLE* OTHER THAN YOU OR

(2) THAT OWNER'S INSURER.

This does not apply to *you* or any *relative*.

**2. FOR ANY *PERSON*:**

a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* UNDER ANY OR THE FOLLOWING CIRCUMSTANCES:

(1) CAUSING *BODILY INJURY* TO HIMSELF OR HERSELF INTENTIONALLY; OR

(2) WHILE COMMITTING A FELONY.

b. WHOSE *BODILY INJURY* OCCURRED WHILE:

(1) DRIVING *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WITHOUT *YOUR PERMISSION*;

(2) *OCCUPYING A MOTOR VEHI-CLE* LOCATED FOR USE AS A DWELLING OR PREMISES;

WHO OWNS A *MOTOR VEHICLE* SUBJECT TO THE NO-FAULT ACT.

This does not apply to you and, if the accident occurs outside Florida, any relative while *occupying your car*.

3. FOR INCOME LOSS WHEN THE SCHED-ULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COV-ERAGE B SYMBOL.

**MEDICAL PAYMENTS — COVERAGE C.** *You* have this coverage if "C" appears in the "Coverage" space on the declarations page.

*We* will pay reasonable medical expenses incurred for *bodily injury* caused by *accident*. These *expenses* are for *necessary*:

1. medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services;

2. eyeglasses, hearing aids, and prosthetic devices;

3. remedial religious treatment or services by a recognized method of healing, and

4. funeral expenses

These incurred expenses must be:

1. for

2. for services performed, or

b. medical supplies, medication or drugs prescribed

by a medical provider licensed by the state to provide the specific medical services; and

2. for funeral services or remedial religious treatment or services by a recognized method of healing.

*We* have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

The *accident* must result from the ownership, maintenance or use of a motor vehicle.

**Persons for Whom Medical Expenses Are Payable**

*We* will pay medical expenses for *bodily injury* sustained by:

1. a. the first *person* named in the declarations;

b. his or her spouse; and

c. their *relatives*.

These *persons* have to sustain the *bodily injury*:

a. while they operate or *occupy* a vehicle covered under the liability section; or

b. through being struck as a *pedestrian* by a self-propelled vehicle or trailer.

*Pedestrian* means a *person* not an occupant of any self-propelled vehicle.

2. any other *person* while *occupying*:

a. a vehicle covered under the liability coverage, except a *non-owned car*. Such vehicle has to be used by a *person* who is insured under the liability coverage; or

b. a *non-owned car*. The *bodily injury* has to result from such *car's* operation or occupancy by the first *person* named in the declarations, his or her spouse or their *relatives*.

**Payment of Medical Expenses**

*We* may pay the injured *person* or any *person* or organization performing the services.

**Limit of Liability**

1. The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability" Coverage C — Each *Person*. The amount shown is $5,000. At most, the most *we* pay for funeral services is $3,000 per *person*.

2. This coverage is excess over any medical expenses paid or payable under any no-fault coverage. From which would be except for any reduction described under no-fault coverage F. When Payments Are Reduced and military benefits.

3. The liability and uninsured motor vehicle coverages shall be excess over and shall not pay again any medical expenses paid under this coverage.

**Two or More Vehicles**

1. A motor vehicle and attached trailer are one vehicle as respects limits.

2. When two or more motor vehicles are insured under this section the limits apply separately to each.

16
8107

**If There Are Other Medical Payments Coverage or If You Own More Than One Vehicle**

1. **Vehicles You Own**

   a. If the vehicle involved in the accident is owned by you or your spouse, this coverage applies only to:

      (1) Your car;

      (2) a trailer described under Trailer Coverage for which no extra premium is charged; or

      (3) a newly acquired car. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE MEDICAL PAYMENTS COVERAGE ON THE NEWLY ACQUIRED CAR.

      (b) If your car is also described in a policy issued to you by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

2. **Policies Issued by Us to You**

   If two or more vehicle policies providing medical payments coverage issued by us to your apply to the same accident, the total limits of liability under such policies shall not exceed that of the policy with the highest limit of liability.

3. **Temporary Substitute Car, Non-Owned Car, Trailer or Pedestrian**

   Subject to item 2, this coverage is excess if other vehicle medical payments coverage applies to:

   a. a temporary substitute car, a non-owned car or a trailer; or

   b. Bodily injury sustained by a pedestrian.

4. **Coverage Available From Other Sources**

   Subject to items 1, 2 and 3, if other vehicle medical payments coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the total of all vehicle medical payments coverage applicable to the accident.

**What Is Not Covered Under Coverage C?**

THERE IS NO COVERAGE UNDER MEDICAL PAYMENTS:

1. WHILE A *NON-OWNED CAR* IS USED:

   a. BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

   b. IN ANY OTHER BUSINESS OR JOB. This does not apply when the first *person* named in the declarations his, his or her *spouse* or any *relative* is operating, occupying or a *private passenger car*.

2. WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY ANY MOTOR VEHICLE OR TRAILER:

   a. DESIGNED MAINLY FOR USE OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. LOCATED FOR USE AS A RESIDENCE OR PREMISES; OR

   c. THAT RUNS ON RAILS OR CRAWLER TREADS.

3. FOR *BODILY INJURY* DUE TO WAR OF ANY KIND.

4. FOR MEDICAL EXPENSES FOR *BODILY INJURY*:

   a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY *YOU*, *YOUR SPOUSE*, OR ANY *RELATIVE*, WHICH IS NOT INSURED UNDER THIS COVERAGE; OR

   b. TO THE EXTENT WORKER'S COMPENSATION BENEFITS ARE REQUIRED TO BE PAYABLE; OR

   c. SUSTAINED BY ANY *PERSON*, other than the first *person* named in the declarations, his or her *spouse* or their *relatives*, WHILE *OCCUPYING* A *VEHICLE*:

      (1) RENTED TO OTHERS; OR

      (2) USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to a *private passenger car* used on a share expense basis.

   d. SUSTAINED BY ANY *PERSON* WHO AT THE TIME OF THE ACCIDENT:

      (1) OWNS A MOTOR VEHICLE SUBJECT TO THE *NO-FAULT ACT*; AND

      (2) IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

   This does not apply to *you* and, if the accident occurs outside Florida, any *relative* while *occupying your car*.

# SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U AND U3

## UNINSURED MOTOR VEHICLE — COVERAGE U

(Includes Underinsured Motor Vehicle Coverage on an Excess Basis)

*You* have this coverage if "U" appears in the "Coverages" space on the declarations page.

## UNINSURED MOTOR VEHICLE — COVERAGE U3

(Non-Stacking Optional Form)

*You* have this coverage if "U3" appears in the "Coverages" space on the declarations page.

## UNINSURED MOTOR VEHICLE — COVERAGES U and U3

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

The *bodily injury* must be a serious injury as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

*Uninsured Motor Vehicle* — means:

1. A land motor vehicle, the ownership, maintenance or use of which is:

   a. not insured, nor self-insured or not bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured or bonded for bodily injury liability, at the time of the accident, but:

      (1) the limits of liability of the insurance, self-insurance or bond are less than required by the financial responsibility law of the state where your car is mainly garaged; or

      (2) the limits of liability of the insurance, self-insurance or bond are less than the damages for *bodily injury* sustained by the *insured*; or

      (3) the insuring company or self-insurer denies coverage or is or becomes insolvent; or

2. a land motor vehicle whose owner or driver remains unknown and who was the proximate cause of *bodily injury* to an *insured*;

A self-insured motor vehicle is one owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law.

An *uninsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy, unless *you, your spouse* or any *relative* sustains *bodily injury* while the vehicle is being operated by a person other than *you, your spouse* or any *relative*;

2. furnished for the regular use of *you, your spouse* or any *relative*;

3. designed for use mainly off public roads except while on public roads; or

4. while located for use as premises.

## Who Is an *Insured* Coverage U

*Insured* — means the person or persons covered by uninsured motor vehicle coverage. This is:

1. the first person named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any other person while *occupying*:

   a. *your car*, a temporary substitute car, a newly acquired car or a trailer attached to such car. Such vehicle has to be used within the scope of the consent of *you* or your *spouse*; or

   b. a car not owned by *you, your spouse* or any *relative*, or a trailer attached to such a car. It has to be driven by the first person named in the declarations or that person's *spouse* and within the scope of the owner's consent.

   Such other person *occupying* a vehicle used to carry persons for a charge is not an *insured*. This does not apply to the use on a share *expense* basis.

18
S107

**5.** any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

**Coverage U3**

*Insured* means the person or persons covered by uninsured motor vehicle coverage. This is:

**1.** the first *person* named in the declarations;

**2.** his or her *spouse;*

**3.** their *relatives;* and

**4.** any other *person* while occupying:

   **a.** your *car,* a temporary *substitute car,* a *newly acquired car* or a trailer attached to such car. Such vehicle has to be used within the scope of the consent of you or *your spouse;* or

   **b.** a *car* not owned by *you, your spouse,* any *relative* or such other *person,* or a trailer attached to such a *car.* It has to be driven by the first *person* named in the declarations or that *person's spouse* and within the scope of the owner's consent.

Such other *person* occupying a vehicle need to carry *persons* for a charge is not an *insured.* This does not apply to the use on a share expense basis.

**5.** any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

**Deciding Fault and Amount — Coverages U and U3**

Two questions must be decided by agreement between the *insured* and *us:*

  **1.** Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle;* and

  **2.** If so, in what amount?

If there is no agreement, then:

**1.** If both parties consent, these questions shall be decided by arbitration as follows:

Each party will select a competent and impartial arbitrator. These two shall select a third one. The written decision of any two of the three arbitrators shall be binding on each party. If the two selected arbitrators are unable to agree on a third one within 30 days, the *insured* shall proceed as provided in item 2 below.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall take place in the county in which the *insured* resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used; or

**2.** If either party does not consent to arbitrate these questions or if the arbitrators selected by each party cannot agree on a third arbitrator, the *insured* shall:

  **a.** file a lawsuit in the proper court against the owner or driver of the *uninsured motor vehicle* and us, or, if such owner or driver is:

    **(1)** unknown; or

    **(2)** has been released from liability according to the terms of this provision, against us;

  **b.** upon filing, immediately give us copies of the summons and complaints filed by the *insured* in that action; and

  **c.** secure a judgment in that action. The judgment must be the final result of an actual trial and an appeal, if an appeal is taken.

**3.** If the *insured* files suit against the owner or driver of the *uninsured motor vehicle,* we have the right to defend on the issues of the legal liability of and the damages owed by such owner or driver.

If the *insured* reaches a settlement agreement with the party legally liable for the *insured's bodily injury* and his or her insurer, the *insured* must submit written notice to us, by certified or registered mail, of the proposed settlement agreement if:

  **a.** the settlement would not fully satisfy the *insured's* claim for *bodily injury;* and

  **b.** an *uninsured motor vehicle* claim has been or will be made against us.

If, within 30 days after our receipt of the notice of the proposed settlement, we:

  **a.** authorize the settlement; or

  **b.** fail to respond to

15

the *insured* may proceed to execute a full
release in favor of the party legally liable for
the *insured's bodily injury* and his or her
insurer, and finalize the proposed settlement
without losing the right to make an *uninsured
motor vehicle* claim against us.

If we refuse to authorize the proposed settle-
ment we must, within 30 days after receipt of
the notice, pay the *insured* the amount of the
written offer from the insurer of the party
legally liable for the *insured's bodily injury*.
We are then entitled to the subrogation
against the party legally liable for the *in-
sured's bodily injury* and his or her insurer
upon final resolution of the claim.

In determining the amount payable under this
coverage we may reduce the *insured's* dam-
ages by the amount of the liability limits of
the policy insuring the party legally liable for
the *bodily injury*.

Except as provided above:

1. We are not bound by any judgment against
any party obtained without our written con-
sent; and,

2. The *insured* shall not enter into any settle-
ment with any party legally liable for the
*insured's bodily injury* without our consent.
If the settlement agreement precludes our
right of recovery against such party.

**Payment of Any Amount Due – Coverages U and U3**

We will pay any amount due:

1. to the *insured*;

2. to a parent or guardian, if the *insured* is a
minor or an incompetent *person*;

3. to the surviving *spouse*; or

4. at our option, to a *person* authorized by law
to receive such payment.

**Limits of Liability**

**Coverage U**

1. The amount of coverage is shown on the decla-
rations page under "Limits of Liability – U – Each
Person, Each Accident". Under "Each Person" is
the amount of coverage for all damages due to
*bodily injury* to one *person*. "*Bodily injury* to
one *person*" includes all injury and damages to
others resulting from this *bodily injury*. Under
"Each Accident" is the total amount of coverage,
subject to the amount shown under "Each Per-
son", for all damages due to *bodily injury* to two
or more *persons* in the same accident.

2. This coverage is excess over, but shall not dupli-
cate, any amount;

   a. paid to or for the *insured* by or for any *person*
   or organization who is or may be held legally
   liable for the *bodily injury* to the *insured*; and

   b. paid or payable under:

      (1) any workers' compensation, **disability**
      benefits, or similar law;

      (2) the no-fault coverage, or which would be
      payable except for a deductible;

      (3) any *car* medical expense coverage; and

      (4) any *car* liability coverage.

3. The limits of liability are not increased because:

   a. more than one *vehicle* is insured under this
   policy; or

   b. more than one *person* is insured at the time
   of the accident.

**Coverage U3**

1. The amount of coverage is shown on the declara-
tions page under "Limits of Liability – U3 – Each
Person, Each Accident". Under "Each Person" is
the amount of coverage for all damages due to
*bodily injury* to one *person*. "*Bodily injury* to
one *person*" includes all injury and damages to
others resulting from this *bodily injury*. Under
"Each Accident" is the total amount of coverage,
subject to the amount shown under "Each Per-
son", for all damages due to *bodily injury* to two
or more *persons* in the same accident.

2. This coverage is excess over, but shall not dupli-
cate, any amount;

   a. paid to or for the *insured* by or for any *person*
   or organization who is or may be held legally
   liable for the *bodily injury* to the *insured*; and

   b. paid or payable under:

      (1) any workers' compensation, **disability**
      benefits, or similar law;

      (2) the no-fault coverage, or which would be
      payable except for a deductible;

      (3) any *car* medical expense coverage; and

      (4) any *car* liability coverage.

3. Except as provided in Item 3 of If There Is Other
Uninsured Motor Vehicle Coverage, regard-
less of the number of motor vehicles involved,
the number of *persons* covered or claims made,
vehicles or premiums shown in the policy, or
premiums paid, the limit of liability for uninsured
motor vehicle coverage shall not be added to or

20
SUTE

...ranked upon limits for such coverages applying to other motor vehicles to determine the amount of coverage available to an insured injured in any one accident.

4. The limits of liability are not increased because:

a. more than one vehicle is insured under this policy; or

b. more than one person is insured at the time of the accident.

**When Coverage U Does Not Apply**

THERE IS NO COVERAGE TO THE EXTENT IT BENEFITS:

1. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY.

2. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION, OR DISABILITY BENEFITS OR SIMILAR LAW.

3. ANY GOVERNMENTAL BODY OR AGENCY.

**When Coverage U3 Does Not Apply**

THERE IS NO COVERAGE

1. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION, OR DISABILITY BENEFITS OR SIMILAR LAW; or

c. ANY GOVERNMENTAL BODY OR AGENCY.

2. FOR BODILY INJURY TO AN INSURED WHILE OCCUPYING ANY VEHICLE OWNED BY YOU, YOUR SPOUSE, OR ANY RELATIVE IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY. This does not apply to an insured occupying a newly acquired car which has no uninsured motor vehicle coverage applicable to it.

**If There Is Other Uninsured Motor Vehicle Coverage**

Coverage U ...

Coverage U ...

1. If an insured is occupying or is struck as a pedestrian by a vehicle:

a. which is not your car, and

b. other uninsured motor vehicle coverage applies, this coverage is excess.

2. Subject to item 3 above, if either uninsured motor vehicle coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of the coverage issued by us bears to the total of all uninsured motor vehicle coverage applicable to the accident.

**Coverage U3**

1. If an insured sustains bodily injury while not occupying a motor vehicle and other uninsured motor vehicle coverage is available:

a. the insured must select the limit of one such coverage under which to make claim; and

b. THIS COVERAGE DOES NOT APPLY IF THE INSURED SELECTS ANY OTHER UNINSURED MOTOR VEHICLE COVERAGE UNDER WHICH TO MAKE CLAIM.

2. If the insured sustains bodily injury while occupying your car, and your car is described in the uninsured motor vehicle coverage:

a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident up to that limit of liability.

3. If an insured as defined in item 1, 2 or 3 of the definition of insured sustains bodily injury while occupying a vehicle not owned by you, your spouse or a relative, such insured person can select one uninsured motor vehicle coverage that covers the injured person as a named insured or relative to apply to the ... This coverage is excess over the coverage on the vehicle occupied ... This coverage is primary if there is no coverage on the vehicle occupied. THIS COVERAGE DOES NOT APPLY IF OTHER APPLICABLE COVERAGE IS SO SELECTED.

4. If an insured as defined in item 4 of the definition of insured sustains bodily injury while occupying a motor vehicle owned by you, your spouse, your relative, or such insured ... THIS COVERAGE DOES NOT APPLY TO SUCH INSURED IF THERE IS OTHER UNINSURED MOTOR VEHICLE COVERAGE.

Feb. 8. 2010 9:54AM   Piccin & Glynn                    No. 9067   P. 26

(1) APPLICABLE TO THE VEHICLE OC-
CUPIED; OR

(2) AVAILABLE TO SUCH *INSURED* AS
A NAMED INSURED OR INSURED
FAMILY MEMBER UNDER AN-
OTHER POLICY PROVIDING UNIN-
SURED MOTOR VEHICLE
COVERAGE.

b. and, subject to a. above, coverage under more
than one policy issued to *you*, *your spouse* or
*your relatives* is applicable, the injured per-
son can select one such uninsured motor ve-
hicle coverage to apply.

THIS COVERAGE DOES NOT APPLY IF
OTHER APPLICABLE COVERAGE IS SE-
LECTED.

## SECTION IV — PHYSICAL DAMAGE COVERAGES

*Loss* — means, when used in this section, each **direct**
and accidental loss of or damage to:

1. *your car*;

2. its equipment which is common to the use of
*your car* as a vehicle;

3. clothes and luggage insured; and

4. a detachable living quarters, attached or re-
moved from *your car* for storage. Detachable
living quarters includes its body and limbs
securely fixed in place as a permanent part of
the body. *You* must have told us about the
living quarters before the loss and paid any
extra premium needed.

Breakage of glass, or *loss* caused by missiles,
falling objects, fire, theft, larceny, explosion,
earthquake, windstorm, hail, water, flood,
malicious mischief or vandalism, riot or civil
commotion, is payable under this coverage.
*Loss* due to hitting or being hit by a bird or an
animal is payable under this coverage.

2. We will repay you for transportation costs if
*your car* is stolen. We will pay up to $16 per
day for the period that begins 48 hours after
*you* tell us of the theft. The period ends when
we offer to pay for *loss*.

**COMPREHENSIVE — COVERAGE D.** *You* have
this coverage if "D" appears in the "Coverages" space
on the declarations page. If a deductible applies, the
amount is shown by the number beside "D".

1. *Loss* to *Your Car* — We will pay for *loss* to
*your car* EXCEPT *LOSS BY COLLISION*
but only for the amount of each such *loss* in
excess of the deductible amount, if any. If the
*loss* is breakage of glass, the deductible does
not apply.

**COLLISION — 80% — COVERAGE F.** *You* have
this coverage if "F" appears in the "Coverages" space
on the declarations page.

We will pay 80% of the first $250 and 100% over that
amount of *loss* to *your car* caused by *collision*. If we
offer to pay for the repair of damaged windshield
glass instead of the replacement of the windshield and
*you* agree to have such repair made, we will pay the
full cost of repairing the windshield glass regardless
of *your* deductible. If the *collision* is with another
motor vehicle insured by us, we will pay 100% of the
*loss*.

22
9107

COLLISION – COVERAGE G. *You* have this coverage if "G" appears in the "Coverages" space on the declarations page. The deductible amount is shown by the number beside "G".

We will pay for *loss* to your *car* caused by *collision* but only for the amount of each such *loss* in excess of the deductible amount. If we elect to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible. If the *collision* is with another motor vehicle insured with us, *you* do not pay *your* deductible if it is $100 or less.

*Collision* means the upset of *your car* or its impact with a vehicle or other object.

Clothes and luggage – Comprehensive and Collision Coverages.

We will pay for *loss* to clothes and luggage owned by the first *person* named in the declarations, his or her *spouse*, and their *relatives*. These items have to be in or on *your car*. *Your car* has to be covered under this policy for...

a) Loss – Comprehensive; under *loss* caused by fire, lightning, flood, falling objects, explosion, earthquake or theft. If the *loss* is due to theft, *YOUR ENTIRE CAR MUST HAVE BEEN STOLEN;* or

2. *Collision*, and the *loss* caused by *collision*.

We will pay up to $200 for clothes and luggage in excess of any deductible amount shown for comprehensive or collision. $200 is the most we will pay in any one occurrence even though more than one *person* has a *loss*. This coverage is excess over any other coverage.

Limit of Liability – Comprehensive and Collision Coverages.

The limit of our liability for *loss* to property or any part of it is the lower of:

1. its actual cash value; or

2. the cost of repair or replacement.

Actual cash value is determined by the market value, age and condition at the time the *loss* occurred. Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1. the cost of repair or replacement agreed upon by you and us;

2. a competitive bid approved by us; or

3. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the *car* is to be repaired as determined by a survey made by us. If you ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. We will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition. For agreed, with us that repairs may include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers.

Any deductible amount that applies is then subtracted.

Settlement of Loss – Comprehensive and Collision Coverages.

We have the right to settle a *loss* with *you* or the *owner* of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the *loss* in exchange for the damaged property. If the owner keeps the damaged property we will deduct its value after the *loss* from our payment. The damaged property cannot be abandoned to us;

2. pay to:
   a. repair the damaged property or part; or
   b. replace the property or part.
   If the repair or replacement results in better, we will make it. If betterment results you must pay for the amount of betterment; or

3. return the stolen property and pay for any damage due to the theft.

The Settlement of Loss provision for comprehensive and collision coverages incorporates the Limit of Liability provision of those coverages.

If we can pay the *loss* under either comprehensive or collision, we will pay under the coverage where *you* collect the most.

When there is *loss* to *your car*, clothes and luggage in the same occurrence, any deductible will be applied first to the *loss* to *your car*. *You* pay only one deductible.

EMERGENCY ROAD SERVICE – COVERAGE H. *You* have this coverage if "H" appears in the "Coverages" space on the declarations page.

We will pay the fair cost *you* incur for *your car* for:

1. mechanical labor up to one hour at the place of its breakdown;

**2.** towing to the nearest place where the necessary repairs can be made during regular business hours if it will not run;

**3.** towing it out if it is stuck on or immediately next to a public highway;

**4.** delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THESE ITEMS.

**CAR RENTAL EXPENSE – COVERAGE R.** *You* have this coverage if "R" appears in the "Coverages" space on the declarations page.

We will repay *you* up to $10 per day when *you* rent a car from a car rental agency or garage due to a *loss* to *your car* which would be payable under coverage D, F or G, starting:

**1.** when it cannot run due to the *loss*, or

**2.** if it can run, when *you* leave it at the shop for agreed repairs;

and ending when:

**1.** it has been repaired or replaced, or

**2.** we offer to pay for the *loss*, or

**3.** *you* incur 30 days rent,

whichever comes first.

Any car rent payable under coverage R is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1.** *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

**1. Car Rental Expense.** We will:

a. pay *you* up to $16 of the daily rental charge when *you* rent a car from a car rental agency or garage; or

b. pay *you* $10 for each complete 24 hour period that *your car* is not driveable if *you* choose to not rent a car. *You* must report to us the period of time *your car* was not driveable.

We will pay only if *your car* is not driveable because of a *loss* which would be payable under coverage D, F or G.

This applies during a period starting:

a. when *your car* cannot run due to the *loss*; or

b. if *your car* can run, when *you* leave it at the shop for agreed repairs;

and ending:

a. when it has been repaired or replaced, or

b. (1) when we offer to pay for the *loss*, if *your car* is repairable, or

(2) five days after we offer to pay for the *loss*, if:

(a) *your car* was stolen and not recovered, or

(b) we declare it a total loss,

whichever comes first.

Any car rent payable under this coverage is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

**2. Travel Expenses.** If *your car* cannot run due to a *loss* which would be payable under coverage D, F or G more than 50 miles from home, we will repay *you* for expenses incurred by *you*, *your spouse* and any *relative* for:

a. Commercial transportation fares to continue to *your* destination or home.

b. Extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first.

c. Meals, lodging and commercial transportation fares incurred by *you* or a *person* *you* choose to drive *your car* from the place of repair to *your* destination or home.

**3. Rental Car – Repayment of Deductible Amount Expense.** We will repay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage, in effect on a substitute car rented from a car rental agency or garage.

**Total Amount of Expenses Payable – Coverage R1.**

**1.** The most we will pay for the total of the Car Rental Expense and Rental Car – Repayment of Deductible Amount Expense incurred in any one occurrence is $400.

**2.** The most we will pay for Travel Expenses incurred by all persons in any one occurrence is $400.

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R2.** *You* have this coverage if "R2" appears in the "Coverages" space on the declarations page.

24
4107

## 1. Car Rental Expense.

**We will:**

(1) pay 80% of the rental charge when you rent a car from a car rental agency or garage. "Rental charge" means the daily rental rate plus charges for mileage and related taxes; or

(2) pay you $10 for each complete 24 hour period that your car is not drivable if you choose to not rent a car. You must report to us the period of time that your car was not drivable.

**We will pay** only if your car is not drivable because of a loss which would be payable under coverage D, F or G.

b.  Payment will be made for a period that:

(1) starts:

  (a) when your car is not drivable due to the loss; or

  (b) if your car is drivable, when you leave it at the shop for agreed repairs; and

(2) ends:

  (a) when your car has been repaired or replaced; or

  (b) when we offer to pay for the loss, if your car is repairable but you choose to delay repairs; or

  (c) five days after we offer to pay for the loss if:

   (i) your car was stolen and was not covered; or

   (ii) we declare that your car is a total loss;

whichever comes first.

Any car rent payable under this coverage is REDUCED TO THE EXTENT THAT PAYMENT IS MADE UNDER COMPREHENSIVE COVERAGE.

## 2. Travel Expenses.

If your car is not drivable due to a loss which occurs more than 50 miles from home and which would be payable under coverage D, F or G, we will pay you for expenses incurred by you, your spouse and any relative for:

a. commercial transportation fares to continue to your destination or home; and

b. extra meals and lodging needed when the loss to your car causes a delay enroute. The expenses must be incurred between the time of the loss and your arrival at your destination or home or by the end of the fifth day, whichever occurs first; and

c. meals, lodging and commercial transportation fares incurred by you or a person you choose to drive your car from the place of repair to your destination or home.

## 3. Rental Car – Repayment of Deductible Amount Expense.

We will pay the expense of any deductible amount you are required to pay the owner under comprehensive or collision coverage in effect on a substitute car rented from a car rental agency or garage.

## Total Amount of Expenses Payable – Coverage R2

1.  The most we will pay for Car Rental Expenses incurred in any one occurrence is $300.

2.  The most we will pay for Travel Expenses incurred by all persons in any one occurrence is $400.

3.  The most we will pay for Rental Car – Repayment of Deductible Amount Expense incurred in any one occurrence is $400.

## Trailer Coverage

### 1. Owned Trailer

Your trailer is covered:

a. when it is described on the declarations page of the policy; and

b. for the coverages shown as applying to it.

### 2. Non-Owned Trailer or Detachable Living Quarters

Any physical damage coverage in force on your car applies to a non-owned:

a. trailer, if it is designed for use with a private passenger car; or

b. detachable living quarters unit

used by the first person named in the declarations, his or her spouse or their relatives.

The most we will pay under the comprehensive or collision coverage for a loss to such non-owned trailer or unit is $500.

A non-owned trailer or detachable living quarters unit is one that:

a. is not owned by or registered in the name of:

(1) *you, your spouse*, any *relative*;

(2) any other *person* residing in the same household as *you, your spouse* or any *relative*; or

(3) an employer of *you, your spouse* or any *relative*; and

b. has not been used for rented by or in the possession of *you, your spouse* or any *relative* during any part of each of the last 21 or more consecutive days. If *you* are insured by one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy; and

c. is not rented and used in connection with the employment or business of *you, your spouse* or any *relative*.

**Coverage for the Use of Other Cars**

The coverages in this section you have on *your car* extend to a loss to a *newly acquired car*, a temporary substitute car or a *non-owned car*. These coverages extend to a *non-owned car* while it is driven by or in the custody of an *insured*.

*Insured* — as used in this provision means:

1. the first *person* named in the declarations;

2. his or her *spouse*; or

3. their *relatives*.

**When Coverages D, F, G, H, R, R1 and R2 Do Not Apply**

**THERE IS NO COVERAGE FOR:**

1. A *NON-OWNED CAR*:
   a. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN PLEASURE AND BUSINESS;
   b. WHILE BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR
   c. WHILE USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or occupied by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

2. ANY *VEHICLE* WHILE:
   a. RENTED OR LEASED TO OTHERS; OR

   b. USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to the use on a share expense basis; OR

3. *LOSS TO ANY VEHICLE DUE TO:*
   a. TAKING BY ANY GOVERNMENTAL AUTHORITY;
   b. WAR OF ANY KIND;
   c. AND LIMITED TO WEAR AND TEAR, FREEZING, MECHANICAL OR ELECTRICAL BREAKDOWN OR FAILURE. This does not apply when the *loss* is the result of a theft covered by this policy. Nor does it apply to emergency road service; OR
   d. CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY *PERSON* WHO HAS THE *VEHICLE* DUE TO ANY LIEN, RENTAL OR SALES AGREEMENT.

4. TIRES unless:
   a. stolen, or damaged by fire or vandalism; or
   b. other *loss* covered by this section happens at the same time.

5. TAPES OR DISCS FOR RECORDING OR REPRODUCING SOUND.

6. ANY LASER OR RADAR DETECTOR.

7. *YOUR CAR* WHILE SUBJECT TO ANY LIEN, LEASE OR SALES AGREEMENT NOT SHOWN IN THE DECLARATIONS.

**If There Is Other Physical Damage Coverage or If You Own More Than One Vehicle**

1. Vehicles You Own
   a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:
      (1) *your car*; or
      (2) a *newly acquired car*. THIS INSURANCE DOES NOT APPLY IF THERE IS SIMILAR COVERAGE ON THE *NEWLY ACQUIRED CAR*.
   b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of

26
8107

the limits of liability of the policies issued by us and the other company.

## 2. Policies Issued by Us to You

If two or more vehicle policies issued by us to you apply to the same loss or occurrence, we will pay under the policy with the highest limit.

## 3. Temporary Substitute Car, Non-Owned Car or Trailer

If a *Temporary Substitute Car*, a non-owned car or trailer designed for use with a *private passenger car* has other coverage on it, then this coverage is excess.

## 4. Coverage Available From Other Sources

Subject to items 1, 2 and 3, if other coverage applies to the loss or expenses, we will pay only our share. Our share is the per cent that the limit of liability of this policy issued by us bears to the total of all coverage that applies.

### No Benefit to Bailee

These coverages shall not benefit any carrier or other bailee for hire liable for loss.

### Two or More Vehicles

If two or more of *your cars* are insured for the same coverage, the coverage applies separately to each car.

---

# SECTION V — DEATH, DISMEMBERMENT AND LOSS OF SIGHT — COVERAGE S

If "S" is shown in the "Coverages" space on the declarations page each *insured* has the coverage.

We will pay the amount shown in the schedule that applies for death, or loss, caused by accident. The *insured* has to be *occupying* or be struck by a land motor vehicle or trailer. The death or loss must be the direct result of the accident and not due to any other cause. The death or loss must occur within 90 days of the accident.

*Insured* — means a *person* listed under "Persons Insured — Coverage S" on the declarations page.

*Loss* — means the loss of:

1. the foot or hand, cut off through or above the ankle or wrist; or

2. the whole thumb or finger; or

3. all sight.

### The Most We Pay

The most we will pay because of the death of, or loss to, the *insured*, except as provided below, is shown under "Amount" next to his or her name on the declarations page.

The amount shown in the schedule for death or loss is doubled for an *insured* who, at the time of the accident, is using the vehicle's complete restraint system as recommended by the vehicle's manufacturer.

If the *insured* dies as a result of this accident, any payment made or due for loss reduces the amount of the death payment.

### SCHEDULE

| | If amount under S in the declarations is: |  |
|---|---|---|
| | $5,000 | $10,000 |
| Death | $5,000 | $10,000 |
| *Loss of:* | | |
| hands; feet; sight of eyes; one hand & one foot; or one hand or one foot & sight of one eye | 5,000 | 10,000 |
| one hand or one foot; or sight of one eye | 2,500 | 5,000 |
| thumb & finger on one hand; or three fingers | 1,500 | 3,000 |
| any two fingers | 1,000 | 2,000 |

**Payment of Any Amount Due.**

We will pay any amount due:

1. to the insured;

2. to a parent or guardian if the insured is a minor or an incompetent person;

3. to the surviving spouse; or

4. at our option, to any person or organization authorized by law to receive such payment.

Any payment made is to its extent a complete discharge of our obligations. We are not responsible for the way the money is used.

**Autopsy**

We have the right to have an autopsy made where it is not forbidden by law.

**When Coverage 8 Does Not Apply.**

THIS COVERAGE DOES NOT APPLY TO DEATH OF OR LOSS TO AN INSURED:

1. WHILE ON THE JOB, OPERATING, OC-CUPYING, LOADING OR UNLOADING:

   a. AN EMERGENCY VEHICLE; OR

   b. A VEHICLE USED IN THE IN-SURED'S BUSINESS OR JOB.

   But 1.b. does not apply if the vehicle is:

   (1) a private passenger car or school bus; or

(3) of the pickup or van type, with a Gross Vehicle Weight of 10,000 pounds or less, while not used for delivery.

2. WHILE:

   a. ON THE JOB IN ANY CAR BUSI-NESS; OR

   b. OCCUPYING ANY:

      (1) VEHICLE WHILE BEING USED IN A RACE; OR

      (2) MILITARY VEHICLE.

3. DUE TO:

   a. DISEASE except pus forming infection due to bodily injury received in the acci-dent; or

   b. SUICIDE OR ATTEMPTED SUICIDE WHILE SANE OR INSANE; OR

   c. WAR OF ANY KIND.

4. WHILE OCCUPYING OR THROUGH BE-ING STRUCK BY A MOTOR VEHICLE OR TRAILER:

   a. THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. DESIGNED FOR USE MAINLY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. LOCATED FOR USE AS PREMISES.

28
8107

## CONDITIONS

### 1. Policy Changes

**a. Policy Terms.** The terms of this policy may be changed or waived only by:

(1) an endorsement issued by us; or

(2) the revision of this policy form to give broader coverage without an extra charge. If any coverage *you* carry is changed to give broader coverage, we will give *you* the broader coverage without the issuance of a new policy as of the date we make the change effective.

**b. Change of Interest.** No change of interest in this policy is effective unless *we* consent in writing. However, if *you* die, we will protect as named insured, except under death, dismemberment and loss of sight coverage:

(1) *your* surviving *spouse;*

(2) any *person* with proper custody of *your car*, a *newly acquired car* or a *temporary substitute car* until a legal representative is qualified; and then

(3) the legal representative, while acting within the scope of his or her duties.

Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

**c.** Consent of Beneficiary. Consent of the beneficiary under death, dismemberment and loss of sight coverage is not needed to cancel or change the policy.

**d. Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

### 2. Suit Against Us

There is no right of action against us:

**a.** until all the terms of this policy have been met; and

**b.** under the liability coverages, until the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) verdict after actual trial; or

(2) agreement between the *insured*, the claimant and us.

Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our policy obligations.

**f.** under no-fault, medical payments, uninsured motor vehicle, any physical damage and death, dismemberment and loss of sight coverages, until 30 days after we get the *insured's* notice of accident or loss.

### 3. Our Right to Recover Our Payments

**a.** Medical payments and death, dismemberment and loss of sight coverage payments are not recoverable by us.

**b.** Under uninsured motor vehicle coverage:

(1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured *person* recovers from any party liable for the *bodily injury*, unless we have waived our subrogation rights according to the provision titled Deciding Fault and Amount – Coverages U and U3.

(2) if the *person* to or for whom we have made payment has not recovered from the party at fault, he or she shall:

(a) keep these rights in trust for us;

(b) execute any legal papers we need; and

(c) when we ask, take action through our representative to recover our payments.

We are to be repaid our payments, costs and fees of collection out of any recovery.

**c.** Under the liability and physical damage coverages the right of recovery of any party we pay passes to us. Such party shall:

(1) not hurt our rights to recover; and

(2) help us get our money back.

### 4. Cancellation

**a.** How You May Cancel: *You* may cancel *your* policy by notifying us in writing of the date to cancel, which must be later than the date *you* mail or deliver it to us. We may waive these requirements by confirming the date and time of cancellation to *you* in writing.

However, if *your* policy provides liability and no-fault coverages, *you* may not cancel *your* policy during the first two months immediately following the policy effective date unless:

**a.** *your car* has been totally destroyed;

**b.** *you* have transferred ownership of *your car;*

c.  *you* have purchased another policy covering *your car*; or

d.  *you* are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

**How and When We May Cancel.** We may cancel *your* policy by written notice mailed or delivered to *your* last known address. The notice shall give the date cancellation is effective. Except as provided under Cancellation Due to Incorrect Premium, the notice will be mailed or delivered to *you* at least:

a.  10 days before the cancellation effective date if the cancellation is because *you* did not pay the premium; or

b.  45 days before the cancellation effective date if the cancellation is because of any other reason.

The mailing of the notice by United States postal proof of mailing or certified or registered mailing shall be sufficient proof of notice.

During the first 60 days immediately following the policy effective date, if we cancel *your* policy for nonpayment of premium, we will do so only if a check used to pay the premium is dishonored for any reason. Subject to this, on or after the 60th day that *your* policy has been in effect, we will not cancel *your* policy before the end of the current policy period unless:

a.  *you* fail to pay the premium when due;

b.  *you*, *your* spouse, any *relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation during the 180 days just before the effective date of the policy or during the policy period or, if the policy is a renewal, during its policy period.

c.  the grounds for the cancellation are based on material misrepresentation or fraud.

**Cancellation Due to Incorrect Premium.** If we determine that we have charged *you* an incorrect premium for coverages requested in *your* insurance application, we will immediately notify *you* of any additional premium due. *You* may:

a.  maintain *your* policy in force by paying the additional amount due by the date stated in the notice; or

b.  cancel *your* policy by the date stated in the notice and receive a refund of any unearned premium.

If *you* fail to respond by the date stated in the notice, we will cancel *your* policy. The cancellation

30
8J07

effective date will be stated in the notice and will be at least 14 days after the date we mail or deliver the notice to *you*.

**Return of Unearned Premium.** If *you* cancel, premium will be earned on a pro-rata basis. We may retain up to ten percent of any unearned premium.  Any remaining unearned premium will be returned to *you* within 30 days after we receive *your* request to cancel *your* policy. If we cancel, premium will be earned on a pro-rata basis. Any unearned premium will be returned at the time we cancel or within 30 days after we issue the cancellation notice. Delay in the return of unearned premium does not affect the cancellation.

**3.  Renewal**

Unless we mail or deliver to *you* written notice of cancellation or a notice of our intention not to renew the policy, we agree to renew the policy for the next policy period upon *your* payment of the renewal premium. It is agreed that the renewal premium will be based upon the rates in effect, the coverages carried, the applicable limits of liability, deductibles and other elements that affect the premium that apply at the time of renewal.

Other elements that may affect *your* premium include, but are not limited to:

a.  drivers of *your car* and their ages and marital status;

b.  *your car* and its use;

c.  eligibility for discounts or other premium credits;

d.  applicability of a surcharge based either on accident history, or on other factors.

A notice of our intention to not renew will be mailed or delivered to *your* last known address at least 45 days before the end of the current policy period. The mailing of the notice by United States postal proof of mailing or certified or registered mailing shall be sufficient proof of notice.

**6.  Premium**

The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

The premium for this policy is based on information State Farm has received from *you* or other sources. If the information is incorrect or incomplete, or changes during the policy period, *you* must inform State Farm of any changes regarding the following:

a.  *your car*, or its use, including annual mileage;

b.  the *persons* who regularly drive *your car*, including newly licensed family members;

c.  *your* marital status; or

d.  the location where *your car* is principally garaged.

*You* agree that if this information or any other information used to determine the premium is incorrect or incomplete, or changes during the policy period, we may decrease or increase the premium during the policy period based upon the corrected, completed or changed information. *You* agree that if the premium is decreased or increased during the policy period, State Farm will refund or credit to *you* any decrease in premium and *you* will pay for any increase in premium.

**7. Mediation**

We or the *insured* may request mediation of any claim:

a.  in an amount of $10,000 or less resulting from:

  1.  *bodily injury* under Sections II or III; or

  2.  death of or *loss* to an *insured* under Section V; or

b.  in any amount for a *loss* covered under Section IV,

by filing a *written* request with the Department of Insurance on a form which may be obtained

from the department.  The request must state why mediation is being requested and the facts in dispute..

The Department of Insurance will appoint a mediator.  Each party may reject one mediator whether before or after the other party has made a rejection.  The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation.  The mediation will be conducted informally and may be held by telephone if feasible.  Participants must have authority to make a binding decision, and must mediate in good faith.  Information and disclosure provided during mediation are not admissible in any subsequent action, or proceeding relating to the claim or cause of action giving rise to the claim.  Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts shall not be mediated again.  Only one mediation may be requested for each claim, unless all parties agree to further mediation.  Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

**8. Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false *statements* with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

## MUTUAL CONDITIONS

1.  **Membership.** While this policy is in force, the first insured named in the declarations is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2.  **No Contingent Liability. This policy is non-assessable.**

3.  **Annual Meeting. The** annual meeting of the members of the company shall be held at its home office in Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois, and countersigned on the declarations page by a duly authorized representative of the Company.

*Kim M. Brunner*

SECRETARY

*Edward B. Rust, Jr.*

PRESIDENT

31

8107

Page No.     WHAT IT IS AND WHERE YOU CAN FIND IT — THE INDEX

6     Reporting a Claim – Insured's Duties – What to do if you have an accident, claim or are sued.
3     Defined Words
4     Declarations Continued
5     When and Where Coverage Applies
5     Financed Vehicles – Coverage for Creditor

      Coverages

7     A – Liability – When there is *bodily injury* to others or damage to others' property.
10    B – Property Damage Liability – When there is damage to others' property.
12    P – No-Fault – When there are medical expenses, work loss or death.
16    C – Medical Payments – When there are medical and funeral expenses.
16    U – Uninsured Motor Vehicle – When the other car or driver is not insured or is underinsured.
         (Underinsured coverage is on an excess basis.)
18    U5 – Uninsured Motor Vehicle – When the other car or driver is not insured or is underinsured.
         (Non-Stacking Optional Form.)
22    D – Comprehensive – When *your car* is damaged except by collision or upset. Any deductible
         amount is shown by the number beside "D" on the declarations page.
22    F – Collision – 88 % – When *your car* is damaged by collision or upset.
23    G – Collision – When *your car* is damaged by collision or upset. The deductible is shown by
         the number beside "G" on the declarations page.
23    H – Emergency Road Service – When *your car* breaks down or needs a tow.
24    R – Car Rental Expense – When *you* need to rent a car because of damage to *your car*.
24    R1 – Car Rental and Travel Expenses – When *you* need to rent a car and pay extra travel
         expenses because of damage to *your car*.
24    R2 – Car Rental and Travel Expenses – When *you* need to rent a car and pay extra travel
         expenses because of damage to *your car*.
27    S – Death, Dismemberment and Loss of Sight – Pays for death of or certain injuries to
         *persons* named.

      Conditions

29    1.   Policy Changes
29    2.   Suit Against Us
29    3.   Our Right To Recover Our Payments
29    4.   Cancellation
30    5.   Renewal
30    6.   Premium
31    7.   Mediation
31    8.   Concealment or Fraud

31    Mutual Conditions

Policy Form 9810.7

### CERTIFICATE OF GUARANTEED RENEWAL
#### 6091 Amendment of Cancellation and Renewal Conditions

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is shown for the endorsement on the Declarations Page.

This endorsement is issued by the *STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY* of Bloomington, Illinois.

We agree that we will not cancel or non-renew this policy as long as:

1. this policy insures a *private passenger car*;

2. premiums are paid when due;

3. all drivers of *your car* maintain valid drivers licenses;

4. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of Guaranteed Renewal available for use; and

5. no *person* other than the current named insured or that *person's spouse* becomes a named insured on this policy.

*You* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company. Coverage will be provided by our car policy, including any revisions that may be made to it.

Edward B Rust Jr

Chief Executive Officer

## 6127HH AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by *us* in writing.

**In consideration of the premium charged, it is agreed that *your* policy is changed as follows:**

1. **DEFINED WORDS**

a. The definition of ***Newly Acquired Car*** is changed to read:

*Newly Acquired Car* means a *car* newly owned by or newly leased to *you* or *your spouse*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or
2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or *your spouse*.

If *you* or *your spouse* want coverage for a *car* newly owned by or newly leased to *you* or *your spouse* after that *car* ceases to be a *newly acquired car* and it:

1. replaces *your car*, then *you* must ask *us* to insure that *car* within 14 days after it is delivered to *you* or *your spouse* and pay *us* any added amount due. The added amount due will be calculated based on the date the replacement *car* is delivered to *you* or *your spouse*.
2. does not replace *your car*, then *you* or *your spouse* must apply to *us* for a separate policy to insure that added *car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you* or *your spouse*.

b. The definition of ***Your Car*** is changed to read:

*Your Car* means the vehicle described on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If *you* ask *us* to replace the *car* shown on the Declarations Page with a *car* newly owned by or newly leased to *you* or *your spouse*, the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date such newly owned or newly leased *car* is delivered to *you* or *your spouse*;
2. the date this policy is no longer in force; or
3. the date *you* no longer own or lease the *car* being replaced.

2. **REPORTING A CLAIM — INSURED'S DUTIES**

**The following is added:**

A *person* or organization making claim under this policy must give *us* proof of loss on forms we furnish.

A *person* making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must provide written authorization for *us* to obtain:

1. medical bills;
2. medical records;
3. wage, salary, and employment information; and
4. any other information we deem necessary to substantiate the claim.

If an injured *person* is a minor, unable to act, or dead, then his or her legal representative must provide us with the written authorization.

If the holder of the information refuses to provide it to us despite the authorization, then at our request the *person* making *claim* or his or her legal representative must obtain the information and promptly provide it to us.

3. **SECTION II – NO-FAULT – COVERAGE P**

The provision titled Disputes Regarding Charges For Treatment of Injured Persons is deleted.

4. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U AND U3**

The following is added to Deciding Fault and Amount – Coverages U and U3:

Arbitrators shall have no authority to decide any questions of law or conduct arbitration on a class-wide or class-representative basis.

5. **SECTION IV — PHYSICAL DAMAGE COVERAGES**

   a. **COLLISION – 80% – COVERAGE F and COLLISION – COVERAGE G**

   The following language is deleted:

   If we offer to pay for the repair of damaged windshield glass instead of

the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

   b. **COMPREHENSIVE – COVERAGE D, COLLISION – 80% – COVERAGE F and COLLISION – COVERAGE G**

   The following is added:

   If *you* and we agree, windshield glass will be repaired instead of replaced

   *You* agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

6. **MOTORCYCLE COVERAGE ENDORSEMENT and TRAILER ENDORSEMENT**

The definition of *newly acquired car* in the above item 1. replaces the definition of *newly acquired car* in both the MOTORCYCLE COVERAGE endorsement and the TRAILER ENDORSEMENT if either endorsement is a part of *your* policy. In addition, under the TRAILER ENDORSEMENT, "*car*" as found in the definition of *newly acquired car* is changed to include a trailer newly owned by or newly leased to *you* if it is of the same type as the trailer described on the declarations page.

## 6910.3 AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **DEFINED WORDS**

   a. The following definition is added:

      *Fungi* — means any type or form of fungus or fungi and includes:

      1. mold;

      2. mildew; and

      3. any of the following that are produced or released by fungi:

         a. mycotoxins;

         b. spores;

         c. scents; or

         d. byproducts.

   b. The definition of *"Non-Owned Car"* is changed by deleting the provision that reads:

      *Non-owned car* does not include a rented *car* while it is used in connection with the *insured's* employment or business.

2. **REPORTING A CLAIM — INSURED'S DUTIES**

   a. Other Duties Under the Physical Damage Coverages

      Item c. is deleted.

   b. Item 4. is changed to read:

      4. **Other Duties Under No-Fault, Medical Payments, Uninsured Motor Vehicle and Death, Dismemberment and Loss of Sight Coverages**

         Any *person* who suffers a *bodily injury* which results in a MEDI-CAL PAYMENTS — COVER-AGE C claim under this policy must notify *us* of the claim in writing as soon as reasonably possible after the person's first examination or treatment resulting from the *bodily injury*. Another *person* may give *us* the required notice on behalf of the *injured person*.

         a. . . Any *person* making claim:

a. under the no-fault, medical payments, uninsured motor vehicle and death, dismemberment and loss of sight coverages shall:

   (1) give *us* all the details about the death, injury, treatment and other information we need to determine the amount payable.

   (2) be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

b. under the uninsured motor vehicle coverage shall:

   (1) report an accident to the police within 24 hours and to us within 30 days if the accident involves a land motor vehicle with an unknown owner or driver.

   (2) let us see the insured *car* the *person* occupied in the accident.

c. under the no-fault and uninsured motor vehicle coverages shall send *us* at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

d. under the no-fault and death, dismemberment and loss of sight coverages shall give *us* proof of claim as soon as practicable on forms we furnish.

Page 1 of 12

6910.3

c.  The following is added:

**Questioning Under Oath**

Under:

a.  Liability Coverage and Property Damage Liability Coverage, each *insured*;

b.  No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, any *person* or organization making claim or seeking payment; and

c.  Physical Damage Coverages, *you* or the owner of a covered vehicle, or any other *person* or organization making claim or seeking payment;

must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require. Such *person* or organization must answer questions under oath, asked by anyone we name, and sign copies of the answers. We may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, our representatives, and no other *person* present.

3. **LIABILITY — COVERAGE A and PROPERTY DAMAGE LIABILITY — COVERAGE B**

a.  **Trailer Coverage**

This provision is changed to read:

**Trailer Coverage**

The liability coverage extends to the ownership, maintenance or use, by an insured, of:

1.  trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.e. below.

Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

These trailers are not described in the declarations and no extra premium is charged.

2.  the following trailers only if they are described on the declarations page and extra premium is paid:

a.  trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

(1) if designed to carry persons; or

(2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

(3) while used as premises for office, store or display purposes; or

b.  trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*.

When we refer to trailer coverage, insured means:

1.  *you*;

2.  *your spouse*;

3.  the *relatives* of the first *person* named in the declarations;

4.  any other *person* while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is within the scope of consent of *you* or *your spouse*; and

5.  any other *person* or organization liable for the use of a covered trailer by one of the above insureds.

**THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.**

Page 2 of 12

69103

b. **If There Is Other Liability Coverage or If You Own More Than One Vehicle**

Item 3. is changed to read:

3. **Temporary Substitute Car, Non-Owned Car, Trailer**

If a temporary substitute car, a non-owned car or a trailer designed for use with a private passenger car or utility vehicle:

a. has other vehicle liability coverage on it; or

b. is self-insured under any motor vehicle financial responsibility law, a motor carrier law or any similar law,

then this coverage is excess over such insurance or self-insurance.

4. **LIABILITY — COVERAGE A**

Under the paragraph that reads "In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident":

(1) Item 3. is deleted.

(2) Item 4. is changed to read:

4. The following costs and expenses if related to and incurred after a civil lawsuit has been filed against an insured for damages for which liability coverage is provided by this policy:

a. loss of wages or salary, but not other income, up to $100 for each day an insured attends at our request:

(1) an arbitration;

(2) a mediation; or

(3) a trial of a civil suit.

b. reasonable expenses incurred by an insured at our request, other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an insured must be reported to us before we will pay.

b. **Limits of Liability**

The first paragraph of this provision is changed to read:

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability — Coverage A — Bodily Injury, Each Person. Each Accident". Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury, and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.

5. **NO-FAULT — COVERAGE F**

The first paragraph of NO-FAULT — COVERAGE F is replaced by the following:

**NO-FAULT — COVERAGE F. You** have this coverage if "F" with a number beside it appears in the "Coverages" space on the declarations page. "F" with a number beside it is your coverage symbol. Check your coverage symbol with the SCHEDULE under limits of Liability for the Income Loss option you chose.

b. Item 1. of What We Pay is changed to read:

1. **Medical Expenses.** 80% of all reasonable expenses incurred for:

a. medically necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, eyeglasses, hearing aids and prosthetic devices; and

b. necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs.

To determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by providers, reimbursement ... levels to the community and common amount of such charges and payments applicable ... to ... ... and fee ... information relevant to the ... reimbursement of the charge. This does ... mean that we will reduce treatment or ... will ... in ... ... ... allow a charge that ... ... ... ... ... loss and require ... ... ... ... the amount of any ... ... ... ... ... ... the amount ... ... ... ... allows to be ... ... to ...

... to make the definition of *Insured* is ... to ... by replacing the following: ...

*Insured* - means ...

"1. a *pedestrian*, while *occupying* a motor ... ... or as ... or a ... or ...

b. struck as a *pedestrian* by a *motor vehicle*, or ..."

... The term "*medically necessary*" is added and defined as follows:

*Medically necessary* means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1. in accordance with generally accepted standards of medical practice;

2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

3. not primarily for the convenience of the patient, physician, or other health care provider.

When Payments are Reduced and Limits of Liability are replaced by the following:

Application of Any Deductible and Workers' Compensation Offset and Limits of Liability

1. The deductible amount, if any, is shown on the declarations page beside *your coverage* symbol. The deductible amount does not

---

... apply to death benefits. The deductible amount does apply:

a. to you if "N" follows the deductible amount; or

b. to you and each of *your* dependent *relatives* if "N" does not follow the deductible amount.

Any deductible will be applied to 100% of any medical expenses, income loss, and replacement services loss eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable proof of such loss and the amount of expenses and loss incurred.

2. After any applicable deductible has been applied, we will determine the amount payable under medical expenses, income loss, replacement services loss, and death benefits in accordance with the percentages and limits as described in What We Pay.

3. We will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

4. The most we will pay for each *insured* for all medical expenses, income loss, replacement services loss, and death benefits combined as a result of any one accident is $10,000.

SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For You | Income Loss Benefits Eliminated For Your Dependent Relatives |
|---|---|---|
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

E. If There is Other No-Fault Coverage or If You Own More Than One Vehicle

(D. Item 3. under Vehicles You Own is changed to read:

... If the vehicle involved in the accident is owned by you,

6910.3

this coverage applies, only if
it is:

(1) *your car*; or

(2) a *newly acquired car*.
THIS       COVERAGE
DOES NOT APPLY IF
THERE IS OTHER NO-
FAULT    COVERAGE
ON THE *NEWLY AC-
QUIRED CAR.*

(2) Item 2. is changed to read:

1. Policies Issued by *Us* to *You*
or Any *Relative*

If two or more policies pro-
viding no-fault coverage is-
sued by *us* to *you* or any
*relative* apply to the same ac-
cident, the total limits of li-
ability under all such policies
shall not exceed that of the
policy with the highest limit
of liability.

f. What Is Not Covered Under Coverage P

Item 1.6. is changed to read:

THERE IS NO COVERAGE FOR
*BODILY INJURY* TO ANY *PEDES-
TRIAN* NOT A *RESIDENT OF
FLORIDA.* This does not apply to
*you* or any *relative*.

6. MEDICAL PAYMENTS – COVERAGE C
is replaced by the following:

MEDICAL PAYMENTS – COVERAGE
C – *You* have this coverage if "C" appears
in the "Coverage" space on the declara-
tions page.

We will pay reasonable medical expenses
incurred, for *bodily injury* caused by acci-
dent, for services furnished within three
years of the date of the accident. These ex-
penses must be for:

1. *medically necessary* medical,
surgical, X-ray, dental, ambu-
lance, hospital, professional nurs-
ing and rehabilitative services,
eyeglasses, hearing aids and pros-
thetic devices;

2. necessary remedial treatment and
services recognized and permitted
under the laws of the state for an
injured *person* who relies upon
spiritual means through prayer
alone for healing, in accordance
with his or her religious beliefs;
and

3. funeral expenses.

To determine whether a charge is reason-
able we may consider usual and customary
charges and payments accepted by the pro-
vider, reimbursement levels in the com-
munity and various federal and state
medical fee schedules applicable to auto-
mobile and other insurance coverages, and
other information relevant to the reason-
ableness of the reimbursement for the ser-
vices, treatment or supply.

The accident must result from the owner-
ship, maintenance or use of a *motor vehi-
cle.*

The *bodily injury* must be discovered and
treated within one year of the date of the
accident.

THERE IS NO COVERAGE UNTIL THE
MEDICAL EXPENSE BENEFITS OF
ALL NO-FAULT COVERAGE AVAIL-
ABLE FROM ALL SOURCES HAS
BEEN EXHAUSTED. However, this does
not apply to the 20% of expenses that are
not paid under no-fault coverage because
of the 80% limitation.

We have the right to make or obtain a
utilization review of the medical expenses
and services to determine if they are rea-
sonable and *medically necessary* for the
*bodily injury* sustained.

*Medically necessary* – means a medical
service or supply that a prudent physician
would provide for the purpose of prevent-
ing, diagnosing, or treating an illness, in-
jury, disease, or symptom in a manner that
is:

1. in accordance with generally ac-
cepted standards of medical prac-
tice;

2. clinically appropriate in terms of
type, frequency, extent, site, and
duration; and

3. not primarily for the convenience
of the patient, physician, or other
health care provider.

Persons for Whom Medical Expenses
Are Payable

We will pay medical expenses for *bodily
injury* sustained by *you* or any *relative*:

1. while occupying a *motor vehicle*
as defined under no-fault cover-
age P; or

2. through being struck as a *pedes-
trian* by:

Page 3 of 12

69103

Feb. 8. 2010  9:59AM   Piccin & Glynn                    No. 9067   P. 45

a. a *motor vehicle* as defined under no-fault coverage P; or

b. a motorcycle of a type required to be licensed for use on Florida highways.

*Pedestrian* means a *person* not an occupant of any self-propelled vehicle.

**Payment of Medical Expenses**

We may pay the injured *person* or any *person*, or organization performing the services.

**Limit of Liability**

1. The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability - Coverage C – Each Person". If the amount shown is $3,000 or more, the most we pay for funeral services is $2,000 per *person*.

2. Medical payments coverage is excess over and shall not pay any medical expenses paid or payable under any no-fault coverage, or which would otherwise be payable except for:

a. any no-fault deductible; or

b. the amount of workers' compensation benefits paid or payable for the same items of loss or expense.

3. The liability and uninsured motor vehicle coverages shall be excess over and shall not pay any medical expenses paid under this coverage.

**Two or More Vehicles**

1. A *motor vehicle* and attached *trailer* are one vehicle as respects limits.

2. When two or more *motor vehicles* are insured under this section the limits apply separately to each.

**If There Are Other Medical Payments Coverages or If You Own More Than One Vehicle**

1. **Vehicles You Own**

a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

(1) *your car*; or

(2) a *trailer* described under Trailer Coverage for which no extra premium is charged; or

(3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE MEDICAL PAYMENTS COVERAGE ON THE *NEWLY ACQUIRED CAR*.

b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the percent that the limit of liability of the policy issued to *us* bears to the sum of the limits of liability of the policies issued by us and the other company.

2. **Policies Issued by Us to You or Any Relative**

If two or more vehicle policies providing medical payments coverage issued by *us* to *you* or any *relative* apply to the same accident, the total limit of liability under all such policies shall not exceed *that* of the policy with the highest limit of liability.

3. **Temporary Substitute Car, Non-Owned Car, Trailer or Pedestrian**

Subject to item 2, this coverage is excess if other vehicle medical payments coverage applies to:

a. a *temporary substitute car*, a *non-owned car* or a trailer; or

b. *bodily injury* sustained by a *pedestrian*.

4. **Coverage Available From Other Sources**

Subject to items 1, 2, and 3, if other vehicle medical payments coverage applies, we are liable only for our share of the damages. Our share is the percent that the limit of liability for our policy issued by us bears to the total of all vehicle medical payments coverage applicable to the accident.

**What Is Not Covered Under Coverage C**

THERE IS NO COVERAGE UNDER MEDICAL PAYMENTS:

1. FOR ANY MEDICAL EXPENSES THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE, except for:

6910.3

the 20% of expenses that are
not paid under no-fault cover-
age because of the 20%
limitation;

b. expenses not paid because
the medical expense benefits
of all no-fault coverage
available from all sources has
been exhausted; and

c. expenses for *bodily injury*
sustained through being
struck as a pedestrian by:

(1) a *motor vehicle* as de-
fined under no-fault
coverage if while outside
Florida, but within the
area described under
Where Coverage Ap-
plies for medical pay-
ments coverage; or

(2) a motorcycle of a type
required to be licensed
for use on Florida high
ways;

2. FOR MILEAGE COSTS FOR
THE USE OF A *PERSONAL
VEHICLE*.

3. FOR ANY INTEREST CHARGES.

4. WHILE A *NON-OWNED CAR*
IS USED BY ANY *PERSON*
EMPLOYED OR ENGAGED IN
ANY WAY IN A CAR BUSI-
NESS.

5. FOR *BODILY INJURY* DUE TO
WAR OF ANY KIND.

6. FOR MEDICAL EXPENSES
FOR *BODILY INJURY*:

a. SUSTAINED WHILE OC-
CUPYING OR THROUGH
BEING STRUCK BY A
VEHICLE OWNED BY
YOU OR ANY *RELATIVE*
WHICH IS NOT INSURED
UNDER THIS COVERAGE;
OR

b. TO THE EXTENT WORK-
ERS' COMPENSATION
BENEFITS:

(1) HAVE BEEN PAID; OR

(2) ARE REQUIRED TO
OR PAYABLE; OR

c. SUSTAINED BY ANY
*RELATIVE* WHO AT THE
TIME OF THE ACCIDENT

(1) OWNS A MOTOR VE-
HICLE SUBJECT TO
THE NO-FAULT ACT;
AND

(2) IS NOT INSURED FOR
THE COVERAGE RE-
QUIRED BY THE NO-
FAULT ACT.

This does not apply to any
*relative* while occupying
*your car* if the accident oc-
curs outside of Florida.

7. FOR *BODILY INJURY* THAT
RESULTS FROM EXPOSURE
TO *FUNGI*.

FOR *BODILY INJURY* THAT
RESULTS FROM:

a. NUCLEAR REACTION;
RADIATION OR RADIOAC-
TIVE CONTAMINATION
FROM ANY SOURCE; OR

b. THE ACCIDENTAL OR
INTENTIONAL DETONA-
TION OF OR RELEASE OF
RADIATION FROM, ANY
NUCLEAR OR RADIOAC-
TIVE DEVICE.

SECTION III — UNINSURED MOTOR
VEHICLE — COVERAGES U AND U3

a. Item 1, that follows "An *uninsured motor
vehicle* does not include a land *motor ve-
hicle*" is changed to read:

insured under the liability cover-
age of this policy. However, any
such vehicle will be deemed to be
an *uninsured motor vehicle* for
*bodily injury* sustained by *you*,
*your spouse* or any *relative* while
the vehicle is being operated by a
*person* other than *you*, *your
spouse* or any *relative*.

b. Limits of Liability — Coverage U

(1) Item 1 of this provision is changed to
read:

1. The amount of coverage is
shown on the declarations
page under "Limits of Liabil-
ity — U — Each Person, Each
Accident". Under "Each Per-
son" is the amount of cover-
age for all damages due to
*bodily injury* to one person.
"*Bodily injury* to one per-
son" includes all injury and

damages to others resulting
from this *bodily injury*, and
all emotional distress result-
ing from this *bodily injury*
sustained by other *persons*
who do not sustain *bodily in-
jury*. Under "Each Accident"
is the total amount of cover-
age, subject to the amount
shown under "Each Person",
for all damages due to *bodily
injury* to two or more per-
sons in the same accident.

(2) Item  2.b.(2)  of  this  provision is
changed to read:

(2) the no-fault coverage;

c.   Limits of Liability – Coverage U3.

(1) The first paragraph of this provision is
changed to read:

The amount of coverage is
shown on the declarations
page under "Limits of Liabil-
ity U3 – Each Person Each
Accident". Under "Each Per-
son" is the amount of cover-
age for all damages due to
*bodily injury* to one person.
*Bodily injury* to one per-
son includes all injury and
damages of others resulting
from this *bodily injury*, and
all emotional distress result-
ing from this *bodily injury*
sustained by other persons
who do not sustain *bodily in-
jury*. Under "Each Accident"
is the total amount of cover-
age, subject to the amount
shown under "Each Person"
for all damages due to *bodily
injury* to two or more per-
sons in the same accident.

(2) Item  2.b.(2)  of  this  provision is
changed to read:

(2) the no-fault coverage;

II.  SECTION  IV  —  PHYSICAL  DAMAGE
COVERAGES

a.   COMPREHENSIVE – COVERAGE D

(1). The second paragraph of Item 1. is
changed to read:

Breakage of glass or *loss* due to
hitting or being hit by a bird or an
animal is payable under this cov-
erage;

(2) Item 2. is changed to read:

2.   We will pay *you* for transpor-
tation costs incurred if *your
car* is stolen. We will pay up
to $25. per day beginning
when *you* tell us of the theft
and ending when we offer to
pay for the *loss*.

If the daily incurred transpo-
tation costs are payable under
both Comprehensive Cover-
age. and Car Rental and
Travel Expenses Coverage,
we will pay only under the
one coverage where *you* col-
lect the most. If payments
have been made under Car
Rental and Travel Expenses
Coverage and such payments
have either exhausted the to-
tal amount payable under Car
Rental Expense or reduced
the total amount payable un-
der Car Rental Expense to
less than $25, then we will
pay under Comprehensive
Coverage.

b.   COLLISION – COVERAGES F and G

The following paragraph is added:

*Loss* caused by collision does not in-
clude *loss* due to:

1.   missiles or falling objects;

2.   windstorm or hail;

3.   earthquake, water or flood;

4.   theft or larceny;

5.   malicious mischief or vandal-
ism; or

6.   riot or civil commotion.

c.   EMERGENCY  ROAD  SERVICE  –
COVERAGE H

The following paragraph is added:

We will pay the fair cost *you* incur for
*your car* for locksmith services, up to
one hour, to open *your car* if *your key*
is lost, stolen or locked inside *your
car*. We will pay only the cost of la-
bor.

d.   CAR  RENTAL  EXPENSE  —  COVER-
AGE R

The paragraph that reads:

Any car rent payable under Coverage
R is REDUCED TO THE EXTENT

IT IS PAYABLE UNDER COMPRE-
HENSIVE.

is changed to read:

If the incurred daily rental charge is
payable under both Comprehensive
Coverage and Car Rental Expense
Coverage, we will pay only under the
one coverage where **you** collect the
most.

e.   CAR RENTAL AND TRAVEL EX-
PENSES, COVERAGE R1

(1)  Car Rental Expense

The paragraph **in the policy booklet**
that reads:

Any car rent payable under this
coverage is REDUCED TO THE
EXTENT IT IS PAYABLE UN-
DER COMPREHENSIVE.

is changed to read:

If the incurred daily rental charge
is payable under both Compre-
hensive Coverage and Car Rental
and Travel Expenses Coverage,
we will pay only under the one
coverage where **you** collect the
most.

(2)  The provision in the policy booklet ti-
tled Total Amount of Expenses Pay-
able - Coverage R1 is changed to
read:

Total Amount of Expenses Pay-
able - Coverage R1

1.  The most we will pay for
Car Rental Expense in-
curred in any one occurrence
is $400.

2.  The most we will pay for
Travel Expenses incurred by
all **persons** in any one occur-
rence is $400.

3.  The most **we will pay for**
Rental Car - Repayment of
Deductible Amount Ex-
pense incurred in any one
occurrence is $400.

f.   Trailer Coverage

(1)  The most we will pay under compre-
hensive or collision coverage for a
covered non-owned trailer or detach-
able living quarters unit is increased to
$2500.

(2)  Item 2a. is deleted.

g.   The following is added to When Cover-
ages D, E, C, E, R1 and R2 Do Not
Apply:

(1)  THERE IS NO COVERAGE FOR
*LOSS* TO ANY VEHICLE DUE TO
*FUNGI.* THIS APPLIES REGARD-
LESS OF WHETHER OR NOT THE
*FUNGI* RESULT FROM A *LOSS*
THAT IS PAYABLE UNDER ANY
OF THE PHYSICAL DAMAGE
COVERAGES. WE WILL ALSO
NOT PAY FOR ANY TESTING OR
REMEDIATION OF *FUNGI,* OR
ANY ADDITIONAL COSTS RE-
QUIRED TO REPAIR ANY VEHI-
CLE THAT ARE DUE TO THE
EXISTENCE OF *FUNGI.*

(2)  THERE IS NO COVERAGE FOR
*LOSS* TO ANY VEHICLE THAT
RESULTS FROM:

a.  NUCLEAR REACTION;

b.  RADIATION OR RADIO-
ACTIVE CONTAMINA-
TION FROM ANY
SOURCE; OR

c.  THE ACCIDENTAL OR
INTENTIONAL DETONA-
TION OF, OR RELEASE OF
RADIATION FROM, ANY
NUCLEAR OR RADIOAC-
TIVE DEVICE.

h.  If There Is Other Physical Damage Cov-
erage, or If You Own More Than One
Vehicle

Item 2. is changed to read:

2.  Policies Issued by Us to You,
Your Spouse or Any Relative

If two or more vehicle policies is-
sued by us to *you, your spouse* or
any *relative* apply to the same
*loss* or occurrence, we will pay
under the policy with the highest
limit.

3.  CONDITIONS

The provision titled Suit Against Us is
changed to read:

2.  Suit Against Us

There is no right of action against
us:

a.  until all the terms of this pol-
icy have been met; and

b.  under the liability coverages,
until the amount of damages

Page 3 of 12                                            6910.3

an *insured* is legally liable to pay has been finally determined by:

(1) verdict after actual trial; or

(2) agreement between the *insured*, the claimant and us.

Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our obligations.

c. under uninsured motor vehicle, any physical damage and death, dismemberment and loss of sight coverages, until 30 days after we get the *insured's* notice of accident or loss.

d. under no-fault coverage if, within 15 days after our receipt of written notice of an intent to initiate litigation for:

(1) an overdue claim we pay the overdue claim, applicable interest, and a penalty of ten percent of the overdue amount that we pay, subject to a maximum penalty of $250; or

(2) our withdrawal of payment for future treatment not yet rendered, we mail to the *person* filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice and to pay a penalty of ten percent, subject to a maximum penalty of $250, when we pay for such future treatment.

Payment or our written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or our written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time we have to pay the claim pursuant to the *No-Fault Act*. The notice shall state that it is a "demand letter under s. 627.736 (11)" and shall specify:

(1) the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

(2) the claim number or policy number upon which the claim was originally submitted to us; and

(3) to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 form, any other standard form approved by the Department of Financial Services, or the lost-wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and medically necessary.

The notice must be delivered to us by United States certified or registered mail, return receipt requested, at the address we have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website.

e.  under medical payments coverage unless we receive written notice of an intent to initiate litigation and if within 15 days after our receipt of such for:

   (1)  a claim we pay the claim; or

   (2)  our withdrawal of payment for future treatment not yet rendered we mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

Payment or our written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or our written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice shall state that it is a "demand letter for medical payments coverage" and shall specify:

   (1)  the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

   (2)  the claim number or policy number upon which the claim was originally submitted to us; and

   (3)  to the extent applicable, the name of the medical provider who rendered

the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 form, or any other standard form approved by the Department of Financial Services, may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to us by United States certified or registered mail, return receipt requested, at the address we have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website.

b.  **Under Our Right to Recover Our Payments**

   (1)  Item a. is changed to read:

      a.  **Death, dismemberment and loss of sight coverage payments are not recoverable by us.**

   (2)  Item c. is changed to read:

      c.  **Under the liability, medical payments and physical damage coverages the right of recovery of any party we pay passes to us. Such party shall:**

Page 11 of 12

6910.3

(1) not hurt our rights to re-
cover; and

(2) help us get our money
back.

c. **Cancellation**

Return of Unearned Premium is
changed to read:

"Return of Unearned Premium." If
*you* cancel, premium will be earned
on a pro-rata basis. We may retain up
to ten percent of any unearned pre-
mium. Any remaining unearned pre-
mium will be mailed to *your* within 30
days after the effective date of the pol-
icy cancellation, or 30 days after we
receive *your* request to cancel *your*
policy, whichever is later. If we can-
cel, premium will be earned on a pro-
rata basis. Any unearned premium
will be mailed at the time we cancel or
within 15 days after the effective date
of the policy cancellation. Delay in
the return of unearned premium does
not affect the cancellation.

d. Condition 8, Concealment or Fraud, is
replaced by the following:

8. **Concealment or Fraud**

a. **Coverages Other Than No-
Fault**

There is no coverage under
this policy if *you* or any
other *person* insured under

this policy has made false
statements with the intent to
conceal or misrepresent any
material fact or circumstance
in connection with any claim
under this policy.

b. **No-Fault Coverage**

There is no coverage under
this policy for an *insured*
who has committed, by mate-
rial act or omission, any in-
surance fraud relating to the
no-fault coverage provided
by this policy, if the fraud is
admitted to in a sworn state-
ment by the *insured* or if it is
established in a court of
competent jurisdiction. Such
fraud voids all coverage for
no-fault benefits for the *in-
sured* who committed the
fraud, regardless of whether a
portion of the claim is legiti-
mate.

We are entitled to recover
from the *insured* who com-
mitted the fraud any pay-
ments we made before the
fraud was discovered. The
prevailing party is entitled to
its costs and attorney fees in
any action to enforce our
right of recovery under this
provision.

**AUTO RENEWAL**

State Farm Mutual Automobile Insurance Company

PO Box 8000
Ballston Spa NY 12020

AT2  2N3K -1008 A

000668
KELLY, METRY & GENIE
10511 SW 64TH CT
OCALA FL 34476-9365

| POLICY NUMBER | 37 1947-A03 18 |
| --- | --- |

JUL 03 2008 to JAN 03 2009

| DATE DUE | PLEASE PAY THIS AMOUNT |
| --- | --- |
| JUL 03 2008 | $44.10 |

| | Coverages and Limits | Premiums |
| --- | --- | --- |
| A | Liability | |
| | Bodily Injury 100,000/300,000 | 20.18 |
| | Property Damage 100,000 | 4.80 |
| C | Medical Payments 25,000 | 5.59 |
| D | 100 Deductible Comprehensive | 9.68 |
| G | 250 Deductible Collision | |
| U | Uninsured Motor Vehicle | |
| | Bodily Injury 100,000/300,000 | 3.85 |
| | **Amount Due** | **$44.10** |

*Your premium is based on the following . . .If not correct, contact your agent.*
1973 CHEVROLET CORVETTE VIN  1Z236J35420181

Class  1S00000000

Drivers of vehicle in your household...

Ordinary use of vehicle...
Limited use antique/classic.

Additional information...
Vehicle value $7,000.

CONVENIENT PAYMENT OPTION: You may use one of State Farm's alternate payment plans which divides your present premium into two separate payments.

You may pay one half of the amount due, $22.05, plus a handling charge of $2.00.  The amount due on JUL 03 2008 will be $24.05.

The remaining half will be due on SEP 01 2008.  We'll send you a reminder notice.

Your premium may be influenced by the drivers listed below and other individuals permitted to operate your vehicle.  This list does not extend or expand coverage beyond that contained in this automobile policy.  The drivers listed below are the drivers reported to us that own or regularly operate any vehicle in your household.

METRY KELLY, EUGENIE R KELLY, JAIMIE M KELLY, JOEL KELLY.

If the above information is incomplete or inaccurate, or if you want to confirm the information we have in our records please contact your agent.

5920
44.10
6-8-08

*Thanks for letting us serve you...*

Agent  BRUCE DOUGHTY
Telephone  (207)854-4040



94 7385 0673

*See reverse side for important informa*
*Please keep this part for your record.*

Prepared   MAY 29 200

PAGE NO.

5 Reporting a Claim — Insured's Duties — What to do if you have an accident, claim or are sued.

2 Defined Words

4 Declarations

4 Declarations Continued

4 When and Where Your Coverage Applies

5 Financed Vehicles — Coverage for Creditor

Coverages

5 A — Liability — When there is damage to others.

7 C — Medical Payments — When there are medical and funeral expenses.

11 U — Uninsured Motor Vehicle — When the other car or driver is not insured or is underinsured.

14 D — Comprehensive — When *your car* is damaged except by collision or upset. Any deductible amount is shown by the number beside "D" on the declarations page.

17 G — Collision — When *your car* is damaged by collision or upset. The deductible is shown by the number beside "G" on the declarations page.

17 H — Emergency Road Service — When *your car* breaks down or needs a tow

19 R — Car Rental Expense — When *you* need to rent a car because of damage to *your car*.

19 R1 — Car Rental and Travel Expenses — When *you* need to rent a *car* and pay extra travel expenses because of damage to *your car*.

19 S — Death, Dismemberment and Loss of Sight — Pays for death of or certain injuries to *persons* named.

23 Z — Loss of Earnings — Pays loss of *weekly earnings* to *persons* named.

24 Conditions

25 1. Policy Changes

25 2. Suit Against Us

26 3. Our Right To Recover Our Payments

26 4. Cancellation

27 5. Renewal

27 6. Premium

28 7. Concealment or Fraud

28 Mutual Conditions

29 6479A.) Maine Motor Vehicle Liability Policy Endorsement Policy Form 9819A

PLEASE READ YOUR POLICY CAREFULLY. IF YOU HAVE AN ACCIDENT, CONTACT YOUR STATE FARM AGENT OR ONE OF OUR CLAIM OFFICES AT ONCE. (SEE "REPORTING A CLAIM (INSURED'S DUTIES" IN THIS POLICY.)

Authorized Representative

State Farm Mutual Automobile Insurance Company, Home Office, Bloomington, Illinois

North Atlantic Office  •  100 State Farm Place  •  P.O. Box 8000  •  Ballston Spa, New York 12020-8000

YOUR
STATE FARM
CAR
POLICY

Maine
Policy Form 9819A

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
BLOOMINGTON, ILLINOIS
A MUTUAL COMPANY

DEFINED WORDS
WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily.

*Car* — means a land motor vehicle with four or more wheels, which is designed for use mainly on public roads. It does not include:

1. any vehicle while located for use as a dwelling or other premises, or
2. a truck-tractor designed to pull a trailer or semitrailer.

*Car Business* — means a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers.

*Insured* — means the person, persons or organization defined as *insureds* in the specific coverage. If the information *you* have provided State Farm is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period as set out in the provision titled Premium of the Conditions section of this policy.

*Loss* — defined in Sections IV and V.

*Newly Acquired Car* — means a *car* newly owned by or newly leased to *you* or *your spouse* that replaces *your car*. This policy will only provide coverage for the *re-placement car* if *you* or *your spouse*:

*Bodily Injury* — means bodily injury to a *person* and sickness, disease or death which results from it.

1. ask us to insure it within 30 days after its delivery to *you* or *your spouse*, and
2. pay us any added amount due.

*Additional Car* — means an added *car* newly owned by or newly leased to *you* or *your spouse*. This policy will only provide coverage for the *additional car* if:

1. it is a *private passenger car* and we insure all other *private passenger cars*; or
2. it is other than a *private passenger car* and we insure all *cars* owned by or leased to *you* or *your spouse* on the date of its delivery to *you* or *your spouse*.

This policy provides coverage for the *additional car* only until the earlier of:

1. 12:01 A.M. Standard Time at the address shown on the declarations page on the 31st day after the delivery of the *car* to *you* or *your spouse*; or
2. the effective date and time of a policy issued by us or any other company that describes the *car* on its declarations page.

*You* or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of application.

If a *newly acquired car* is not otherwise afforded comprehensive or collision coverage by this or any other policy, this policy will provide the comprehensive or collision coverage

not otherwise provided for the *newly acquired car*. If such coverage is provided by this paragraph, it will apply only until 12:01 A.M. Standard Time at the address shown on the declarations page on the sixth day after the delivery of the *car* to *you* or *your spouse*. Any comprehensive or collision coverage provided by this paragraph is subject to a deductible of $500.

*Non-Owned Car* — means a *car* not owned by, registered to or leased to:

1. *you, your spouse*;
2. any *relative* unless at the time of the accident or loss:
   a. the *car* currently is or has within the last 30 days been insured for liability coverage, and
   b. the driver is an *insured* who does not own or lease the *car*.
3. any other *person* residing in the same household as *you, your spouse* or any *relative*, or
4. an employer of *you*, *your spouse* or any *relative*.

*Non-owned car* does not include a *car* which has been operated or rented by or in the possession of an *insured* during any part of each of the last 21 or more consecutive days. If the *insured* is an *insured* under one or more other *car* policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional *car* policy.

A *non-owned car* must be a *car* in the lawful possession of the *person* operating it.

*Private Passenger Car* — means a *car*:

1. with four wheels;
2. of the private passenger or station wagon type, and
3. designed solely to carry persons and their luggage.

*Person* — means a human being.

*Relative* — means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you*. It includes *your* unmarried and unemancipated child away at school.

*Spouse* — means *your* husband or wife who resides primarily with *you*.

*Temporary Substitute Car* — means a *car* not owned by, registered to or leased to *you* or *your spouse*, if it replaces *your car* for a short time. It is used with the consent of the owner. *Your car* has to be out of use due to its breakdown, repair, servicing, damage or loss. A *temporary substitute car* is not considered a *non-owned car*.

*Utility Vehicle* — means a motor vehicle with:

1. a pickup, panel or van body, and
2. a Gross Vehicle Weight of 10,000 pounds or less.

*You* or *Your* — means the named insured or named insureds shown on the declarations page.

*Your Car* — means the *car* or the vehicle described on the declarations page.

2
9819A

3
9819A

We, the State Farm Mutual Automobile Insurance Company, agree to insure you according to the terms of this policy based:

1. on *your* payment of premium for the coverages *you* chose; and
2. in reliance on *your* statements in these declarations.

*You* agree, by acceptance of this policy that:

1. the statements in these declarations are *your* statements and are true, and
2. we insure *you* on the basis that *your* statements are true, and

## DECLARATIONS CONTINUED

3. this policy contains all of the agreements between *you* and *us* or any of our agents.

Unless otherwise stated in the exceptions space on the declarations page, *your* statements are:

1. Ownership. *You* are the sole owner of *your car.*
2. Insurance History. *You* have not had vehicle insurance cancelled by an insurer within the past three years.
3. Use. *Your car* is used for pleasure and business.

## WHEN AND WHERE COVERAGE APPLIES

### When Coverage Applies

The coverages *you* chose apply to accidents and *losses* that take place during the policy period.

The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

### Where Coverage Applies

The coverages *you* chose apply:

1. in the United States of America, its territories and possessions or Canada, or
2. while the insured vehicle is being shipped between their ports.

The liability, medical payments and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

Death, dismemberment and loss of sight, total disability and loss of earnings coverages apply anywhere in the world.

## FINANCED VEHICLES

If a creditor is shown in the declarations, we may pay any comprehensive or collision *loss* to:

1. *you* and, if impaired, the repairer; or
2. *you* and such creditor, as its interest may appear; when we find it is not practical to repair *your car;* or
3. the creditor, as to its interest, if *your car* has been repossessed.

When we pay the creditor for *loss* for which *you* are not covered, we are entitled to the creditor's right of recovery against *you* to the extent of our payment. Our right of recovery shall not impair the creditor's right to recover the full amount of its claim.

The coverage for the creditor's interest only is valid until we terminate it. We will not terminate such coverage because of:

1. any act or negligence of the owner or borrower; or
2. a change in the ownership or interest unknown to us, unless the creditor knew of it and failed to tell us within 10 days; or
3. an error in the description of the vehicle.

The date of termination of the creditor's interest will be at least 10 days after the date we mail or electronically transmit the termination notice.

## REPORTING A CLAIM — INSURED'S DUTIES

1. Notice to Us of an Accident or Loss

   The *insured* must give us or one of our agents written notice of the accident or *loss* as soon as reasonably possible. The notice must give us:

   a. *your* name; and
   b. the names and addresses of all *persons* involved; and
   c. the hour, date, place and facts of the accident or *loss;* and
   d. the names and addresses of witnesses.

2. Notice to Us of Claim or Suit

   If a claim or suit is made against an *insured,* that *insured* must at once send us every demand, notice or claim made and every summons or legal process received. That *insured* also shall answer questions under oath, when asked by anyone we may reasonably ask, and sign copies of the answers.

3. Other Duties Under the Physical Damage Coverages

   When there is a *loss, you* or the owner of the property also shall:

   a. make a prompt report to the police when the *loss* is the result of theft or larceny.
   b. protect the damaged vehicle. We will pay any reasonable expense incurred to do so.
   c. show us the damage, when we ask.
   d. provide all records, receipts and invoices, or certified copies of them. We may make copies.
   e. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

4. **Other Duties Under Medical Payments, Uninsured Motor Vehicle, Death, Dismemberment and Loss of Sight and Loss of Earnings Coverages**

Any *person* who suffers a *bodily injury* which results in a medical payments coverage claim must notify us of the claim in writing as soon as reasonably possible after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may give us the required notice on behalf of the injured *person*.

The *person* making claim also shall:

a. under the medical payments, uninsured motor vehicle, death, dismemberment and loss of sight and loss of earnings coverages:

(1) give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

(2) be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

(3) answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

b. under the uninsured motor vehicle coverage:

(1) report a "hit-and-run" accident to the police within 24 hours and to us within 30 days.

(2) let us see the insured *car* the *person* occupied in the accident.

(3) send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

c. under the death, dismemberment and loss of sight and loss of earnings coverages, give us proof of claim on forms we furnish.

5. **Insured's Duty to Cooperate With Us**

a. The *insured* shall cooperate with us and, when asked, assist us in:

(1) making settlements.

(2) securing and giving evidence.

(3) attending, and getting witnesses to attend, hearings and trials.

b. The *insured* shall not, except at his or her own cost, voluntarily:

(1) make any payment or assume any obligation to others; or

(2) incur any expense, other than for first aid to others.

# SECTION I — LIABILITY — COVERAGE A

*You* have this coverage if "A" appears in the "Coverages" space on the declarations page.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

a. *bodily injury* to others, and

b. damage to or destruction of property including loss of its use,

caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident.

1. Court costs of any suit for damages insured due to a judgment and accruing.

2. Interest on damages owed by the *insured* due to a judgment and accruing:

a. after the judgment, and until we pay, offer or deposit in court the amount due under this coverage; or

b. before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage, but only on that part of the judgment we pay.

3. Premiums or costs of bonds:

a. to secure the release of an *insured's* property attached under a court order;

b. required to appeal a decision in a suit for damages if we have not paid our limit of liability that applies to the suit; and

c. up to $250 for each bail bond needed because of an accident or related traffic law violation.

We have no duty to furnish or apply for any bonds. The amount of any bond we pay for shall not be more than our limit of liability.

4. Expenses incurred by an *insured*:

a. for loss of wages or salary up to $100 per day if we ask the *insured* to attend the trial of a civil suit.

b. for first aid to others at the time of the accident.

c. at our request.

We have the right to investigate, negotiate and settle any claim or suit.

**Coverage for the Use of Other Cars**

The liability coverage extends to the use, by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

**Who is an Insured**

When we refer to *your car*, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first *person* named in the declarations;

3.

4. their *relatives*; and

any person or organization which does not own or hire the *car* but is liable for its use by one of the above *persons*.

THERE IS NO COVERAGE FOR NON-OWNED CARS:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE:

   a. BEING REPAIRED, SERVICED OR USED BY ANY PERSON WHILE THAT PERSON IS WORKING IN ANY *CAR* BUSINESS; OR

   b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or occupied by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

**Trailer Coverage**

The liability coverage extends to the owner-ship, maintenance or use, by an *insured*, of:

1. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for road use. These trailers are not described in the declarations and no extra premium is charged.

2. The following trailers only if they are described on the declarations page and extra premium is paid:

   a. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*.

   (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

   (3) while used as premises for office, store or display purposes; or

   b. trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*.

When we refer to trailer coverage, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any person while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is within the scope of consent of *you* or *your spouse*; and

5. any other person or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

**Limits of Liability**

The amount of bodily injury liability **coverage** is shown on the declarations page under "**Limits of Liability – Coverage A – Bodily Injury. Each Person, Each Accident.**" Under "**Each Person**," the amount of coverage for all damages due to *bodily injury* to one *person* includes all injury and damages to

emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to *bodily injury* to two or more *persons* in the same accident.

The amount of property damage liability coverage is shown on the declarations page under "**Limits of Liability – Coverage A – Property Damage, Each Accident.**"

The limits of liability are not increased because more than one *person* or organization may be an *insured*.

We will pay damages for which an *insured* is legally liable up to these amounts.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased. The liability coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage.

**When Coverage A Does Not Apply**

In addition to the limitations of coverage in Who Is an Insured and Trailer Coverage

THERE IS NO COVERAGE.

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

   a. RENTED OR LEASED TO OTHERS.

   b. USED TO CARRY PERSONS FOR A CHARGE. This does not apply to the use on a share expense basis of:

      (1) a *private passenger car*; or

      (2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

2. FOR ANY *BODILY INJURY* TO:

   a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. *You* and *your spouse* are covered for such injury to a fellow employee.

   b. ANY EMPLOYEE OF AN INSURED ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is neither covered nor required to be covered under any workers' compensation insurance.

   This coverage is excess for (3) and (4) above.

3. FOR:

   a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

   b. ANY PERSON WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA, OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN THE CHARGE OF OR TRANSPORTED BY AN *INSURED*. But coverage applies to a rented:

   a. residence, or

   b. private garage

damaged by a *car* we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKERS' COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

**If There is Other Liability Coverage**

1. **Policies Issued by Us to You, Your Spouse, or Any Relative**

If two or more vehicle liability policies issued by us to *you, your spouse*, or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

2. **Other Liability Coverage Available From Other Sources**

Subject to item 1, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the percent that the limit of this policy bears to the total of all vehicle liability coverage applicable to the accident.

3. **Temporary Substitute Car, Non-Owned Car, Trailer**

Subject to items 1 and 2, if a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle*:

   a. has other vehicle liability coverage on it, or

   b. is self-insured under any motor vehicle financial responsibility law, a motor carrier law or any similar law,

then this coverage is excess over such insurance or self-insurance.

4. **Newly Acquired Car**

THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON A *NEWLY ACQUIRED CAR*.

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

1. **Out-of-State Coverage**

If an *insured* under the liability coverage is in another state or Canada and, as a nonresident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

   a. the policy will be interpreted to give the coverage required by that law; and

   b. the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

2. **Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

---

## SECTION II — MEDICAL PAYMENTS — COVERAGE C

*You have this coverage if "C" appears in the "Coverages" space on the declarations page.*

**Medical Expenses**

We will pay reasonable medical expenses incurred, for *bodily injury* caused by accident, for services furnished within three years of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices.

The *bodily injury* must be discovered and treated within one year of the date of the accident.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

Services are necessary only if the services are rendered by a medical provider within the legally authorized scope of the provider's practice and are essential in achieving maximum medical improvement for the *bodily injury* sustained in the accident.

**REASONABLE MEDICAL EXPENSES DO NOT INCLUDE EXPENSES:**

1. FOR TREATMENT, SERVICES, PRODUCTS OR PROCEDURES THAT ARE:

   a. EXPERIMENTAL IN NATURE, FOR RESEARCH, OR NOT PRIMARILY DESIGNED TO SERVE A MEDICAL PURPOSE; OR

   b. NOT COMMONLY AND CUSTOMARILY RECOGNIZED THROUGHOUT THE MEDICAL PROFESSION AND WITHIN THE UNITED STATES AS APPROPRIATE FOR THE TREATMENT OF THE *BODILY INJURY*; OR

2. INCURRED FOR:

   a. THE USE OF THERMOGRAPHY OR OTHER RELATED PROCEDURES OF A SIMILAR NATURE; OR

   b. THE PURCHASE OR RENTAL OF EQUIPMENT NOT PRIMARILY DESIGNED TO SERVE A MEDICAL PURPOSE.

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

**Persons for Whom Medical Expenses Are Payable**

We will pay medical expenses for *bodily injury* sustained by:

1.    a. the first *person* named in the declarations;

   b. his or her *spouse*; and

   c. their *relatives*.

These *persons* have to sustain the *bodily injury*:

   a. while they operate or *occupy* a vehicle covered under the liability section; or

   b. through being struck as a *pedestrian* by a motor vehicle or trailer.

A *pedestrian* means a *person*, not an occupant of a motor vehicle or trailer.

2. any other *person* while *occupying*:

   a. a vehicle covered under the liability coverage, except a *non-owned car*. Such vehicle has to be used with permission and is insured under the liability coverage; or

   b. a *non-owned car*. The *bodily injury* has to result from such *car's* operation or *occupancy* by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

**Deciding Amount**

The amount due under this coverage shall be decided by agreement between the *person* making claim and us. If there is no agreement, the amount due shall be decided by arbitration upon written request of the *person* making claim or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on us, the *person* making claim, any assignee of the *person* making claim and any *person* or organization with whom the *person* making claim expressly or impliedly contracts for the rendition of medical services. The arbitrators' decision shall be limited to whether or not the medical expenses were reasonable and necessary, with the amount due being equal to the reasonable and necessary medical expenses only. The arbitrators shall not award punitive damages or other noncompensatory damages.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall take place in the county in which the *person* making claim resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used.

**Payment of Medical Expenses**

We may pay the injured *person* or any *person* or organization performing the services.

**Limit of Liability**

The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability — Coverage C — Each Person". If the amount shown is $3,000 or more, the most we pay for funeral services is $3,000 *per person.*

A motor vehicle and attached trailer are one vehicle as respects limits.

If There Are Other Medical Payments Coverages

1. **Non-Duplication**

   No *person* for whom medical expenses are payable under this coverage shall recover more than once for the same medical expense under this or similar vehicle insurance.

2. **Policies Issued by Us to You, Your Spouse or Relatives**

   If two or more policies issued by us to *you, your spouse or your relatives* provide vehicle medical payments coverage and apply to the same *bodily injury sustained:*

   a. while *occupying* a *non-owned car,* a *temporary substitute car,* or

   b. as a *pedestrian,*

   the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

3. Subject to items 1 and 2 above:

   a. if a *temporary substitute car,* a *non-owned car* or a trailer has other vehicle medical payments coverage on it, or

   b. if other vehicle medical payments coverage applies to *bodily injury* sustained by a *pedestrian*

   this coverage is excess

4. **THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE MEDICAL PAYMENTS COVERAGE ON A NEWLY ACQUIRED CAR.**

**What Is Not Covered**

THERE IS NO COVERAGE:

1. WHILE A *NON-OWNED CAR* IS USED:

   a. BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A CAR BUSINESS; OR

   b. IN ANY OTHER BUSINESS OR JOB. This does not apply when the first *person* named in the declarations, his or her *spouse* or any *relative,* is operating or occupying a *private passenger car.*

2. WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY ANY MOTOR VEHICLE OR TRAILER:

   a. DESIGNED MAINLY FOR USE OFF PUBLIC ROADS; OR

   b. LOCATED FOR USE AS A RESIDENCE OR PREMISES; OR

   c. THAT RUNS ON RAILS OR CRAWLER-TREADS.

3. FOR *BODILY INJURY* DUE TO WAR OF ANY KIND.

4. FOR MEDICAL EXPENSES FOR *BODILY INJURY:*

   a. SUSTAINED WHILE *OCCUPY-ING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY OR LEASED TO YOU, YOUR SPOUSE, OR ANY RELATIVE, WHICH IS NOT INSURED UNDER THIS COVERAGE; OR

   b. SUSTAINED BY ANY *PER-SON,* other than the first *person* named in the declarations, his or her *spouse* or their *relatives,* WHILE *OCCUPYING* A VEHICLE:

   (1) RENTED OR LEASED TO OTHERS; OR

   (2) USED TO CARRY PERSONS FOR A CHARGE. This does not apply to a *private passenger car* used on a share expense basis.

   c. TO THE EXTENT WORKERS' COMPENSATION BENEFITS ARE REQUIRED TO BE PAYABLE.

## SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U

*You have this coverage if "U" appears in the "Coverages" space on the declarations page.*

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

**Uninsured Motor Vehicle – means:**

1. a land motor vehicle, the ownership, maintenance or use of which is:

   a. not insured or bonded for bodily injury liability at the time of the accident;

   b. insured or bonded for bodily injury liability at the time of the accident, but

   (1) the limits of liability are less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

   (2) the insuring company denies coverage or is or becomes insolvent; or

   (3) the limits of liability are less than the limits you carry for uninsured motor vehicle coverage under this policy; or

An *uninsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. furnished for the regular use of *you, your spouse or any relative,*

3. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law;

4. owned by any government or any of its political subdivisions or agencies;

5. designed for use mainly off public roads except while on public roads; or

6. while located for use as premises.

**Who Is an Insured**

*Insured* – means the *person* or *persons* covered by uninsured motor vehicle coverage.

This is:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any other *person* while *occupying:*

   a. *your car*, a *temporary substitute car*, a *newly acquired car* or a trailer attached to such a car. Such vehicle has to be used within the scope of the consent of *you* or *your spouse*; or

   b. a *car* not owned by or leased to *you, your spouse or any relative,* or a *trailer* attached to such a *car*. It has to be driven by the first *person* named in the declarations and within the scope of the owner's consent.

Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured.*

5. any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

---

**Deciding Fault and Amount.**

Two questions must be decided by agreement between the *insured* and us:

1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

2. If so, in what amount?

If there is no agreement, these questions shall be decided by arbitration upon written request of the *insured* or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one.

The written decision of any two arbitrators shall be binding on each party.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall take place in the county in which the *insured* resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used.

We are not bound by any judgment against any *person* or organization obtained without our written consent.

**Payment of Any Amount Due**

We will pay any amount due:

1. to the *insured,*

2. to a parent or guardian if the *insured* is a minor or an incompetent *person,*

3. to the surviving *spouse,* or

4. at our option, to a *person* authorized by law to receive such payment.

---

**Limits of Liability**

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U". Each Person, Each Accident. Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*.

   Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

2. Any amount payable under this coverage shall be reduced:

   a. by any amount paid or payable to or for the *insured.*

   (1) for *bodily injury* under the liability coverage; or

   (2) under any workers' compensation, disability benefits or similar law.

   b. the total of the *bodily injury* limits of all other vehicle liability policies or bonds that apply to any *person* or organization legally liable for such *bodily injury.*

   Any payment made to a *person* under this coverage shall reduce any amount payable to that *person* under the bodily injury liability coverage.

3. The uninsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage.

4. The limits of liability are not increased because:

   a. more than one vehicle is insured under this policy; or

THERE IS NO COVERAGE:

1. FOR ANY *INSURED* WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*.

2. FOR *BODILY INJURY* TO AN *INSURED*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED BY OR LEASED TO *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY; OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED BY *YOU* OR LEASED TO *YOU, YOUR SPOUSE* OR ANY *RELATIVE*.

3. TO THE EXTENT IT IS BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS OR SIMILAR LAW.

c. ANY GOVERNMENTAL BODY OR AGENCY.

b. more than one *person* is insured at the time of the accident.

**When Coverage U Does Not Apply**

1. If uninsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by us or any other insurer, any coverage applicable under this policy shall apply:

a. on a primary basis if the *insured* sustains *bodily injury* while *occupying your car*, or while not *occupying* a motor vehicle or trailer.

b. on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle not owned by or leased to *you, your spouse*, or any *relative*.

2. Subject to item 1 above, if this policy and one or more other policies provide coverage for *bodily injury*:

a. on a primary basis, we are liable only for our share. Our share is that percent of the damages payable on a primary basis that the limit of liability of this policy bears to the total of all applicable uninsured motor vehicle coverage provided on a primary basis.

b. on an excess basis, we are liable only for our share. Our share is that percent of the damages payable on an excess basis that the limit of liability of this policy bears to the total of all applicable uninsured motor vehicle coverage provided on an excess basis.

**"If There Is Other Coverage"**

THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER UNINSURED MOTOR VEHICLE COVERAGE ON A NEWLY ACQUIRED CAR.

## SECTION IV — PHYSICAL DAMAGE COVERAGES:

*Loss* — means, when used in this section, each direct and accidental loss of or damage to:

1. *your car*;

2. its equipment which is common to the use of *your car* as a vehicle;

3. clothes and luggage insured, and

4. a detachable living quarters attached or removed from *your car* used for storage. Detachable living quarters includes its body and interior equipment. *You* must have told us about the living quarters before the *loss* and paid any extra premium needed.

COMPREHENSIVE - COVERAGE D. *You* have this coverage if "D" appears in the "Coverages" space on the declarations page. If a deductible applies, the amount is shown by the number beside "D".

1. Loss to Your Car. We will pay for *loss* to *your car* EXCEPT *LOSS* CAUSED BY *COLLISION* but only for the amount of each such *loss* in excess of the deductible amount. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and you agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

Breakage of glass or *loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

2. We will repay *you* for transportation costs incurred if *your car* is stolen. We will pay up to $25 per day beginning when *you* call us of the theft and ending when we offer to pay for the *loss*.

If the daily incurred transportation costs are payable under both Comprehensive Coverage and Car Rental and...

COLLISION - COVERAGE G. *You* have this coverage if "G" appears in the "Coverages" space on the declarations page. The deductible amount is shown by the number beside "G".

We will pay for *loss* to *your car* caused by *collision* but only for the amount of each such *loss* in excess of the deductible amount. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and you agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

If the *collision* is with another motor vehicle insured with us, *you* do not pay *your* deductible if it is $100 or less as we pay it.

*Loss* caused by *collision* does not include *loss* due to:

1. missiles or falling objects;

2. windstorm or hail;

3. earthquake, water or flood;

4. theft or larceny;

5. malicious mischief or vandalism; or

6. riot or civil commotion.

*Collision* — means *your car* upset or hit or was hit by a vehicle or other object.

**Clothes and Luggage** — Comprehensive and Collision Coverages

We will pay for *loss* to clothes and luggage owned by the first *person* named in the...

declarations, his or her *spouse*, and their *relatives*. These items have to be in or on *your car*. *Your car* has to be covered under this policy for:

1. Comprehensive, and the *loss* caused by fire, lightning, flood, falling object, explosion, earthquake, or theft. If the *loss* is due to theft, YOUR ENTIRE CAR MUST HAVE BEEN STOLEN; or

2. Collision, and the *loss* caused by collision.

We will pay up to $200 for *loss* to clothes and luggage in excess of any deductible amount shown for comprehensive or collision. $200 is the most we will pay in any one occurrence even though more than one *person* has a *loss*. This coverage is excess over any other coverage.

**Limit of Liability — Comprehensive and Collision Coverages**

The limit of our liability for *loss* to property or any part of it is the lower of the following:

1. the actual cash value, or
2. the cost of repair or replacement.

Actual cash value is determined by the market value, age and condition at the time the *loss* occurred. Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1. the cost of repair or replacement agreed upon by *you* and *us*;

2. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the *car* is to be repaired as determined by a survey made by *us*. If *you* ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. We will include in the

the estimate parts sufficient to restore the vehicle to its pre-loss condition. *You* agree with us that such parts may include either parts furnished by the vehicle's manufacturers or parts from other sources including non-original equipment manufacturers.

Any deductible amount that applies is then subtracted.

**Settlement of Loss — Comprehensive and Collision Coverages**

We have the right to settle a *loss* with *you* or the owner of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the *loss* in exchange for the damaged property. If the owner and we cannot agree on the actual cash value, either party may demand an appraisal as described below. If the owner keeps the damaged property, we will deduct its value after the *loss* from our payment. The damaged property cannot be abandoned to us.

2. return the damaged property or pay to:
   a. repair the damaged property or part, or
   b. replace the property or part.
   If the repair or replacement results in betterment, *you* must pay for the amount of betterment.

3. return the stolen property and pay for any damage due to the theft.

Appraisal under item 1 above shall be conducted according to the following procedure. Each party shall select an appraiser. These two shall select a third appraiser. The written decision of any two appraisers shall be binding. The cost of the appraiser shall be paid by the party who hired him or her. The cost of the third appraiser and other appraisal expenses shall be shared equally by both parties. We do not waive

any of our rights of rejecting or an appraisal. If *you* give us *your* consent, we may move the damaged property, at our expense, to reduce storage costs during the appraisal process. If *you* do not give us *your* consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

The Settlement of Loss provision for comprehensive and collision coverages incorporates the Limit of Liability provision of those coverages.

If we can pay the *loss* under either comprehensive or collision, we will pay under the coverage where *you* collect the most.

When there is *loss* to *your car*, clothes and luggage in the same occurrence, any deductible will be applied first to the *loss* to *your car*. *You* pay only one deductible.

**EMERGENCY ROAD SERVICE — COVERAGE H.** *You* have this coverage if "H" appears in the "Coverages" space on the declarations page.

We will pay the fair cost *you* incur for *your car* for:

1. mechanical labor up to one hour at the place of its breakdown;

2. towing to the nearest place where the necessary repairs can be made during regular business hours if it will not run;

3. towing it out if it is stuck on or immediately next to a public highway;

4. delivery of gas, oil, battery or tire. WE DO NOT PAY THE COST OF THE GAS, OIL, BATTERY OR TIRE;

5. locksmith services, up to one hour, to open *your car* if *your* key is lost, stolen or locked inside *your car*. We will pay only the cost of labor.

**CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1.** *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. Car Rental Expense.
   If

If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental Expense Coverage, we will pay only under the one coverage where *you* collect the most, whichever comes first.

and ending when:

1. when it cannot run due to the *loss*; or
2. if it can run, when *you* leave it at the shop for agreed repairs.

**CAR RENTAL EXPENSE — COVERAGE R.** *You* have this coverage if "R" appears in the "Coverages" space on the declarations page.

1. Car Rental Expense.
   If
   (1) a dollar amount is shown under "Limits of Liability — Car Rental Expense, Each Day" on the declarations page, we will pay *you* the daily rental charge up to that dollar amount; or
   (2) a percentage amount is shown under "Limits of Liability — Car Rental Expense, Each Day" on the declarations page, we will pay *you* that percentage of the daily rental charge.

   when *you* rent a *car* from a *car* rental agency or *car* business and *you* incur a charge. "Daily rental charge" means the daily rental rate, plus charges for mileage and related taxes.

   If *you* choose not to rent a *car*, we will pay *you* $10 for each completed 24 hour period that *your car*

is not drivable. *You* must report to us the period of time that *your car* was not drivable.

We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D or G.

b. Payment will be made for a period that:

(1) starts:

  (a) when *your car* is not drivable due to the *loss*; or

  (b) if *your car* is drivable, when *you* leave it at the shop for *agreed* repairs; and

(2) ends:

  (a) when *your car* has been repaired or replaced; or

  (b) when we offer to pay for the *loss*, if *your car* is repairable but you choose to delay repairs; or

  (c) five days after we offer to pay for the *loss* if:

    (i) *your car* was stolen and not recovered; or

    (ii) we declare that *your car* is a total loss,

    whichever comes first.

2. Travel Expenses. If *your car* is not drivable due to a *loss* which occurs more than 50 miles from home and would be payable under coverage D or G, we will pay *you* for:

expenses incurred by *you*, *your spouse* and any *relative* for:

a. commercial transportation fares to continue to *your* destination or home;

b. extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first; and

c. meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of *loss* to *your* destination or home.

3. Rental Car — Repayment of Deductible Amount Expenses. We will pay the expense of any deductible amount you are required to pay the owner under comprehensive or collision coverage in effect on a substitute car rented from a car rental agency or *car rental business*.

Total Amount of Expenses Payable — Coverage RU.

1. The most we will pay for Car Rental Expense incurred in any one occurrence is shown on the declarations page under "Limits of Liability - Car Rental Expense. Each Occurrence".

2. The most we will pay for Rental Car — Repayment of Deductible Amount Expense incurred in any one occurrence is $400.

3. The most we will pay for Travel Expenses incurred in any one occurrence is $400.

Trailer Coverage

1. Owned Trailer

Your trailer is covered:

20

9819A

a. when it is described on the declarations page of the policy; and

b. for the coverages shown as applying to it.

2. Non-Owned Trailer or Detachable Living Quarters

Any physical damage coverage in force on *your car* applies to a non-owned:

a. trailer, if it is designed for use with a *private passenger car*; or

b. detachable living quarters unit used by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

The most we will pay under the comprehensive or collision coverage for a *loss* to such non-owned trailer or unit is $500.

A non-owned trailer or detachable living quarters unit is one that:

1. is not owned by or registered in the name of:

  (1) *you*, *your spouse*, any *relative*,

  (2) any other *person* residing in the same household as *you*, *your spouse* or any *relative*; or

  (3) an employer of *you*, *your spouse* or any *relative*, and

2. has not been used or rented by or in the possession of *you*, *your spouse* or any *relative* during any part of the last 21 or more consecutive days. For cars insured by us, the 21 day limit is increased by an additional 21 days for each such additional policy.

Coverage for the Use of Other Cars

1. The collision and comprehensive coverages that you have on *your car* extend to a *covered rental vehicle*. We will pay the actual damage to the *insured* for actual damage to the *insured rental vehicle*, including obligation to the *covered rental vehicle*, to the *covered rental vehicle*, including

2. The coverages in this section you have on *your car* extend to a *loss* to a *newly acquired car* or a *temporary substitute car* or a *non-owned car*. These coverages extend to a *non-owned car* while it is driven by or in the custody of an *insured*. These coverages shall be excess over and shall not pay again any loss of expenses paid under item above.

Authorized driver — means:

1. the renter;

2. the renter's *spouse*, if that *person* is a licensed driver meeting the *rental company's* minimum age requirement;

3. the renter's employer or coworker, if that *person* is engaged in business activity with the renter and is a licensed driver meeting the *rental company's* minimum age requirement;

4. a *person* who operates the vehicle during an emergency or while parking the vehicle in the course of that *person's* employment at a commercial establishment; or

5. a *person* listed by the *rental company* on the *covered rental agreement* as an authorized driver.

*Covered rental agreement* — means a written agreement with a term of 45 continuous days or fewer setting forth the terms and conditions governing the use of a *covered rental vehicle* provided by a *rental company*.

*Covered rental vehicle* — means a *private passenger motor vehicle* rented by an *insured* in the United States, its territories or possessions, or Canada under a *covered rental agreement*, regardless of where in the United States, its

21

9819A

territories or possessions, or Canada that rental vehicle is registered, rented or operated. The rental vehicle must be operated by *an authorized driver.*

*Insured* - as used in this provision means:

1. the first *person* named in the declarations;
2. his or her *spouse,* or
3. their *relatives.*

*Private passenger motor vehicle* – means a motor vehicle of the private passenger, sedan, station wagon or private passenger minivan type.

*Rental company* – means any *person* or organization, including franchises, in the business of providing *private passenger motor vehicles* to the public.

**When the Physical Damage Coverages Do Not Apply**

THERE IS NO COVERAGE FOR:

1. A NON-OWNED CAR:
   a. IF THE DECLARATIONS STATE THE "USE OF *YOUR* CAR" IS OTHER THAN "PLEASURE AND BUSINESS";
   b. WHILE BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS;* OR
   c. WHILE USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or occupied by *the first person named in the declarations,* his or her *spouse* or their *relatives.*
2. ANY VEHICLE WHILE:
   a. RENTED OR LEASED TO OTHERS; OR
   b. USED TO CARRY PERSONS FOR A CHARGE. This does not

22
9819A.

apply to the use on a share expense basis.

3. LOSS TO ANY VEHICLE DUE TO:
   a. TAKING BY ANY GOVERNMENTAL AUTHORITY;
   b. WAR OF ANY KIND;
   c. AND LIMITED TO WEAR AND TEAR, FREEZING, MECHANICAL OR ELECTRICAL BREAKDOWN OR FAILURE. This does not apply when the *loss* is the result of a theft covered by this policy. Nor does it apply to emergency road service; OR
   d. CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY PERSON WHO HAS THE VEHICLE DUE TO ANY LIEN, RENTAL, LEASE OR SALES AGREEMENT.
4. TIRES unless:
   a. stolen, or damaged by fire or vandalism, or
   b. other *loss* covered by this section happens at the same time.
5. TAPES OR DISCS FOR RECORDING OR REPRODUCING SOUND.
6. ANY LASER OR RADAR DETECTOR.
7. *YOUR CAR* WHILE SUBJECT TO ANY LIEN, LEASE OR SALES AGREEMENT NOT SHOWN IN THE DECLARATIONS.

**If There Is Other Coverage**

1. Policies Issued by Us to *You, Your Spouse* or Any *Relative*
   If two or more vehicle policies issued by us to *you, your spouse* or any *relative* apply to the same *loss* or occurrence, we will pay under the policy with the highest limit.

2. Coverage Available From Other Sources
   Subject to item 1, if other coverage applies to the *loss* or expenses, we will pay only our share. Our share is that *percent* of the limit of liability of this policy bears to the total of all coverage that applies.

3. Temporary Substitute Car, Non-Owned Car or Trailer
   Subject to items 1 and 2, if a *temporary substitute car,* a *non-owned car,* a covered *rental vehicle* or trailer designed for use

23
9819A.

with a *private passenger car* has other coverage on it, then this coverage is excess.

4. Newly Acquired Car
   THIS INSURANCE DOES NOT APPLY IF THERE IS SIMILAR COVERAGE ON A *NEWLY ACQUIRED CAR.*

**No Benefit to Bailee**

These coverages shall not benefit any carrier or other bailee for hire liable for loss.

## SECTION V — DEATH, DISMEMBERMENT AND LOSS OF SIGHT — COVERAGE S AND LOSS OF EARNINGS — COVERAGE Z

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT - COVERAGE S**

If "S" is shown in the "Coverages" space on the declarations page *insured* has the coverage.

We will pay the amount shown in the schedule for death or dismemberment, or for *loss,* caused by accident. The *insured* has to be *occupying* or be struck by a land motor vehicle or trailer. The death or *loss* must be the direct result of the accident and not due to any other cause. The death or *loss* must occur within 90 days of the accident.

*Insured* - means a *person* listed under "Persons Insured - Coverage S" on the declarations page.

*Loss* - means the loss of:

1. the foot or hand, cut off through or above the ankle or wrist; or
2. the whole thumb or finger; or
3. all sight.

**The Most We Pay**

The most we will pay because of the death of, or *loss* to, the *insured,* except as provided below, is shown under "Amount" next to his or her name on the declarations page.

Loss of:

### SCHEDULE

| | If amount under S in the declarations is: | |
|---|---|---|
| Death | $5,000 | $10,000 |
| Loss of: | | |
| hands; feet; sight of eyes; one hand & one foot; or one hand or one foot & sight of one eye | 5,000 | 10,000 |
| one hand or one foot, or sight of one eye | 2,500 | 5,000 |
| thumb & finger on one hand; or three fingers | 1,500 | 3,000 |
| any two fingers | 1,000 | 2,000 |

Payments or Any Amount Due

We will pay any amount due:

1. to the *insured*;
2. to a parent or guardian if the *insured* is a minor or an incompetent *person*;
3. to the surviving *spouse*; or
4. at our option, to any *person* or organization authorized by law to receive such payment.

Any payment made is to its extent a complete discharge of our obligations. We are not responsible for the way the money is used.

Autopsy

We have the right to have an autopsy made where it is not forbidden by law.

LOSS OF EARNINGS – COVERAGE Z

If "Z" is shown in the "Coverages" space on the declarations page each *insured* has the coverage.

We will pay the *insured* 85% of his or her loss of *weekly earnings*. The loss has to be due to continuous *total disability* that is:

1. the direct result of *bodily injury* caused by accident; and
2. sustained while *occupying* or through being struck by a land motor vehicle or trailer.

When Total Disability Applies

The *insured's total disability* must be for a period of at least 30 consecutive days starting within 20 days after the accident. We will not pay for the first seven days of the 30 day period.

Limits of Liability

We will pay up to $250 for each full work week of continued *total disability* and pro rata for less than a week. Subject to the limit per week, we

24
9819A

will pay up to $15,000 total for all loss or earnings due to any one accident.

*Insured* – means a *person* shown under "Persons Insured – Coverage Z" on the declarations page.

*Total Disability* – under coverage Z means the *insured*, while living, is not able to do the usual work or any other work for which he or she is reasonably fitted by education, training or experience.

*Weekly Earnings* – means all earnings for the *insured's* services before any deductions. When *weekly earnings* cannot be determined on a weekly basis an average will be used. The average is the total earnings for the 52 weeks just prior to the accident divided by 52.

When Coverages S and Z Do Not Apply

THESE COVERAGES S and Z Do Not Apply TO:

1. AN INSURED WHILE: ON THE JOB, OPERATING, OCCUPYING, LOADING OR UNLOADING.
   a. AN EMERGENCY VEHICLE; OR
   b. A VEHICLE USED IN THE INSURED'S BUSINESS OR JOB.
   But 1.b. does not apply if the vehicle is:
   (1) a private passenger car or school bus; or
   (2) of the pickup or van type, with a Gross Vehicle Weight of 10,000 pounds or less, while not used for delivery.

2. AN INSURED WHILE:
   a. ON THE JOB IN ANY CAR BUSINESS; OR
   b. OCCUPYING ANY:
   (1) VEHICLE WHILE BEING USED IN A RACE; OR
   (2) MILITARY VEHICLE.

... OR THROUGH BEING STRUCK BY A MOTOR VEHICLE OR TRAILER.

2. THAT RUNS ON RAILS OR CRAWLER TREADS;
3. DESIGNED FOR USE MAINLY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR
   c. LOCATED FOR USE AS PREMISES.

CONDITIONS

1. Policy Changes
   a. Policy Terms. The terms of this policy may be changed or waved only by:
   (1) an endorsement issued by us; or
   (2) the revision of this policy form to give broader coverage without an extra charge. If any coverage we carry is changed to give broader coverage, we will give you the broader coverage without the issuance of a new policy as of the date policy.
   b. Change of Interest. No change of interest in the policy is effective unless we consent in writing. However if you die, we will protect as named insured:
   (1) except, under death, dismemberment and loss of sight and loss of earnings coverages:
   (a) your surviving *spouse*;
   (b) any *person* with proper custody of *your car*, a newly acquired car or a temporary substitute car until a legal representative is qualified, and then

25
9819A

TAL DISABILITY OF AN INSURED DUE TO:

a. DISEASE except pus forming infection, due to bodily injury received in the accident; or
b. SUICIDE OR ATTEMPTED SUICIDE WHILE SANE OR INSANE; OR
c. WAR OF ANY KIND.

(3) the legal representative while acting within the scope of his or her duties.

Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

c. Consent of Beneficiary. Consent of the beneficiary under death, dismemberment and loss of sight coverage is not needed to cancel or change the policy.
d. Joint and Individual Interests. When there are two or more named insureds, each acts for all to cancel or change the policy.

2. Suit Against Us
   a. There is no right of action against us:
   (1) until all the terms of this policy have been met; and
   b. under the liability coverage, until the amount of damages an *insured* is legally liable to pay has been finally determined by:
   (1) judgment after actual trial, and appeal if any; or

(2) agreement between the *insured*, the claimant and us.

Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our obligations.

c. under uninsured motor vehicle, medical payments, any physical damage, death, dismemberment and loss of sight and loss of earnings coverages, until 30 days after we get the *insured's* notice of accident or *loss*.

3. Our Right to Recover Our Payments

a. Death, dismemberment and loss of sight and loss of earnings coverage payments are not recoverable by us.

b. Under medical payments coverage:

(1) we are subrogated to the extent of our payment to the right of recovery the injured *person* has against any party liable for the *bodily injury*.

(2) if the *person* to or for whom we have made payment has not recovered from any party liable for the *bodily injury*, he or she shall:

(a) not hurt our rights to recover;

(b) keep these rights in trust for us;

(c) execute any legal papers we need; and

(d) when we ask, take action through our representative to recover our payments.

(3) if the *person* to or for whom we make payment recovers from any party liable for the *bodily injury*, that *person* shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payment.

c. Under uninsured motor vehicle coverage:

(1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured *person* recovers from any party liable for the *bodily injury*.

(2) if the *person* to or for whom we have made payment has not recovered from the party at fault, he or she shall:

(a) keep these rights in trust for us;

(b) execute any legal papers we need; and

(c) when we ask, take action through our representative to recover our payments.

We are to be repaid our payments, costs and fees of collection out of any recovery.

d. Under all other coverages the right of recovery of any party we pay passes to us. Such party shall:

(1) not hurt our rights to recover; and

(2) help us get our money back.

4. Cancellation

**How You May Cancel.** *You* may cancel *your* policy by notifying us in writing of the date to cancel, which must be later than the date *you* mail or deliver it to us. We may waive these requirements by confirming the date and time of cancellation to *you* in writing.

**How and When We May Cancel.** We may cancel *your* policy by written notice, mailed or delivered to *your* last known address. The notice shall give the date cancellation is effective. It will be mailed or delivered to *you* so that *you* will receive it at least:

a. 10 days before the cancellation effective date if the cancellation is because of nonpayment of premium; or

b. 20 days before the cancellation effective date if the cancellation is because of any other reason.

Unless *you* receive a notice of cancellation within 59 days of the policy effective date, we will not cancel *your* policy before the end of the current policy period unless:

a. *you* fail to pay the premium when due; or

b. *you, your spouse*, any *relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation during the policy period or, if the policy is renewed, during the policy period or the 180 days just before the effective date of the renewal. However, we will not cancel *your* policy for suspension of a provisional license for less than 90 days.

**Return of Unearned Premium.** If *you* cancel, premium may be earned on a short rate basis. If we cancel, premium will be earned on a pro-rata basis. Any unearned premium may be returned at the time we cancel or within a reasonable time thereafter. Delay in the return of unearned premium does not affect the cancellation.

5. Renewal

Unless *you* have received a notice of cancellation or a notice of our intention not to renew the policy, we agree to renew the policy for the next policy period upon *your* payment of the renewal premium when due. It is agreed that the renewal premium will be based upon the rates in effect, the coverages carried, the applicable limits of liability, deductibles and other elements that affect the premium that apply at the time of renewal.

Other elements that may affect *your* premium include, but are not limited to:

a. drivers of *your car* and their ages and marital status;

b. *your car* and its use;

c. eligibility for discounts or other premium credits;

d. applicability of a surcharge based either on accident history, or on other factors.

A notice of our intention to not renew will be mailed or delivered to *your* last known address at least 30 days before the end of the current policy period.

6. Premium

The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

The premium for this policy is based on information State Farm has received from *you* or other sources. If the information is incorrect or incomplete, or changes during the policy period, *you* must inform State Farm of any changes regarding the following:

a. *your car*, or its use, including annual mileage;

b. the *persons* who regularly drive *your car*, including newly licensed family members;

c. *your* marital status; or

d. the location where *your car* is principally garaged.

*You* agree that if this information or any other information used to determine the premium is incorrect or incomplete, or changes during the policy period, we may decrease or increase the premium during the policy period based upon the corrected, completed or changed information. *You* agree that if the premium is decreased or increased during the policy period, State Farm will refund or credit to *you* any decrease in premium and *you* will pay for any increase in premium.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured named in the declarations is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is nonassessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed to each member at the address disclosed in this policy at least 10 days prior thereto.

7. **Concealment or Fraud.** There is no coverage under this policy if you or any other person insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington.

*[signature]*
SECRETARY

*[signature]*
PRESIDENT

28
9819A

---

**6479A.1 MAINE MOTOR VEHICLE LIABILITY POLICY ENDORSEMENT**

The following endorsement applies to this policy:

In consideration of the premium charged, it is agreed that the Liability coverage afforded by the policy, subject to the limits of the financial responsibility requirements of Maine, also applies to:

1. *you*, if an individual or husband and wife and the owner of *your car*; and

2. *your* spouse if *you* are an individual, with respect to the operation or occupancy of any other *car* or truck-tractor designed to pull a trailer or semi-trailer by:

    1. *you;*
    2. *your spouse;* or
    3. *your* private chauffeur or domestic servant.

THIS AGREEMENT DOES NOT APPLY TO:

1. ANY MOTOR VEHICLE:
    a. OWNED BY,
    b. REGISTERED IN THE NAME OF, OR
    c. FURNISHED FOR REGULAR USE TO

2. ANY:
    a. PRIVATE PASSENGER CAR HIRED AS PART OF A FREQUENT USE OF HIRED CARS BY; OR
    b. MOTOR VEHICLE OF ANY OTHER TYPE HIRED BY

    *YOU* OR A MEMBER OF *YOUR* HOUSEHOLD other than a chauffeur or servant;

3. ANY ACCIDENT ARISING OUT OF THE OPERATION OF A MOTOR VEHICLE REPAIR SHOP, PUBLIC GARAGE, SALES AGENCY, SERVICE STATION OR PUBLIC PARKING PLACE.

4. ANY LOSS OTHERWISE COVERED BY THE POLICY OR AGAINST WHICH *YOU* OR *YOUR* SPOUSE HAS OTHER INSURANCE.

29
9819A

## 6102EE AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement as effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged it is agreed that *your* policy is changed as follows:

### SECTION I — LIABILITY — COVERAGE A

Under the paragraph that reads "In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident:"

a.  item 3.c. is deleted.

b.  item 4. is changed to read:

4.  The following costs and expenses if related to and incurred after a civil lawsuit has been filed against an *insured* for damages for which liability coverage is provided by this policy:

a.  loss of wages or salary, but not other income, up to $100 for each day an *insured* attends at our request.

b.  reasonable expenses incurred by an *insured* at our request, other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay.

### SECTION II — MEDICAL PAYMENTS — COVERAGE C

The following is added to What Is Not Covered:

THERE IS NO COVERAGE FOR *BODILY INJURY* THAT RESULTS FROM:

1.  NUCLEAR REACTION;

2.  RADIATION OR RADIO-ACTIVE CONTAMINATION FROM ANY SOURCE; OR

3.  THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

### SECTION IV — PHYSICAL DAMAGE COVERAGES

The following is added to When The Physical Damage Coverages Do Not Apply:

THERE IS NO COVERAGE FOR LOSS TO ANY VEHICLE THAT RESULTS FROM:

1.  NUCLEAR REACTION;

2.  RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

3.  THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

6102EE

---

## 6171AJ.1 ANTIQUE OR CLASSIC MOTOR VEHICLE

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged for *your* policy it is agreed that

1.  COVERAGE UNDER SECTION I – LIABILITY – COVERAGE A AND SECTION II – MEDICAL PAYMENTS – COVERAGE C APPLIES ONLY WHEN *YOUR CAR* IS USED IN EXHIBITIONS, CLUB ACTIVITIES, PARADES OR OTHER FUNCTIONS OF PUBLIC INTEREST AND OCCASIONALLY FOR PLEASURE AND BUSINESS.

### SECTION IV – PHYSICAL DAMAGE COVERAGES

a.  Limit of Liability – Comprehensive and Collision Coverages

This provision is changed to read:

The limit of our liability for loss to property or any part of it is the lower of:

1.  the actual cash value, or

2.  the cost of repair or replacement.

*You* and we agree that the actual cash value of *your car* is the vehicle value shown on the declarations page unless:

1.  *your car* has been damaged;

2.  parts have been removed from *your car*; or

3.  *your car's* condition has changed due to abuse or neglect.

If any of these events have occurred, the agreed upon actual cash value is the vehicle value shown on the declarations page reduced by the decrease in the value of *your car* due to such damage, the removal of parts and damage caused by the abuse or neglect.

Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1.  the cost of repair or replacement agreed upon by *you* and us;

2.  an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the *car* is to be repaired as determined by a survey made by us. If *you* ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. We will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition.

Any deductible amount that applies is then subtracted.

6171AJ.1

00293/00328

b   Settlement of Loss – Comprehensive and Collision Coverages

This provision is changed to read:

We have the right to settle a *loss* with *you* or the owner of the property in *one* of the following ways:

1   pay the agreed upon actual cash value of the property as determined above in exchange for the damaged property. If the owner keeps the damaged property, we *will* deduct its value, after the *loss* from our payment. The damaged property cannot be abandoned to us,

2   pay to

a   repair the damaged property or part or

b   replace the property or part.

If the repair or replacement results in the vehicle being better than its preloss condition, *you* must pay for the amount of betterment or

3   return the stolen property and pay for any damage due to the theft.

The Settlement of Loss provision for comprehensive and collision coverages incorporates the Limit of Liability provision of those coverages.

If we can pay the *loss* under either comprehensive or collision, we will pay under the coverage where *you* collect the most.

When there is *loss* to *your car*, clothes and luggage in the same occurrence, any deductible will be applied first to the *loss* to *your car*. *You* pay only one deductible.

c   The following is added:

Coverage for Spare Parts

We will pay up to $500 during the policy period for direct and accidental loss of or damage to *spare parts* which are owned by *you* and in *your* possession. *Spare parts* means equipment designed to be used with vehicles of the same make and model as *your car*.

5. SECTION IV — PHYSICAL DAMAGE COVERAGES

COMPREHENSIVE – COVERAGE D and COLLISION – COVERAGE G

a. The following language:

If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

is changed to read:

If *you* and we agree, windshield glass will be repaired instead of replaced.

b. The following is added:

*You* agree that replacement glass need not have any unique logo, trademark, etching, or other marking that was on the replaced glass.

c. The following is added to Settlement of Loss – Comprehensive and Collision Coverages:

Appraisers shall have no authority to decide any questions of law or to conduct appraisal on a class-wide or class-representative basis.

6. CONDITIONS

Item b under condition 3, Our Right to Recover Our Payments, is changed to read:

b. Under medical payments coverage:

(1) we have the right to exercise our subrogation rights directly against, and to recover our payments directly from, any party legally responsible for the *bodily injury* to the *person* for whom we make payment.

6127NN.1

If we recover directly from the responsible party, we are entitled to full recovery of our payments without any subrogation to account for any attorney's fees and costs incurred by or on behalf of the *person* for whom we make payment.

(2) any *person* seeking payment must provide us with written approval for us to recover, to the extent of our medical payments, from any party legally responsible for the *bodily injury* to that *person*. If that *person* receives payment from any party legally responsible for the *bodily injury*, that *person* shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payments, subject to subrogation to account for the pro rata share of that *person's* attorney fees incurred in obtaining the recovery of our payments from the responsible party.

7. MOTORCYCLE COVERAGE ENDORSEMENT and TRAILER ENDORSEMENT

The definition of *newly acquired car* in the above item 1. replaces the definition of *newly acquired car* in both the MOTOR-CYCLE COVERAGE endorsement and the TRAILER ENDORSEMENT endorsement if either endorsement is a part of *your* policy. In addition, the definition of *newly acquired car* in the TRAILER EN-DORSEMENT, "car" as found in the definition of *newly acquired car* is changed to include a trailer newly owned by or newly leased to *you* if it is of the same type as the trailer described on the declarations page.

6127NN.1

---

6127NN.1 AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. DEFINED WORDS

a. The definition of Newly Acquired Car is changed to read:

*Newly Acquired Car* means a *car* newly owned by or newly leased to *you* or *your spouse*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by us to any other company that describes the *car* as an insured vehicle, or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or *your spouse*.

If *you* or *your spouse* want coverage for a *car* newly owned by or newly leased to *you* or *your spouse* and it:

1. replaces *your car*, then *you* must ask us to insure that *car* within 14 days after it is delivered to *you* or *your spouse* and pay us any added amount due. The added amount that will be calculated based on the date the replacement *car* is delivered to *you* or *your spouse*.

2. does not replace *your car*, then *you* or *your spouse* must apply to us for a separate policy to to insure that added *car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

6127NN.1

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you* or *your spouse*.

b. The definition of Your Car is changed to read:

*Your Car* means the vehicle described on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If *you* ask us to replace the *car* shown on the Declarations Page with a *car* newly owned by or newly leased to *you*, or *your spouse*, the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date such newly owned or newly leased *car* is delivered to *you* or *your spouse*,

2. the date this policy is no longer in force, or

3. the date *you* no longer own or lease the *car* being replaced.

6127NN.1

2. REPORTING A CLAIM — INSURED'S DUTIES

The following is added:

A *person* or organization making claim under this policy must give us proof of loss on forms we furnish.

A *person* making claim under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must provide written authorization for us to obtain:

1. medical bills;

2. medical records;

3. wage, salary, and employment information; and

4. any other information we deem necessary to substantiate the stated claim.

b. The following is added:

We have the right to:

1. obtain and use:

   a. peer reviews, and

   b. medical bill reviews of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained;

2. use a medical examination of the injured *person* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident;

   b. ...

3. SECTION II — MEDICAL PAYMENTS — COVERAGE C

a. The following paragraph:

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

is changed to read:

Expenses are reasonable only if they are the lowest of any one of the following charges:

1. the usual and customary fees charged by a majority of healthcare providers who provide similar medical services in the geographical area in which the charges were incurred;

2. the fees agreed to by both the injured *person's* healthcare provider and us; or

3. the fees agreed upon between the injured *person's* healthcare provider and a third party to accept such third party.

b. The following is added:

c. The provision titled Deciding Amount is deleted.

4. SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U

The provision titled Deciding Fault and Amount is replaced by:

a. Consent to Settlement

The *insured* must inform us of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request our written consent to accept such settlement offer.

If we:

1. consent in writing then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that we do not consent, then the *insured* may not accept such settlement offer and:

   a. we will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

   b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay us.

Deciding Fault and Amount

1. The *insured*, and we, must agree to the answers to the following two questions:

   (1) Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*?

   (2) If the answer to 1.a.(1) above is yes, then what is the amount of the damages that the *insured* is legally entitled to collect from the

b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

   (1) file a lawsuit, in a state or federal court that has jurisdiction, against:

      (a) us; and

      (b) the owner or driver of the *uninsured motor vehicle* unless we have consented to a settlement offer proposed by or on behalf of such owner or driver; and

      (c) any other party or parties who may be legally liable for the *insured's* damages;

   (2) consent to a jury trial if requested by us;

   (3) agree that we may contest the issues of liability and the amount of damages; and

   (4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. We are not bound by any:

   a. judgment obtained without our written consent; or

   b. default judgment against any *person* or organization other than us.

3. Regardless of the amount of any award, including any judgment or default judgment, we are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

# 6127NN AMENDATORY ENDORSEMENT

This endorsement is a part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as your policy unless a different effective date is specified by us in writing. In consideration of the premium charged, it is agreed that your policy is changed as follows:

1. DEFINED WORDS

a. The definition of *Newly Acquired Car* is changed to read:

*Newly Acquired Car* means a car newly owned by or newly leased to *you* or *your spouse*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by us or any other company that describes the *car* as an insured vehicle, or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or *your spouse*.

If *you* or *your spouse* want coverage for a *car* newly owned by or newly leased to *you* or *your spouse* and it:

1. replaces *your car*, then *you* must ask us to insure that *car* within 14 days after it is delivered to *you* or *your spouse* and pay us any added amount due. The added amount due will be calculated based on the date the replacement *car* is delivered to *you* or *your spouse*.

2. does not replace *your car*, then *you* or *your spouse* must apply to us for a separate policy to insure that added *car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, coverage under this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you* or *your spouse*.

b. The definition of *Your Car* is changed to read:

*Your Car* means the vehicle described on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If *you* ask us to replace the *car* shown on the Declarations Page with a *car* newly leased to *you* or *your spouse*, the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date such newly owned or newly leased *car* is delivered to *you* or *your spouse*;

2. the date this policy is no longer in force; or

3. the date the *car* no longer own or lease the *car* being replaced.

2. REPORTING A CLAIM — INSURED'S DUTIES

The following is added:

A *person* or organization making claim under this policy must give us proof of loss on forms we furnish.

A *person* making claim under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must provide written authorization for us to obtain:

1. medical bills;

2. medical records;

3. wage, salary, and employment information; and

4. any other information we deem necessary to substantiate the claim.

If an insured *person* is a minor, unable to act, or dead, then his or her legal representative must provide us with the written authorization.

If the holder of the information refuses to provide it to us despite the authorization, then at our request the *person* making claim on his or her legal representative must obtain the information and promptly provide it to us.

3. SECTION II — COVERAGE C — MEDICAL PAYMENTS

a. The following paragraph:

is changed to read:

Expenses are reasonable only if they are the lowest of any charges:

1. the usual and customary fees charged by a majority of healthcare providers who provide similar medical services in the geographical area in which the charges were incurred;

2. the fees agreed to by both the insured *person's* healthcare provider and us, or

3. the fees agreed upon between the insured *person's* healthcare provider and a third party when we have a contract with such third party.

b. The following is added:

We have the right to:

1. obtain and use:
   a. peer reviews; and
   b. medical bill reviews
   of the medical expenses and services to determine if services are reasonable and necessary for the *bodily injury* sustained;

2. use a medical examination of the injured *person* to determine if:
   a. the *bodily injury* was caused by a motor vehicle accident; and
   b. the medical expenses and services are reasonable and necessary for the *bodily injury* sustained; and

3. enter into a contract with a third party that has an agreement with the injured *person's* healthcare provider to reduce the fees as determined by that agreement.

c. The provision titled Deciding Amount is deleted.

4. SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U

a. The second paragraph of this Section is changed to read:

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

b. The provision titled Deciding Fault and Amount is replaced by:

Consent to Settlement

The *insured* must inform us of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request our written consent to accept such settlement offer.

If we:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that we do not consent, then the *insured* may not accept such settlement offer and:

a. we will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*, and

b. any recovery from or on behalf of the owner or driver of the *uninsured*

*motor vehicle* shall first be used to repay us.

Deciding Fault and Amount

1. a. The *insured* and we must agree to the answers to the following two questions:

(1) Is the *insured* legally entitled to collect damages from the owner or driver of the uninsured motor vehicle?

(2) If the answer to 1.a.(1) above is yes, then what is the amount of the damages that the *insured* is legally entitled to collect from the *uninsured motor vehicle*?

b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

(1) file a lawsuit, in a state or federal court that has jurisdiction, against:

(a) us; and

(b) the owner or driver of the *uninsured motor vehicle* unless we have consented to a settlement offer proposed by or on behalf of such owner or driver; and

(c) any other party or parties who may be legally liable for the *insured's* damages;

6127NN

(2) consent to a jury trial if requested by us;

(3) agree that we may conduct the issues of liability and the amount of damages; and

(4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. We are not bound by any:

a. judgment obtained without our written consent; and

b. default judgment against any person or organization other than us.

3. Regardless of the amount of any award, including any judgment or default judgment, we are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**SECTION IV – PHYSICAL DAMAGE COVERAGES**

5. **COMPREHENSIVE – COVERAGE D and COLLISION – COVERAGE G**

a. The following language:

If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

is changed to read:

If *you* and we agree, windshield glass will be repaired instead of replaced.

b. The following is added:

*You* agree that replacement glass need not have any insignia, logo,

Page 4 of 5

6127NN

trademark, etching or other marking that was on the replaced glass.

c. The following is added to Settlement of Loss – Comprehensive and Collision Coverages:

Appraisers shall have no authority to decide any questions of law or conduct appraisal on a class-wide or class-representative basis.

6. **CONDITIONS**

Item b. under condition 3, Our Right to Recover Our Payments, is changed to read:

b. Under medical payments coverage:

(1) we have the right to exercise our subrogation rights directly against, and to recover our payments directly from, any party legally responsible for the *bodily injury* to the *person* for whom we make payment. If we recover directly from the responsible party we are entitled to full recovery of our payments without any subrogation to account for any attorney's fees and costs incurred by or on behalf of the *person* for whom we make payment.

(2) any *person* seeking payment must provide us with written approval for us to recover, to the extent of our payments, from any party legally responsible for the *bodily injury* to that *person*. If that *person* recovers from any party responsible for the *bodily injury*, that *person* shall hold in trust for us the proceeds of the recovery and reimburse us to the extent of our payments, subject to subtraction to account for the pro rata share of that *person*'s attorney fees incurred in obtaining the recovery of our payments from the responsible party.

Page 5 of 5

6127NN

7. **MOTORCYCLE COVERAGE ENDORSEMENT and TRAILER ENDORSEMENT**

The definition of *newly acquired car* in the above item 1. replaces the definition of *newly acquired car* in both the MOTORCYCLE COVERAGE endorsement and the TRAILER ENDORSEMENT if either

endorsement is a part of *your* policy. In addition, under the TRAILER ENDORSEMENT, "*car*" as found in the definition of *newly acquired car* is changed to include a trailer newly owned by or newly leased to *you* if it is of the same type as the trailer described on the declarations page.

Page 5 of 5

6127NN



 **6126JR AMENDATORY ENDORSEMENT —
UNINSURED MOTOR VEHICLE COVERAGE**

This endorsement is a part of the policy. Except for the changes it makes, all other provisions of the policy remain the same and apply to this endorsement.

**SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U**

Item 4. of the provision beginning "An *uninsured motor vehicle* does not include a land motor vehicle:" is deleted.

6126JR