UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| METRY KELLY and EUGENIE KELLY, his wife, and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation,<br><br>    Defendant. | Case No. 5:10-cv-194-TJC-GRJ<br><br>Dispositive Motion |

**DEFENDANT STATE FARM'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves this Court to dismiss Plaintiffs' Second Amended Class Action Complaint for failure to state a claim upon which relief may be granted. In support of the foregoing, State Farm shows the Court as follows:

**INTRODUCTION**

This case presents a straightforward dispute between Plaintiffs and State Farm concerning the coverage provided under an automobile insurance policy issued on a 1973 Corvette, and each of Plaintiffs' claims fail as a matter of law for the same simple, straightforward reason – they are based on a Florida statute that does not apply to the Corvette Policy. Plaintiffs allege that they have suffered injuries arising out of an

automobile accident involving their 2000 GMC C3500 truck and resulting from the alleged negligence of an underinsured motorist. Plaintiffs seek uninsured/underinsured motorist ("UM") coverage under a policy issued on the GMC truck, and claim that State Farm has wrongfully denied them the right to "stack" the UM coverage under a policy covering a second vehicle, a 1973 Corvette. Plaintiffs take this position while acknowledging that the actual terms of the Corvette Policy explicitly exclude coverage for injuries suffered while an insured is occupying any vehicle, other than the 1973 Corvette, that is owned or leased by Plaintiffs (or their relatives) and is not insured under the Corvette policy. Plaintiffs contend that the anti-stacking language in the Corvette Policy fails to comply with Florida Statute § 627.727(9) and is therefore void, requiring State Farm to permit stacked coverage under the Corvette Policy.

      Plaintiffs' claims are fundamentally flawed. Plaintiffs fail to recognize that the Corvette Policy is a specialty policy providing coverage for an antique vehicle, and such policies are not subject to the requirements of Florida Statute § 627.727(9). This was made clear in *Martin v. St. Paul Fire & Marine Insurance Co.*, 670 So. 2d 997, 998 (Fla. 2d DCA 1996). Thus, there is simply no legal basis to support Plaintiffs' position that the anti-stacking language in the Corvette Policy is invalid under Florida law. Because the allegations set forth in Plaintiffs' Second Amended Class Action Complaint fail to state a claim as a matter of law, this Court should dismiss this case with prejudice.[1]

---

[1] Plaintiffs' request for injunctive relief additionally fails because Plaintiffs have alleged

## FACTUAL AND PROCEDURAL BACKGROUND

I.   **The Relevant Insurance Policies.**

Plaintiffs' claims involve two State Farm automobile insurance policies, both of which provide UM coverage. The first of these policies (the "GMC Policy") provides coverage for a 2000 GMC C3500, with UM coverage limits for bodily injury of $100,000 per person, $300,000 per accident. (*See generally* Second Am. Class Action Compl. ("Compl."), Dkt. 33, Ex. A).[2] The GMC Policy has a total six-month premium of $293.15. (*Id.* at 2, Premium Notice).[3] Of that amount, nearly 25%, or $65.29, is allocated for UM coverage. (*Id.*) Less than 50%, or $134.28, is allocated for liability coverage. (*Id.*).

The second policy at issue (the "Corvette Policy") provides coverage for a 1973 Corvette, with UM coverage limits for bodily injury of $100,000 per person, $300,000 per accident. (*See* Compl., Ex. B at 2, Auto Renewal Page). The Corvette Policy makes clear that it is a specialty policy for an "Antique or Classic Motor Vehicle," which results in a significant reduction of the premium charged for the coverage provided under that policy, including the UM coverage. (*Id.* at 18, Endorsement 6171AJ.1; *see also id.* at 2, Auto Renewal Page (noting "limited use antique/classic")). For example, the total six-

---

an adequate remedy at law and reparable harm, as demonstrated by their breach of contract claim.

[2] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is permitted to consider documents attached to a complaint. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[3] Throughout this memorandum, pin-point citations to the exhibits to Plaintiffs' Second Amended Class Action Complaint shall refer to the page number generated by the CM/ECF auto-filing identifier at the top of the document.

month premium is only $44.10, and only $3.85 of that premium – less than 9% – is allocated for UM coverage. (*Id.* at 2, Auto Renewal Page). Most of the premium (57%, or $24.98) is allocated to the liability and medical payments coverage provided under the policy. (*Id.*). The Corvette Policy expressly excludes coverage for bodily injuries suffered while an insured is occupying any vehicle – other than the Corvette itself – that is "owned by or leased to you, your spouse, or any relative if it is not insured for this coverage under this policy." (*Id.* at 11; *see also* Compl., ¶ 14). In addition, the Corvette Policy makes clear that the liability and medical payments coverage "applies only when [the 1973 Corvette] is used in exhibitions, club activities, parades or other functions of public interest and occasionally for pleasure and business." (Compl., Ex. B at 18, Endorsement 6171AJ.1).

## II.   **Plaintiffs' Allegations.**

Plaintiff Metry Kelly was operating the 2000 GMC C3500 when he was involved in an automobile accident with a negligent third-party on or about September 24, 2008. (Compl., ¶ 5). Plaintiffs claim that Mr. Kelly suffered bodily injuries and that his spouse, Eugenie Kelly, has incurred expenses for the care of her husband and has suffered loss of consortium. (*Id.*, ¶¶ 6-8). According to the Second Amended Class Action Complaint, State Farm permitted Mr. Kelly to settle with the third-party's insurer. (*Id.*, ¶ 9). Plaintiffs allege that their damages exceed the available liability insurance obtained from the third-party tortfeasor's insurer, the UM coverage under the GMC Policy, *and* the available UM coverage under the Corvette Policy. (*Id.*, ¶ 9). Plaintiffs argue that, notwithstanding the plain language of the Corvette Policy, they are entitled to "stack" the

UM coverage provided under the two State Farm policies based on a contention that the Corvette Policy's anti-stacking language violates Florida Statute § 627.727(9). (*See, e.g.*, Compl., ¶¶ 12, 15, 17). Count I seeks a declaration that the anti-stacking provision is void as a matter of law under Florida Statute § 627.727(9), and an injunction preventing State Farm from denying "stacked" insurance coverage in a manner inconsistent with Florida Statute § 627.727(9). (*Id.*, ¶¶ 41-47). Count II alleges breach of contract resulting from State Farm's purported denial of stackable UM coverage. (*Id.*, ¶¶ 48-55). Plaintiffs claim that State Farm is liable to Plaintiffs for the full coverage available under both the GMC Policy and the Corvette Policy. (*See, e.g., id.*, ¶¶ 9-17).

### III.   Procedural Background.

Plaintiffs initially sued State Farm on February 3, 2009, in the Fifth Judicial Circuit in and for Marion County, Florida, asserting claims solely seeking UM coverage benefits under the GMC Policy. (Notice of Removal, Dkt. 1, at 1). More than a year later, on March 18, 2010, Plaintiffs moved the state court for leave to file a First Amended Class Action Complaint, which the state court granted on April 8, 2010. (*Id.*). Plaintiffs raised their stacking claims arising under the Corvette Policy for the first time in the First Amended Class Action Complaint, and sought to represent a putative class of insureds who Plaintiffs claimed had been denied stackable coverage based on policy language similar to that contained in the Corvette policy, or had such language in existing policies and may be denied stacked coverage in the future.

State Farm timely removed the state court action to this Court on May 7, 2010, (Dkt. 1), and on May 14, 2010, timely filed a motion to dismiss the First Amended Class

Action Complaint. (Dkt. 13). Plaintiffs moved to remand this action on June 7, 2010, (Dkt. 19), and filed a motion seeking jurisdictional discovery on June 18, 2010, (Dkt. 21). On November 9, 2010, this Court entered an order denying both of Plaintiffs' motions, (Dkt. 28), thus approving and adopting the Report and Recommendation of Magistrate Judge Gary R. Jones, (Dkt. 25). Plaintiffs then sought and obtained leave to file their Second Amended Class Action Complaint. (Dkt. 29). Because each of Plaintiffs' claims fails as a matter of law, State Farm moves to dismiss the Second Amended Class Action Complaint, with prejudice, in its entirety.

## ARGUMENT AND CITATION OF AUTHORITY

### I.     Standard for Motion to Dismiss.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). *Iqbal* explains that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.*

Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. The Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

*Id.* at 1949 (citations omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

As shown below, Plaintiff's Second Amended Class Action Complaint should be dismissed because it fails to sufficiently allege facts supporting any viable claim under Florida law.[4]

---

[4] State Farm disputes that the Corvette Policy was ever delivered or issued for delivery in the State of Florida, but instead that it was issued and delivered in Maine. Thus, State Farm maintains that Maine law, not Florida law, applies to the Corvette Policy, and therefore there is no basis for Plaintiffs' claims which are premised on Florida statutory law. Nevertheless, solely for purposes of this motion to dismiss on the pleadings, Plaintiffs' allegations are taken as true and analyzed under Florida law, and as explained herein, even fail under Florida law. (Compl., ¶ 3).

**II.     Plaintiffs Fail to State a Claim Because The Corvette Policy Contains An Anti-Stacking Clause and Therefore Does Not Provide Coverage in This Case.**

Plaintiffs allege that State Farm has materially breached the Corvette Policy by refusing to allow Plaintiffs to "stack" the UM coverage provided under that policy with the coverage provided under the GMC Policy. (Compl., ¶ 54). First and foremost, the plain language of the Corvette Policy – specifically, the section titled, "**When Coverage U Does Not Apply**" – belies Plaintiffs' claim: "There is no coverage . . . for bodily injury to an insured . . . [w]hile occupying a motor vehicle owned by or leased to you, your spouse, or any relative if it is not insured for this coverage under this policy." (Compl., Ex. B at 11; *see also* Compl., ¶ 14). As Plaintiffs acknowledge, Plaintiff Metry Kelly was occupying his 2000 GMC C3500 vehicle – a motor vehicle owned by the Kellys but "not insured for [UM] coverage under [the Corvette Policy]" – at the time he sustained his alleged injuries. (Compl., ¶ 6). Accordingly, Plaintiffs do not assert that State Farm's refusal to provide them with UM coverage under the Corvette Policy constitutes a breach of the actual terms of that insurance agreement. As Plaintiffs recognize, the actual terms of the contract explicitly reject such coverage.

**III.    Florida Statute § 627.727(9) – The Sole Basis for Each of Plaintiffs' Claims – Does Not Apply to the Corvette Policy Because It Is a Specialty Insurance Policy Covering An Antique Vehicle.**

Plaintiffs attempt to skirt the plain terms of the Corvette Policy by arguing that "[t]he above referenced language . . . ambiguously and unclearly limits Plaintiffs' UM coverage in violation of Florida Statute § 627.727(9)(a), read in conjunction with Florida Statute § 627.727(9)(c) . . . ." (Compl., ¶ 12). The cited statute reads, in relevant part, as

follows:

> (9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer:
>
> > (a) The coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident, except as provided in paragraph (c).
> >
> > (b) If at the time of the accident the injured person is occupying a motor vehicle, the uninsured motorist coverage available to her or him is the coverage available as to that motor vehicle.
> >
> > (c) If the injured person is occupying a motor vehicle which is not owned by her or him or by a family member residing with her or him, the injured person is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which she or he is a named insured or insured family member. Such coverage shall be excess over the coverage on the vehicle the injured person is occupying.
> >
> > (d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.

Fla. Sta. § 627.727(9)(a)-(d). The statute also states:

> [I]nsurers shall inform the named insured . . . on a form approved by the office, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations. If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations.

*Id.* Plaintiffs allege that State Farm failed to provide the statutory notice required under § 627.727(9) and failed to obtain Plaintiffs' written consent to accept limited UM coverage under the Corvette Policy, and, as a result, the exclusionary language of the Corvette

Policy is void under Florida law.  (*See* Compl., ¶ 17).

Plaintiffs' reliance on Florida Statute § 627.727(9) is misplaced, however, because this statute simply does not apply to specialty policies covering antique vehicles, and the Plaintiffs' Corvette Policy is such a policy.

> A. **Florida Statute § 627.727 Does Not Apply to Specialty Insurance Policies Covering Antique Vehicles.**

In *Martin v. St. Paul Fire & Marine Insurance Co.*, 670 So. 2d 997, 998 (Fla. 2d DCA 1996), the Second District Court of Appeals expressly held that "the requirements of section 627.727, Florida Statutes (Supp. 1992), . . . do not require a specialty insurance policy covering only an antique automobile with restricted highway usage to provide uninsured motorist coverage for accidents not involving the antique."  In that case, the son of the insureds was fatally injured while riding as a passenger in the back of his friend's pick-up truck.  The Martins sought to collect UM benefits from their insurer, St. Paul, under an "Antique Automobile Insurance Policy" providing specialty coverage for a 1963 Ford Thunderbird.  St. Paul, like State Farm here, denied coverage based upon a policy exclusion that limited the availability of UM coverage to injuries sustained while actually occupying the covered vehicle. *Id.*

The court focused on numerous specific provisions of the antique specialty policy and determined that "St. Paul clearly intended . . . [only] to provide [limited] liability coverage and uninsured motorist coverage . . . ." *Martin*, 670 So. 2d at 999.  The court first noted that the policy only provided $300,000-per-accident in liability coverage and $300,000 in UM coverage, collision coverage, and personal injury protection. *Id.* at 998.  In addition, the total yearly premium amounted to $181.00, only $16.00 of which (or just

under 9%) was allocated for UM coverage.[5] *Id.* The policy also required that the car be maintained primarily for use in antique car club events and only occasionally used for other purposes, and the annual mileage could not exceed 2,500 miles. *Id.* at 998-99.

In deciding to uphold the UM coverage exclusion with respect to this specialty policy, the *Martin* court reasoned that "the [Florida] legislature has never intended to mandate class I, family-style uninsured motorist coverage in such a specialty policy. Instead, we are convinced that the strong public policies encouraging uninsured motorist coverage will be better served if we permit the coverage limitations in this specialty policy." *Martin*, 670 So. 2d at 999. The court focused on the facts that "Section 627.727(1) does not specifically mandate coverage for claims unconnected with the insured vehicle," and "[t]he antique car insured in this case is a hobby, not a means of family transportation." *Id.* at 1001. The court further reasoned that reaching the opposite result would "dramatically increase the cost of coverage" and "cause many owners to completely reject uninsured motorist coverage on their antiques," which would "cause a reduction in the number of motor vehicles insured with this coverage for their class I and class II occupants." *Id.*; *see also Whitmore v. Fidelity & Cas. Ins. Co. of N.Y.*, 868 So. 2d 670, 670 (Fla. 1st DCA 2004) (per curiam) (affirming lower court ruling based on *Martin* holding).

Courts outside of Florida have also acknowledged the unique nature of specialty insurance policies. *See, e.g., Metlife Auto & Home v. Palmer*, 839 A.2d 83, 84 (N.J.

---

[5] Approximately 77% of the yearly premium (*i.e.*, $140.00) went to pay for the liability coverage. *Martin*, 670 So. 2d at 998.

Super. Ct. App. Div. 2004) ("We hold that antique automobile insurance policies that limit the use of the insured vehicle and are offered at a significantly reduced premium are valid and not subject to the anti-stacking provision, *N.J.S.A.* 17:28-1.1c. Therefore, such policies may include other insurance clauses that exclude participation in pro rata apportionment with other available insurance."); *Gormbard v. Zurich Ins. Co.*, 904 A.2d 198, 202 (Conn. 2006) ("[W]e are not persuaded that the public policy embodied in our uninsured motorist statute extends to the specialty policy that the plaintiff and her husband purchased from Zurich to insure their Model A."); *Turner v. St. Paul Prop. & Liab. Ins. Co.*, 676 A.2d 109, 111 (N.H. 1996) (enforcing UM coverage exclusion in antique automobile insurance policy where "limitation comports with the reasonable expectations of the policyholder"); *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28, 32 (Pa. Super. 1993) ("Clearly, a specialty or limited use policy such as the antique automobile policy . . . must be distinguished from an ordinary policy covering a personal use automobile.").

**B.     The Corvette Policy Is a Specialty Insurance Policy Covering an Antique Vehicle.**

The undisputed facts in this case are squarely on point with *Martin*. Plaintiffs cannot seriously contest that the Corvette Policy is an antique specialty policy. The renewal page that Plaintiffs attach to their Second Amended Class Action Complaint states on its face that the Corvette Policy provides coverage for a "limited use antique/classic" vehicle. (Compl., Ex. B at 2, Auto Renewal Page). The Corvette Policy also contains Endorsement 6171AJ.1, titled "Antique or Classic Motor Vehicle." (*Id.*, Ex. B at 18). Moreover, the terms of the Corvette Policy very closely mirror the policy

terms in *Martin* that the court considered dispositive:

| ***Martin* Policy:** | **Plaintiffs' Corvette Policy:** |
|---|---|
| 1963 Ford Thunderbird (30 years old at time of insured's accident in 1993) | 1973 Corvette (35 years old at time of Metry Kelly's accident in 2008) |
| $300,000-per-accident liability coverage | $300,000-per-accident liability coverage (for bodily injury) |
| $300,000 UM coverage, collision coverage, and personal injury protection | $300,000-per-accident UM coverage |
| Total yearly premium = $181  UM premium = $16 (less than 9% of total) | Total yearly premium = $88.20  UM premium = $7.70 (less than 9% of total) |
| Titled, "Antique Automobile Insurance Policy" | Endorsement 6171AJ.1 titled, "Antique or Classic Motor Vehicle" |
| Required the car be maintained primarily for use in antique car club events and only occasionally used for other purposes, and annual mileage could not exceed 2,500 miles | Endorsement 6171AJ.1 states that liability and medical payments coverages "applies only when ***YOUR CAR*** is used in exhibitions, club activities, parades or other functions of public interest and occasionally for pleasure" |

It is clear that State Farm, like St. Paul in *Martin*, only contracted to provide Plaintiffs with limited liability and UM coverage for limited usage of the 1973 Corvette. At less than $90.00-per-year, Plaintiffs paid a substantially reduced premium in order to maintain coverage on the antique Corvette. (*Compare*, *e.g.*, Compl., Ex. B at 2, Auto Renewal Page for Corvette Policy *with* Compl., Ex. A at 2, Premium Notice for GMC Policy). And, the UM premium Plaintiffs' paid on the Corvette Policy comprises less than 9% of the total, reduced premium charged for coverage under that policy – ***the exact same percentage*** of the insureds' UM premium paid in the *Martin* case. (*Id.*); *see also*

*Martin*, 670 So. 2d at 998 ($16.00 out of $181.00 is approximately 8.8% of the total premium charged).  There is simply no doubt that State Farm, like the insurer in *Martin*, "clearly intended . . . [only] to provide [limited] liability coverage and uninsured motorist coverage for . . . usage of the specific antique car described in the policy while being driven primarily in parades and club outings."  *Martin*, 670 So. 2d at 999.  Plaintiffs' breach of contract claim fails as a matter of law because Florida Statute § 627.727(9) – Plaintiffs' sole basis for the alleged breach – does not apply to the Corvette Policy.  As Plaintiffs' claims for declaratory and injunctive relief likewise depend upon a determination that the anti-stacking provision of the Corvette Policy "violates F.S. § 627.727(9) and is therefore void . . . ," (Compl., ¶¶ 46-47), they also fail.

**IV.**     **Plaintiffs Have Failed To Allege Sufficient Facts In Support Of Damages.**

Notably, while Plaintiffs' claims fail as a matter of law for the reasons discussed in the preceding section, Plaintiffs fail even to allege sufficient factual support for their bald allegations that they have suffered damages in excess of coverage limits.  (*See* Compl., ¶ 9).  Plaintiffs have not alleged any predicate facts to support their position that they are entitled to collect even the full amount of primary UM coverage available under the GMC Policy, much less any of the allegedly "stackable" UM coverage under the Corvette Policy.  For these reasons alone, Plaintiffs' claims should be dismissed under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In *Twombly*, the United States Supreme Court explained that "a formulaic recitation of the elements of a cause of action will not do" and that "[f]actual allegations

must be enough to raise a right to relief above the speculative level." *Id.* at 1965. To that end, a plaintiff bears the burden to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* Although the Second Amended Class Action Complaint need not contain "detailed factual allegations," it must nevertheless "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Plaintiffs have not come close to meeting this standard. The Second Amended Class Action Complaint does not provide any detailed allegations about Plaintiffs' alleged actionable damages, instead simply leaping to the conclusory contention that Plaintiffs are entitled to stack the coverage under the Corvette Policy. Plaintiffs do not allege *how* they have suffered damages sufficient to even trigger benefits under the GMC Policy, much less how Plaintiffs' damages exceed the benefits of that policy and trigger coverage under the Corvette Policy. (*See* Compl., ¶ 9). Without pleading these factual allegations, Plaintiffs are not entitled to any of the relief they seek in the Second Amended Class Action Complaint. Indeed, if any amount is owed to Plaintiffs under the GMC Policy, it may well be less than the existing limits of that policy. If Plaintiffs' damages do not exceed the limits of the GMC Policy, then there is no cognizable legal controversy that would allow the Court to decide whether the Corvette Policy's coverage should be stacked, much less whether Plaintiffs should be able to maintain a class action.[6] Plaintiffs are attempting to prosecute an elaborate putative class action based on a theory

---

[6] For Plaintiffs to even fit within their own class definition, their damages would necessarily have to exceed the limits of the GMC Policy. (*See* Compl., ¶¶ 25-28).

that State Farm has wrongfully refused to stack insurance coverages, while their own individual claims are fundamentally deficient in setting forth a ripe controversy on this very issue. Accordingly, while Plaintiffs' claims fail as a matter of law for the reasons set forth in the prior section, even if they did not, Plaintiffs' Second Amended Class Action Complaint would be subject to dismissal under *Iqbal* and *Twombly*.

**V.   Plaintiffs Have Failed to State a Claim for Injunctive Relief Because They Have Alleged an Adequate Remedy at Law and Any Alleged Harm Can Be Remedied By The Breach of Contract Claim.**

Plaintiffs' request for injunctive relief fails as a matter of law for an additional, independent reason. It is axiomatic that a party is entitled to injunctive relief only where there is irreparable harm and no adequate legal remedy exists. *See Ware v. Polk Cnty.*, 918 So. 2d 977, 979 (Fla. 2d DCA 2005); *see also Net First Nat'l Bank v. First Telebanc Corp.*, 834 So.2d 944, 950 (Fla. 4th DCA 2003) ("Although a trial court has broad discretion in granting injunctive relief, it is an extraordinary remedy that 'requires a clear legal right, free from reasonable doubt.'"). While the Second Amended Class Action Complaint formalistically alleges lack of an adequate remedy at law and irreparable harm, those bald allegations do not suffice as they are belied by the breach of contract allegations presented in the very same pleading. (*See* Compl., ¶¶ 42-43, 48-55).[7]

Courts routinely dismiss claims for injunctive relief in cases such as this, where the plaintiff also pleads a breach of contract claim. *See B.G.H. Ins. Syndicate, Inc. v. Presidential Fire & Casualty Co.*, 549 So. 2d 197, 198 (Fla. 3d DCA 1989) (reversing

---

[7] Plaintiffs cannot survive a motion to dismiss simply by stating legal conclusions. *See Iqbal*, 129 S. Ct. at 1949-50; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Twombly*, 550 U.S. at 555.

injunction by trial court where appellee's harm could be adequately addressed with monetary award and concluding that breach of contract claim was an adequate remedy at law); *see also Mary Dee's, Inc. v. Tartamella*, 492 So. 2d 815 (Fla. 4th DCA 1986). This rule holds particularly true in insurance cases. For example, in *Meritplan Insurance Co. v. Perez*, 963 So.2d 771 (Fla. 3d DCA 2007), the Third District reversed the trial court's order enjoining the insurer to pay disputed benefits under a homeowners' insurance policy. The Court explained: "[T]his case is a simple case for breach of an insurance contract . . . By granting the injunction in this case, the trial court vitiated [the insurer's] contractual rights . . . ." *Id.* at 776. The Court made clear that "[a] trial court cannot allow itself to become the adjuster of the claim[,]" as it does when it allows an injunctive relief claim to proceed in the face of a breach of contract claim. *See id*. at 777.

Here, the Second Amended Complaint alleges breach of contract, which is an adequate remedy at law and allows Plaintiffs an avenue to remedy any alleged harm. (*See* Compl., ¶¶ 42-43, 48-55). Accordingly, Plaintiffs' injunctive relief claim fails as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons, State Farm respectfully requests that this Court dismiss Plaintiffs' Second Amended Class Action Complaint in its entirety with prejudice.

Respectfully submitted this 21st day of January, 2011.

                         /s/ Kyle G.A. Wallace
                         CARI K. DAWSON
                         Admitted *pro hac vice*
                         cari.dawson@alston.com

KYLE G.A. WALLACE
Admitted *pro hac vice*
kyle.wallace@alston.com
ALLISON S. THOMPSON
Admitted *pro hac vice*
allison.thompson@alston.com

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000
(404) 881-7777 (*Facsimile*)

JOHN W. WEIHMULLER, ESQ.
Florida Bar No. 0442577
jweihmuller@butlerpappas.com
BRIAN D. WEBB, ESQ.
Florida Bar No. 0073989
bwebb@butlerpappas.com

BUTLER PAPPAS WEIHMULLER
KATZ CRAIG LLP
777 S. Harbour Island Boulevard Suite 500
Tampa, Florida 33602
(813) 281-1900
(813) 281-0900 (*Facsimile*)

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| METRY KELLY and EUGENIE KELLY, his wife, and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation,<br><br>    Defendant. | Case No. 5:10-cv-194-TJC-GRJ |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the within and foregoing **DEFENDANT STATE FARM'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to:

> John Piccin, Esq.
> jp@piccinlawfirm.com
> Piccin Law Firm
> Post Office Box 159
> Ocala, FL 34478
>
> Paul S. Rothstein, Esq.
> paul.s.rothstein@att.biz
> 626 N.E. First St.
> Gainesville, FL 32601

This 21st day of January, 2011.

/s/ Kyle G.A. Wallace
KYLE G.A. WALLACE