UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

METRY KELLY and EUGENIE KELLY, )
his wife, and all others similarly situated, )
)
    Plaintiffs, ) Case No.: 5:10-CV-00194-TJC-TEM
)
v. )
)
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, a foreign )
insurance corporation, )
)
    Defendant. )
_____ )

**PLAINTIFFS' RESPONSE AND INCORPORATED MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT STATE FARM'S MOTION TO DISMISS**

Plaintiffs Metry Kelly and Eugenie Kelly, on behalf of themselves and all others similarly situated, by and through their undersigned counsel and pursuant to M.D. Fla. Local Rule 3.01(b) hereby file this response and incorporated memorandum of law in opposition to Defendant State Farm's motion to dismiss, and state:

**INTRODUCTION**

**I.    Factual and Procedural Background**

This case is pled as a putative class action based on two causes of action: (1) breach of contract, and (2) declaratory and injunctive relief. (Plaintiff's Second Amended Class Action Complaint ("Complaint"), Dkt. 33, ¶¶ 41-55). Plaintiffs allege that they and class members are entitled to relief on each of their causes of action because the language purporting to limit uninsured motorist ("UM") coverage in the State Farm policies at issue is void in contravention

1

of Florida Statute, 627.727, **and** because Defendant State Farm has failed to provide notice of UM limitations on those policies, also as required by F.S. 627.727. (Complaint, Dkt. 33 ¶¶ 18-23). This case concerns two automobile insurance policies maintained by Plaintiffs with Defendant State Farm, policy number 159-0586-D11-59B ("Policy A" (Complaint, Dkt. 33, Ex. A)), and policy number 37 1547-A03-19 ("Policy B" (Complaint, Dkt. 33, Ex. B)).[1] As described by Defendant State Farm, Policy B insures an antique motor vehicle, the Corvette, and includes an endorsement to that effect. (Complaint, Dkt. 33, Ex. B at 18, Endorsement 6171AJ.1).[2] However, Endorsement 6171AJ.1 does not mention UM coverage, nor does that endorsement give any notice of any limitations on UM coverage. (See Complaint, Dkt. 33, Ex. B at 18-19).

This case originated in state court. (Notice of Removal, Dkt.1). After Defendant State Farm removed the case, and Plaintiffs' motion to remand was denied, Plaintiffs filed their Second Amended Class Action Complaint. (Complaint, Dkt. 33). Defendant State Farm filed a motion to dismiss on January 21, 2011. (Motion to Dimiss, Dkt. 38).

## ARGUMENT AND CITATION OF AUTHORITY

**II.   Standard for Motion to Dismiss**

There is more guidance to be drawn from *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) and their progeny than is stated in

---

[1] Policy A insures the truck in which Plaintiff Metry Kelly sustained his injuries, and Policy B insures a Corvette. Both policies provide for UM coverage.

[2] Throughout this memorandum, page citations to the exhibits of Plaintiffs' Second Amended Class Action Complaint shall refer to the page number generated by the CM/ECF auto-filing identifier at the top of the document.

Defendant's motion to dismiss.  As the Supreme Court held in *Erickson v. Pardus,* 551 U.S. 89 (2007) (per curiam) (which was issued just two weeks after *Iqbal*)*,* in applying the *Twombly* formulation of the Rule 12(b)(6) standard, a court must also take into account the standard under Rule 8(a)(2), which makes clear that "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Id.* at 93.

As the Eleventh Circuit noted in overruling a dismissal under Rule 12(b)(6) in *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention,* 623 F.3d 1371 (11th Cir. 2010), in *Twombly,*

> The Supreme Court explained that a complaint "does not need detailed factual allegations," but the allegations "must be enough to raise a right to relief above the speculative level."  Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."
>
> Subsequently, in *Iqbal* the Supreme Court clarified that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949; *see also Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) ("The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965).

Therefore, as the Eleventh Circuit emphasized in *Speaker,* a complaint will survive a motion to dismiss as long as the Plaintiff "has pleaded enough factual content to 'nudge his claims across the line from conceivable to plausible.'" (citing *Twombly,* 550 U.S. at 570).

The Eleventh Circuit also addressed the *Twombly* standard in *Young Apartments, Inc. v. Town of Jupiter,* 529 F.3d 1027 (11th Cir. 2008):

> All of the factual allegations in the complaint must be accepted and construed in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche,* 144 F.3d 732, 735

(11th Cir. 1998). A motion to dismiss does not test the merits of a case, but only requires that "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'" *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).

The United States Middle District of Florida observed, in *Steiner-Out v. Lone Palm Golf Club, LLC,* 2010 WL 4366299 (M.D. Fla. 2010) that,

- "In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff." (citing *Murphy v. Federal Deposit Ins. Corp.,* 208 F.3d 959, 962 (11th Cir.2000) and *Kirby v. Siegelman,* 195 F.3d 1285, 1289 (11th Cir.1999));

- "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." (citing *Twombly*);

- "the Court must assume that all of the allegations in the complaint are true," and

- "The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations."

In sum, under *Twombly, Iqbal* and *Erickson,* this Court has been directed by the Supreme Court to deny Defendant's motion to dismiss under Rule 12(b)6) if, considering all appropriate sources, accepting as true all allegations of fact presented by the Plaintiffs and reading all such allegations in the light most favorable to the Plaintiffs, and drawing all reasonable inferences therefrom, the Plaintiffs' claims are "nudged" across the line from "conceivable to plausible" and that it gives fair notice to Defendant of what the claim is and the grounds upon which it rests. Plaintiffs submit that the Second Amended Complaint amply meets this standard by a wide margin.

### III. The Anti-Stacking Clause in the Corvette Policy is Void Under F.S. 627.727(9)

UM coverage does not follow a particular motor vehicle or a particular accident but instead focuses on the status of the injured person. *Government Employees Insurance Co. v. Douglas*, 654 So.2d 118 (Fla. 1995). If the injured person is covered under the policy for liability, UM coverage is also available to the injured person without limitation. *Id.*; *Mosca v. Globe Indemnity*, 693 So.2d 674 (Fla. 4th DCA 1997). Thus, Class I insureds[3] are covered "[w]henever or [w]herever bodily injury is inflicted upon" them, and any attempt to exclude coverage is impermissible and invalid [emphasis added]. *Mullis v. State Farm Mutual Automobile Insurance Co.*, 252 So.2d 229, 238 (Fla. 1971). "[P]rovisions in uninsured motorist policies that provide less coverage than required by [F.S. 627.727] are void as contrary to public policy." *Young v. Progressive Southeastern Insurance Co.*, 753 So.2d 80, 83 (Fla. 2000).

The Florida Supreme Court, in *Coleman v. Florida Ins. Guaranty Ass'n, Inc.*, 517 So.2d 686, 689 (Fla. 1988), has confirmed its commitment to broad UM coverage in no uncertain terms:

> Uninsured motorist protection does not inure to a particular motor vehicle, but instead protects the named insured or insured members of his family against bodily injury inflicted by the negligence of any uninsured motorist under whatever conditions, locations, or circumstances any of such insured' happen to be in at the time... Thus, the insured may be a pedestrian at the time of such injury, riding in motor vehicles of others or in public conveyances or occupying motor vehicles owned by but which are not "insured automobiles" of the named insured... It is this aspect of uninsured motorist coverage which gives rise to aggregation or "stacking" of uninsured motorist coverages... Thus, when an insured pays additional uninsured

---

[3]Class I insureds are the named insured, spouse, and resident relatives; Class II insured are permissive operators and vehicle occupants. *Travelers Insurance Co. v. Warren*, 678 So.2d 324 (Fla. 1996); *Hunt v. State Farm Mutual Insurance Co.*, 349 So.2d 642 (Fla. 1st DCA 1977).

>motorist coverage premiums, he has purchased additional coverage "coextensive with and supplementing the insurance already available under a single coverage." Schermer, Automobile Liability Insurance, § 31.02 [8] (1987). Otherwise, nothing would have been gained by payment of an additional premium because the insured's purchase of a single uninsured motorist coverage protects him "whenever or wherever bodily injury is inflicted upon him by the negligence of an uninsured motorist." *Mullis*, 252 So.2d at 238.

The above-quoted language from *Coleman* was recently quoted approvingly by the Florida Supreme Court in the case of *Rando v. Government Employees Ins. Co.*, 39 So.3d 244, 247-48 (Fla. 2010).

The Florida Supreme Court, in the case of *Flores v. Allstate Ins. Co.*, 819 So.2d 740 (Fla. 2002), held as a matter of first impression that fraud in connection with a claim for PIP benefits did not void the UM coverage, and stated, relevant to this case: "Regarding attempts by insurers to limit UM coverage, we explained in *Salas v. Liberty Mutual Fire Insurance Co.*, 272 So.2d 15 (Fla. 1972), that the intention of the Legislature, as mirrored by the decisions of this Court, is plain to provide for the broad protection of the citizens of this state against uninsured motorists. As a creature of statute rather than a matter for contemplation of the parties in creating insurance policies, the uninsured motorist protection is not susceptible to the attempts of the insurer to limit or negate that protection." *Flores*, 819 So.2d at 745. "'Because the uninsured motorist statute was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist; it is not to be whittled away by exclusions and exceptions.'" *Id.*, quoting *Young*, 753 So.2d at 83.

State Farm stresses that F.S. 627.727 does not apply to specialty insurance policies. (Motion to Dismiss, Dkt. 38, p. 10). However, that assertion is belied by the case of *Progressive American Ins. Co. v. Gregory, Inc.*, 16 So.3d 979 (Fla. 3d DCA 2009). The *Gregory* case dealt

with the applicability of F.S. 627.727(1) to a specialty insurance policy covering a motorcycle.[4] *Id.* at 980-81. In *Gregory*, when the insurer was presented with evidence that the insured had not rejected uninsured motorist coverage as required by F.S. 627.727, the insurer revised the policy to include uninsured motorist coverage and covered the substantial losses incurred by the insured in his accident. *Id.* at 980. Thus, *Gregory* undermines State Farm's assertion that F.S. 627.727 does not apply to specialty insurance policies.

In the case of *State Farm Mut. Auto. Ins. Co. v. Zurich Ins. Co.*, 439 N.W.2d 751 (Minn. Ct. App. 1989), the court found that a "family owned vehicle" exclusion on uninsured motorist coverage in an antique automobile policy did not "absolve [the insurer] of uninsured motorist liability because the exclusion prevents uninsured motorist coverage from following the person (i.e. the insured) while the insured is operating another vehicle." *Zurich*, 439 N.W.2d at 753-54. The exclusion purported to exclude uninsured motorist coverage for injury to any person injured while occupying a motor vehicle owned by the insured which is not insured "for this coverage under this policy." *Id.* at 753. That language is almost identical to some of the language in the Kellys' policy that is contrary to F.S. 627.727(9)(d). (See Complaint, Dkt. 33, Ex. B at 11 ("THERE IS NO COVERAGE:... FOR BODILY INJURY TO AN INSURED WHILE OCCUPYING A MOTOR VEHICLE OWNED BY... YOU... IF IT IS NOT INSURED FOR

---

[4]It is important to note that the case of *Martin v. St. Paul Fire & Marine Insurance Co.*, 670 So.2d 997 (Fla. Dist. Ct. App. 1996), which Defendant relies on almost exclusively to support its contention that F.S. 627.727 does not apply to a specialty insurance policy issued on an antique automobile, equated insurance policies on antique automobiles and specialty insurance policies on motorcycles: "The broad coverage mandated for class I insureds in *Mullis* is still mandated in all policies insuring motor vehicles that are family automobiles. But such broad uninsured motorist coverage has never been legislatively required for motorcycles or other specialty recreational vehicles. The antique car insured in this case is a hobby..." *Martin*, 670 So.2d at 1001.

THIS COVERAGE UNDER THIS POLICY...")). While the *Zurich* court noted that the Minnesota legislature amended its automobile insurance statute in 1985 to permit such "family owned vehicle" exclusions (*Id.* at 754), significantly, the Florida Legislature has not chosen permit the same stringent limitations. See F.S. 627.727.[5]

### IV. The Anti-Stacking Provision in the Corvette Policy is Void Because State Farm Did Not Give the Notice Required by F.S. 627.727(9)

Stackable UM coverage is the default setting, according to F.S. 627.727. In order for UM coverage to *not* be included in an automobile policy, an insured must make "a written rejection of [UM coverage]." F.S. 627.727(1). The Florida Legislature, in F.S. 627.727(9), has approved specific limitations on UM coverage, and has required that, in connection with an offer authorized by F.S. 627.727(9), an insurer inform the insured of the limitations imposed under 627.727(9) and that "such coverage is an alternative to coverage without such limitations." F.S. 627.727(9). In order for an anti-stacking provision to be valid, the insurer must satisfy the statutory requirements of notice to the insured. *Gov't Employees Ins. Co. v. Douglas*, 654 So.2d 118, 120-21 (Fla. 1995). "Florida law provides a mechanism for insurers to include anti-stacking provisions in their policies; however, in order to do so, the insurers must satisfy the requirement of informed consent by the insured." *Rando v. Government Employees Ins. Co.*, 39 So.3d 244, 250 (Fla. 2010). "'It is our opinion that these requirements were the quid pro quo given by the legislature to insurers for the right to limit uninsured motorist coverage by this exclusion.'" *Id.*,

---

[5] The *Zurich* court went on to hold that, where the insured had two policies, one from State Farm on vehicles used in everyday transportation, and one from Zurich on antique vehicles used primarily for show, not for transportation of persons or goods, and the insured was injured in a vehicle that was not an antique (and was not insured under either policy), State Farm had to pay its liability limit, and Zurich was obligated to pay the remainder. *Zurich*, 439 N.W.2d at 754.

quoting *Douglas*, 654 So.2d at 120-21.[6]

Plaintiffs' Policy B, and the communications between the Plaintiffs and State Farm, fall short of the notice standards articulated by F.S. 627.727. State Farm never sent the Kellys notice after they moved to Florida of the limitations of their UM coverage on the Corvette policy, and the fact that such limitations were an alternative to UM coverage without those limitations. Furthermore, the Endorsement 6171AJ.1, titled "Antique or Classic Motor Vehicle," is explicit about the limitations of the liability and medical payments, but is silent as to uninsured motorist coverage. (See Complaint, Dkt. 33, Ex. B at 18-19). That antique automobile endorsement was a prime opportunity for State Farm to notify Plaintiffs of the UM limitations on antique vehicles State Farm now attempts to use to escape liability.

There is no public policy argument in favor of holding that the notice requirement of F.S. 627.727(9) does not apply to UM coverage on antique automobiles. If stackability is a general condition of UM coverage, which applies any time an insured has paid separate premiums on a UM policy, and if the explicit and limited statutory limitations on that condition of stackability require notice to the insured, then that notice should surely be required when the limitations on UM coverage are more stringent than those limited exceptions explicitly permitted by the Legislature.

The case of *Martin v. St. Paul Fire & Marine Insurance Co.*, 670 So.2d 997 (Fla. Dist.

---

[6] It is important to note that the Florida Supreme Court in *Rando* not only found that the notice provision of F.S. 627.727(9) applied even to a Delaware policy on an automobile not registered or principally garaged in Florida. *Id.* at 250 ("we do not interpret [the language from F.S. 627.727(1) compelling UM coverage for vehicles registered or principally garaged in Florida] as limiting our application of subsection (9) only to policies for vehicles registered or principally garaged in Florida." *Id.*).

9

Ct. App. 1996), relied upon almost exclusively by Defendant State Farm to support their contention that F.S. 627.727 does not apply to the antique automobile insurance policy at issue in this case, is distinguishable from the instant case, is not an opinion of Florida's highest court, and has been relied on by only one other Florida appellate case (*Whitmore v. Fidelity & Cas. Ins. Co. of N.Y.*, 868 So.2d 670, 670 (Fla. 1st DCA 2004)), in a per curiam decision without any written opinion.

First and foremost, *Martin* is distinguishable from the instant case because that case did not include the issue of the insured moving to Florida from another state, with different insured motorist insurance laws, as the instant case does. *See Martin*, 670 So.2d 997. While the Kellys moved to Florida from Maine, the class definition includes persons who otherwise meet the class definition and have moved to Florida from any state.[7] Thus, the class may include insured persons who moved to Florida from Minnesota, where, as discussed above, at least one court has held that laws governing the stackability of UM coverage do apply to antique automobile policies. *See State Farm Mut. Auto. Ins. Co. v. Zurich Ins. Co.*, 439 N.W.2d 751 (Minn. Ct. App. 1989). Having moved to Florida, insureds from other states deserve to be notified about material changes to their UM coverage, which can occur, as Defendant asserts, merely as an incidence of their move to Florida. In fact, the *Martin* court never even considered the issue of notice of the UM stackability limitations – the basis for half of Plaintiffs' claims in the instant case. *See Martin*, 670 So.2d 997. *Martin* may have held that public policy argued in favor of allowing the

---

[7]Plaintiffs note that Maine courts have not addressed the issue of UM coverage limitations and antique automobiles, however, that the class includes insureds who have moved to Florida from states other than Maine, including Minnesota. (See Complaint, Dkt. 33 ¶¶ 25-28).

more restrictive UM limitations on specialty antique policies, however, the court never even considered the propriety of giving notice to insured of those limitations, as required by F.S. 627.727(9). The *Martin* court's public policy argument was predicated on the assumption that to require UM coverage from the antique automobile to stack would increase the cost of UM coverage on antique automobiles, causing more insureds to reject such coverage and leading to fewer drivers protected by UM coverage. *See Martin*, 670 at 1001. That public policy argument is wholly inapplicable to the issue of notice. There can be no objection to the insured being made fully aware of the limitations of their UM coverage, and such notice would not increase the cost of UM coverage.

Additionally, the antique auto policy at issue in Martin was more restrictive than the Kellys' State Farm policy. The Martin policy provided a hard limit of 2500 miles per year, while the Kellys' policy merely stated that liability and medical coverages only applied when the Corvette "is used in exhibitions, club activities, parades or other functions of public interest and occasionally for pleasure;" no specific milage limit was included. (See Complaint, Dkt. 33, Ex. B at 18-19).

The Legislature granted insurers the right to limit UM coverage only in certain ways, set out in F.S. 627.727(9), and conditioned on the giving of notice of limits on UM coverage as also set forth therein. Thus, the public policy argument of the Martin court is not persuasive: insurers will not be forced to raise the prices of UM coverage on antique automobiles to the point that owners will reject that coverage, leaving fewer drivers protected by UM coverage; rather, insurers will be free, as they always have been under F.S. 627.727(9), to limit the stackability of UM coverage in specific ways. The insurer could utilize F.S. 627.727(9)(b), which limits the

UM coverage available to an injured vehicle occupant to the UM coverage on that vehicle. That provision would provide UM protection to occupants of the antique automobile, and provide them the value of their premiums if they were injured while not occupying a motor vehicle.

Thus, the *Martin* case does not defeat Plaintiffs' claims. This Court should find that State Farm cannot limit UM coverage in the Corvette policy inconsistent with F.S. 627.727(9), and it should still find that State Farm was required to give notice of any UM limitations, consistent with F.S. 627.727 and the purpose and intent of statutory UM coverage.

V.     **Plaintiffs' Claims for Damages Are Clearly in Excess of the Limits of the Policy on the Vehicle Involved in the Accident**

Plaintiffs' damages are set forth in Paragraphs 7 and 8 of Plaintiffs' Second Amended Class Action Complaint: "As a direct and proximate result of the forgoing negligence... Plaintiff Metry Kelly suffered bodily injury and resulting pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition... As a further, direct and proximate result of the forgoing negligence... Plaintiff Eugenie Kelly has incurred medical and hospital expenses for the treatment and care of her husband... and has in the past... suffer[ed] the loss of her husband's services, companionship and consortium." (Complaint, Dkt. 33 ¶¶ 7-8). Plaintiffs have also alleged that the value of their damages exceeds the UM coverage under the policy on the truck and the policy on the Corvette. (Complaint, Dkt. 33 ¶ 9).

Plaintiffs' pleading of damages is consistent with the form approved by the Florida Supreme Court in the Florida Rules of Civil Procedure. Form 1.945, Fla. R. Civ. P., a form

complaint for motor vehicle negligence, states in Paragraph 4: "As a result plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition."

Defendants have set forth the standard Plaintiffs must meet: the Complaint must "'give the defendant fair notice of what the... claim is and the grounds upon which it rests.' *Id*. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))." (Motion to Dismiss, Dkt. 38, p. 15). Plaintiffs' allegations in Paragraphs 7-9 of the Complaint, Dkt. 33, regarding damages, have more than met that standard, and comply with the form for pleading automobile injury damages approved by the Florida Supreme Court; Plaintiffs allegations regarding damages are sufficient to survive Defendant's motion to dismiss.

VI. **Plaintiffs and Class Members May Properly Maintain Causes of Action for Breach of Contract and Declaratory and Injunctive Relief**

Defendant asserts that Plaintiffs' allegations of a lack of adequate remedy at law and irreparable harm are "belied by the breach of contract allegations..." (Motion to Dismiss, Dkt. 38, p. 16). All the allegations in the Complaint, taken together, sufficiently allege the elements of a claim for declaratory and injunctive relief. Declaratory and injunctive relief is necessary in this case because the offending insurance policies are still outstanding. In fact, Plaintiffs still maintain the Corvette policy at issue in this litigation. Furthermore, Defendants have yet to provide notice of the UM limitations required by Florida law. Thus Plaintiffs and class members are vulnerable to future harm that the requested declaratory and injunctive relief would address,

and such a claim should be allowed to proceed along with Plaintiffs' breach of contract claim.

The case of *Burstein v. First Penn-Pacific Life Ins. Co.*, No. 01-985-CIV-GRAHAM-TURNOFF, 2002 WL 34186960 (S.D. Fla. Feb. 11, 2002) dealt with claims of, *inter alia*, breach of contract and injunctive relief in the context of an insurance policy. There the defendant argued in a motion to dismiss that the plaintiff failed to state a claim for injunctive relief because "she [had] a complete remedy at law and her injuries... have already occurred." *Burstein*, 2002 WL 34186960, *8. The court held that where the plaintiff alleged that the harm was ongoing and was seeking to enjoin a continuing violation, the plaintiff had sufficiently alleged no adequate legal remedy. Id. The court noted that "a party may pursue claims for both money damages and injunctive relief where it is alleged that defendant is likely to continue its tortious activities." *Id.*, citing *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F.Supp.2d 1093, 1105-06 (S.D. Fla. 2000).

Each of the cases relied upon by Defendant in its attack on Plaintiffs' declaratory and injunctive relief claims is distinguishable from the instant case. Not one of the cases cited by Defendant to support its claim that breach of contract and injunctive relief claims are mutually exclusive is a class action. See *B.G.H. Ins. Syndicate, Inc. v. Presidential Fire & Casualty Co.*, 549 So. 2d 197, 198 (Fla. 3d DCA 1989); *Mary Dee's, Inc. v. Tartamella*, 492 So. 2d 815 (Fla. 4th DCA 1986); *Meritplan Insurance Co. v. Perez*, 963 So.2d 771 (Fla. 3d DCA 2007). Importantly, this class action involve absent class members, some of whom may not have yet suffered a breach of contract, but who, because of Defendant State Farm's standardized policy language, are in danger of suffering improper denial of UM coverage in the future. Nor did any of Defendants cases deal with a circumstance where standardized policy language was void as

14

contrary to a statute, nor where defendant was engaged in a continuing pattern or practice of failing to comply with a statute.  *See B.G.H. Ins. Syndicate, Inc. v. Presidential Fire & Casualty Co.*, 549 So. 2d 197, 198 (Fla. 3d DCA 1989); *Mary Dee's, Inc. v. Tartamella*, 492 So. 2d 815 (Fla. 4th DCA 1986); *Meritplan Insurance Co. v. Perez*, 963 So.2d 771 (Fla. 3d DCA 2007).  By contrast, the instant case is a putative class action where Defendant has used standardized policy language that does not comply with F.S. 627.727, and has failed to issue notice as required by that statute.  Defendant has and will likely continue to deny claims for UM coverage based on policy provisions that are void either because those provisions do not comply with the statutory language, or because statutory notice was not issued with regard to those limitations.  Furthermore, the Plaintiffs still maintain Policy B with the void UM provisions, thus Plaintiffs may suffer damage in the future from the improper UM limitations.  Plaintiffs in the instant case are seeking to enjoin a continuing violation, and their claims for declaratory and injunctive relief should be permitted to proceed along with their breach of contract claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant State Farm's motion to dismiss in its entirety.

Respectfully submitted this 4th day of February, 2011.

    /s/ Paul S. Rothstein
PAUL S. ROTHSTEIN
Attorney for Plaintiffs
Florida Bar No.: 310123
626 N. E. First Street
Gainesville, Florida 32601
Phone: (352) 376-7650
Fax: (352) 374-7133

**CERTIFICATE OF SERVICE**

      I certify I presented the foregoing PLAINTIFFS' RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STATE FARM'S MOTION TO DISMISS to the Clerk of Court for filing and uploading to the EM/ECF system, which will send a Notice of Electronic Filing to the following:

John W Weihmuller
weihmuller@butlerpappas.com
Brian D. Webb
bwebb@butlerpappas.com
Butler Pappas, LLP
Suite 500
777 S Harbour Island Blvd
Tampa, FL 33602-5723
813/281-1900
813/281-0900 (fax)

Cari K. Dawson
cari.dawson@alston.com
Kyle G.A. Wallace
kyle.wallace@alston.com
Allison S. Thompson
allison.thompson@alston.com
Alston & Bird, LLP
Suite 4200
1201 W Peachtree St NE
Atlanta, GA 30309-3424
404/881-7000
404/881-7777 (fax)

      This 4th day of February, 2011.

                                 /s/ Paul S. Rothstein
                                Paul S. Rothstein