UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | | |
|---|---|---|
| METRY KELLY and EUGENIE KELLY, his wife, and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 5:10-cv-194-TJC-GRJ |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation, | ) ) ) ) ) | Dispositive Motion |
| Defendant. | ) ) | |

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by and through its undersigned counsel and pursuant to this Court's Endorsed Order dated February 11, 2011, hereby submits this Reply Brief in Support of Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, showing the Court as follows:

**INTRODUCTION**

Plaintiffs' concession that the Second Amended Class Action Complaint establishes that the Corvette Policy is an antique auto policy is dispositive of the only issue in State Farm's motion to dismiss. Despite Plaintiffs' efforts to confuse and complicate the issues by spending pages of their brief discussing the general rules applicable to the typical Class I uninsured motorist (UM) insurance coverage for family automobiles, State Farm's position is straightforward and simple: While Plaintiffs' claims are all based on the contention that the

anti-stacking provision in Plaintiffs' Corvette Policy violates Fla. Stat. § 627.727 and its notification requirement, the Corvette Policy is a specialty policy on an antique vehicle and the statutory requirements simply do not apply to such policies.  *See Martin v. St. Paul Fire & Marine Ins. Co.*, 670 So. 2d 997 (Fla. 2d DCA 1996).  Because State Farm's purported failure to comply with this inapplicable statutory provision serves as the exclusive basis for Plaintiffs' claims in this lawsuit, this case should be dismissed with prejudice.  In their response, Plaintiffs are unable to distinguish *Martin* or cite any authority applying Florida law and holding that an anti-stacking provision in an antique automobile policy violates Fla. Stat. § 627.727.  This case is due to be dismissed with prejudice in its entirety.  No amount of re-pleading will change the fact that the Corvette Policy simply is not subject to the statutory provision that Plaintiffs contend has been violated and serves as the sole basis for their claims.[1]

I.  **The Corvette Policy At Issue Does Not Permit The Stacking Plaintiffs Seek And The Anti-Stacking Provision Is Not Void Under Fla. Stat. § 627.727.**

The Corvette Policy plainly states that "[t]here is no coverage . . . for bodily injury to an insured . . . [w]hile occupying a motor vehicle owned by or leased to you, your spouse, or any relative if it is not insured for this coverage under this policy." (Second Am. Class Action Compl. ("Compl."), Dkt. 33, Ex. B at 11; *see also* Compl., ¶ 14).  Recognizing that this language prevents Plaintiffs from stacking their UM coverage under the Corvette Policy with the UM coverage provided under Plaintiffs' GMC policy covering the vehicle involved

---

[1] Additionally, while a straightforward application of *Martin* defeats all of Plaintiffs' claims on the merits and the Court need not reach this issue, Plaintiffs have failed to allege a sufficient individual injury to state any claim, and instead improperly rely on absent putative class members in a last-ditch effort to survive this motion to dismiss.

in the accident, Plaintiffs confusingly argue that this anti-stacking language "is void in contravention of Florida Statute, 627.727, *and* because Defendant State Farm has failed to provide notice of UM limitations on those policies, also as required by F.S. 627.727." (Pl. Resp., Dkt. 42 at 1-2).

    A.    **The Corvette Policy's Anti-Stacking Provision Does Not Contravene Fla. Stat. § 627.727.**

Plaintiffs do not point to any legal support for their contention that the anti-stacking language contravenes Fla. Stat. § 627.727. In fact, Fla. Stat. § 627.727(9) expressly permits insurers to offer limited UM coverage. The Corvette Policy does not eliminate the availability of UM coverage, but simply provides that such coverage is only available *if* the insured suffers bodily injury while occupying a vehicle insured under that policy (*i.e.*, the Corvette).[2] (*Id.*). Accordingly, Plaintiffs have not articulated a single reason why the UM coverage exclusion is facially void in contravention of Fla. Stat. § 627.727, or how this assertion differs in any way from their claim that the policy is void for State Farm's alleged failure to comply with the statutory notice requirement of Fla. Stat. § 627.727(9). As such, and for the reasons stated below, the Court should dismiss the Complaint with prejudice.

    B.    **Plaintiffs Cannot State A Claim Based Upon State Farm's Alleged Failure To Provide Statutory Notice As The Rule Articulated In *Martin* For Antique Automobile Policies Controls This Case.**

Given Plaintiffs' failure to plead any facts showing that the anti-stacking provision is facially void under Fla. Stat. § 627.727, the only basis for Plaintiffs' claim that State Farm violated Fla. Stat. § 627.727 is the allegation that State Farm was required to, and did not,

---

[2] Plaintiffs themselves allege that Mr. Kelly was *not* occupying the Corvette at the time he sustained his alleged injuries, (Compl., ¶ 6), and thus the plain policy language defeats Plaintiffs' claims for coverage.

provide statutory notice to Plaintiffs of the UM coverage anti-stacking provision in the Corvette Policy.  *See* Fla. Stat. § 627.727(9).  Plaintiffs' claims still fail as a matter of law, however, because Plaintiffs concede that the Corvette policy is an antique auto policy, (*see* Pl. Resp. at 2), and thus the requirements of Fla. Stat. § 627.727(9), including the statutory notice provision, do not apply to the Corvette Policy under the rule articulated in *Martin v. St. Paul Fire & Marine Insurance Co.*, 670 So. 2d 997, 998 (Fla. 2d DCA 1996).  The plain holding of *Martin* is that "the requirements of section 627.727, Florida Statutes (Supp. 1992), . . . do not require a specialty insurance policy covering only an antique automobile with restricted highway usage to provide uninsured motorist coverage for accidents not involving the antique."  670 So. 2d at 998 (citations omitted).[3]  As it is undisputed that the Corvette Policy is an antique automobile policy, *Martin* controls this case and Plaintiffs' claims – all based on a premise that State Farm has violated provisions of Fla. Stat. § 627.727 – fail as a matter of law.

Plaintiffs do all they can to try to avoid this necessary result.  First, Plaintiffs attempt to use policy arguments related to general UM principles which do ***not*** involve antique automobile policies, in an effort to undermine or marginalize *Martin*.  (*See* Pl. Resp. at 5-6, 8-9).  Plaintiffs' policy arguments fail because *Martin* is controlling authority and it is *Martin* that sets forth Florida's public policy on UM coverage for antique automobile policies:

> There are strong public policies favoring statutorily required UM coverage, and thus an insurance company's right to restrict such coverage is limited. Nevertheless, we conclude that the legislature has never intended to mandate

---

[3] Plaintiffs assert that they are entitled to injunctive relief because they "still maintain the Corvette policy at issue" and "are vulnerable to future harm."  (Pls.' Resp. Br. at 13).  The *Martin* case, however, will continue to apply to the Corvette Policy and bar these claims for as long as Plaintiffs maintain that policy.

> class I, family-style uninsured motorist coverage in such a specialty policy. Instead, **we are convinced that the strong public policies encouraging uninsured motorist coverage will be better served if we permit the coverage limitations in this specialty policy**.

*Martin*, 670 So. 2d at 999 (emphasis added). Specifically, the *Martin* court noted that:

> [i]f we were to reach the opposite result, three developments would assuredly occur. First, the **insurance companies providing this coverage to antique car enthusiasts would be required to dramatically increase the cost of the coverage**. Second, this dramatic increase in premiums **would cause many owners to completely reject uninsured motorist coverage on their antiques**. . . . Finally, by requiring expensive coverage that would duplicate true family automobile coverage in most instances, **we would force the legislature to amend this statute on yet another occasion in its never-ending efforts to provide cost-effective UM coverage for Florida residents**. These developments seem to be clear proof that the legislature did not intend this result.

*Id.* at 1001 (emphasis added). Thus, Plaintiffs' policy arguments against *Martin* fail.

Second, Plaintiffs heavily rely on two cases in an apparent but unsuccessful attempt to distinguish *Martin*. (*See* Pl. Resp. at 6-8). *State Farm Mut. Auto. Ins. Co. v. Zurich*, 439 N.W.2d 751 (Minn. Ct. App. 1989), is wholly irrelevant because it is a Minnesota opinion from a Minnesota court applying Minnesota law. *Zurich* in no way undermines *Martin* as the controlling Florida law. Moreover, the *Zurich* case involved an apportionment and subrogation dispute between two insurers, State Farm and Zurich, regarding which was the primary and which was the excess insurer. 439 N.W.2d at 753. The court spent a single paragraph stating simply that "the 'family owned vehicle' exclusion . . . is not valid to absolve Zurich of [UM] liability . . . ," *id.*, although Plaintiffs here acknowledge that the Minnesota legislature amended that state's UM statute to permit insurers to exclude UM coverage where the insured is injured while occupying a vehicle he or she owns but has not insured under the policy. (*See* Pl. Resp. at 8). Thus, this dicta in *Zurich* does not even

5

accurately reflect the current law of Minnesota, much less distinguish *Martin* or otherwise inform this Court's analysis of Florida law in this case. 439 N.W.2d at 754.

While the other case Plaintiffs rely on, *Progressive Am. Ins. Co. v. Gregory, Inc.*, 16 So. 3d 979 (Fla. 3d DCA 2009), actually does apply Florida law, Plaintiffs' reliance on *Gregory* is similarly misplaced. First, as with *Zurich*, *Gregory* did not involve a coverage dispute initiated by an insured, but instead was a suit filed by the insurer against its agent for breach of the agency agreement "by having Progressive issue a policy excluding UM coverage without the required waiver." 16 So. 3d at 980. More importantly, however, *Gregory* involved the statutory requirements of Fla. Stat. § 627.727(1), which forbid an insurer from issuing a policy ***without any*** UM coverage unless the insured executes a written rejection of such coverage. *Gregory*, 16 So. 3d at 981. By contrast, both *Martin* and the present case involve ***limitations*** to the UM coverage provided, Fla. Stat. § 627.727(9), not an attempt to ***exclude*** such coverage from a policy altogether. Contrary to Plaintiffs' assertion, therefore, neither *Gregory* nor *Zurich* undermines State Farm's argument that the requirements of Fla. Stat. § 627.727(9) do not apply to antique auto policies under the holding of *Martin*.

Plaintiffs' attempts to factually distinguish this case from *Martin* are also distinctions without a difference. For example, searching for any possible distinction between the Corvette Policy and the policy at issue in *Martin*, Plaintiffs contend that because the policy at issue in *Martin* contained a specific mileage limitation, the Court should avoid applying the holding of *Martin* to the Corvette Policy. (*See* Pl. Resp. at 11). But, as the *Martin* court noted, the mileage limitation was merely one of "[s]everal aspects of St. Paul's insurance

policy . . . important to our decision in this case." 670 So. 2d at 998. In addition to the mileage limitation, the court highlighted numerous facts that contributed to its holding, which are nearly identical to the Corvette Policy:

- the policy was entitled "Antique Automobile Insurance Policy";

- the policy only insured the antique vehicle;

- the policy provides $300,000 in liability coverage for each accident, $300,000 in uninsured motorist coverage, collision coverage, and personal injury protection;

- St. Paul charged a reduced annual premium for the policy ($181.00, $16.00 of which was allocated to the UM coverage);

- the vehicle had to be maintained primarily for use in antique car club activities and only occasionally used for other purposes; and

- coverage only protected the named insured, family members, and other persons injured while actually using the antique auto.

*Id.* at 998-99. Based on these multiple, nearly identical, facts, the mere lack of a mileage limitation in the Corvette Policy is insignificant and certainly insufficient to defeat the square application of *Martin* to the facts of this case.

Finally, Plaintiffs assert that *Martin* "did not include the issue of the insured moving to Florida from another state, with different insured motorist insurance laws, as the instant case does." (Pl. Resp. at 10). Plaintiffs apparently intend to imply that State Farm is improperly taking advantage of Plaintiffs' move to Florida in making its arguments in this motion. But, Plaintiffs have it backwards. It is not State Farm, but Plaintiffs who seek to take advantage of Plaintiffs' move to Florida and argue that the move triggered a requirement for State Farm to follow Florida UM law and the statutory notification requirement that is applicable to Class I family automobile coverage. This entire case is founded upon

Plaintiffs' argument that non-compliance with that requirement voids the anti-stacking provision in the Corvette Policy that would otherwise defeat the coverage that Plaintiff seeks. The anti-stacking provision in this Maine-issued policy plainly would be upheld under Maine law. *See Moody v. Horace Mann Ins. Co.*, 634 A.2d 1309, 1311 (Me. 1993) (holding that anti-stacking policy provision is not void under Maine law). Thus, it is Plaintiffs who have invoked Florida law in bringing this case. In contending that Plaintiffs' move to Florida has triggered the application of Florida law and by asserting claims based on alleged violations of Florida UM law, Plaintiffs must accept Florida law as it stands, including the clear import of *Martin*, which mandates the dismissal of each of their claims under Florida law. In applying the Florida law that Plaintiffs' have invoked, it certainly makes no difference that Plaintiffs moved to Florida from Maine.[4] This is merely another attempt by Plaintiffs to inject confusion and complication to the straightforward issue presented in this motion. Because Florida law, and specifically Fla. Stat. § 627.727, does not prohibit the anti-stacking provision set forth in the specialty policy covering the antique Corvette or require compliance with that statute's notification requirement, Plaintiffs' claims fail as a matter of law and this case should be dismissed with prejudice.

## II. Plaintiffs Fail To Allege Sufficient Individual Injury And Plead A Remedy At Law, Which Are Defects That Cannot Be Cured By Reference To Hypothetical Injury Of Absent Putative Class Members.

While this Court need not even reach this issue, as State Farm explained in its opening brief, (Op. Br. at 14-16), Plaintiffs' claims also fail because the Complaint does not

---

[4] Plaintiffs admit that the Corvette Policy was originally issued and delivered to them in the State of Maine (*see* Compl., ¶ 3), but allege that Florida law applies. While State Farm contends that Maine law applies, this choice-of-law issue is not ripe for consideration in connection with State Farm's motion to dismiss, and as argued in this motion, Plaintiffs' claims fail under Florida law.

allege any predicate factual support for the bald allegations that their damages exceed the limits primary UM coverage under the GMC Policy, much less the purportedly stackable coverage under the Corvette Policy. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). State Farm also argued that the injunctive relief claim fails because there is no irreparable harm or lack of an adequate legal remedy. *See Net First Nat'l Bank v. First Telebanc Corp.*, 834 So.2d 944, 950 (Fla. 4th DCA 2003) ("Although a trial court has broad discretion in granting injunctive relief, it is an extraordinary remedy that 'requires a clear legal right, free from reasonable doubt.'"); *Meritplan Ins. Co. v. Perez*, 963 So.2d 771, 776 (Fla. 3d DCA 2007) ("By granting the injunction in this case, the trial court vitiated [the insurer's] contractual rights . . . .").

Unable to correct these fatal deficiencies, Plaintiffs merely point to potential injury of hypothetical class members. (Pl. Resp. at 10). The fact that this action was pled as a putative class action, however, is irrelevant for purposes of State Farm's motion to dismiss. No class has been certified, and the only claims presently before the Court are those of the individually named Plaintiffs. *See, e.g.*, *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1321 (S.D. Fla. 2000) ("[T]he motion to dismiss may be dispositive, thereby rendering the motion for class certification moot."); *Edwards v. Accredited Home Lenders, Inc.*, No. 07-0160-KD-C, 2007 WL 5022185, at *9 (S.D. Ala. Oct. 23, 2007) ("Because the individual claims are due to be dismissed, those claims raised on behalf of a putative class as to the title insurance fee are also due to be dismissed."); *see also Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("With no meritorious claims, certification of those claims . . . is moot."). Because Plaintiffs, individually, have pled an

adequate remedy at law, they are not entitled to injunctive relief and that claim must be dismissed under Rule 12(b)(6). Similarly, because Plaintiffs, individually, are unable to allege that their damages exceed the limits of primary UM coverage under the GMC Policy, all of Plaintiffs' claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons and those stated in its opening brief in support of this motion, State Farm respectfully requests this Court to dismiss this case with prejudice.

Respectfully submitted this 21st day of February, 2011.

/s/ Kyle G.A. Wallace
CARI K. DAWSON (Admitted *pro hac vice*)
cari.dawson@alston.com
KYLE G.A. WALLACE (Admitted *pro hac vice*)
kyle.wallace@alston.com
ALLISON S. THOMPSON (Admitted *pro hac vice*)
allison.thompson@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000
(404) 881-7777 (*Facsimile*)

JOHN W. WEIHMULLER, ESQ.
Florida Bar No. 0442577
jweihmuller@butlerpappas.com
BRIAN D. WEBB, ESQ.
Florida Bar No. 0073989
bwebb@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ & CRAIG LLP
777 S. Harbour Island Boulevard Suite 500
Tampa, Florida 33602
(813) 281-1900
(813) 281-0900 (*Facsimile*)

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| METRY KELLY and EUGENIE KELLY, his wife, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation,<br><br>Defendant. | Case No. 5:10-cv-194-TJC-GRJ |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the within and foregoing **DEFENDANT STATE FARM'S MOTION TO DISMISS PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to:

        John Piccin, Esq.
        jp@piccinlawfirm.com
        PICCIN LAW FIRM
        Post Office Box 159
        Ocala, FL 34478

        Paul S. Rothstein, Esq.
        paul.s.rothstein@att.biz
        626 N.E. First St.
        Gainesville, FL 32601

This 21st day of February, 2011.

                                                /s/ Allison S. Thompson
                                                ALLISON S. THOMPSON