UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

METRY KELLY and EUGENIE KELLY, )
his wife, and all others similarly situated, )
)
    Plaintiffs, )
)
vs. )   Case No. 5:10-cv-194-TJC-GRJ
)
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, a foreign )
insurance corporation, )
)
    Defendant. )
)

## DEFENDANT'S BRIEF IN RESPONSE TO QUESTIONS OF THE COURT

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") hereby submits this brief to address three specific questions posed by the Court:[1]

(1)   Are the allegations in Plaintiffs' Third Amended Class Action Complaint—specifically those regarding the number of putative class members—sufficient to support this Court's jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)?

(2)   Should this Court resolve the issue of whether Plaintiffs' damages meet or exceed the coverage limits of Plaintiffs' State Farm policy number 159-0586-D11-59B (the "GMC Policy") before addressing the issues related to

---

[1] State Farm is filing this brief in lieu of an answer to the Third Amended Class Action Complaint pursuant to the terms of this Court's Order dated June 30, 2011 (Dkt. # 66), and understands that its obligation to file a responsive pleading or motion to dismiss is effectively tolled pending resolution of the issue addressed herein.

Plaintiffs' State Farm policy number 37 1547-A03-19 (the "Corvette Policy")?

(3) Does Florida law govern the Corvette Policy?[2]

*First*, State Farm believes that Plaintiffs have alleged sufficient facts to support this Court's jurisdiction under CAFA, which requires (1) a proposed class consisting of at least 100 members, (2) that any member of the proposed plaintiff class is a citizen of a state different from any defendant, and (3) that the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2), (d)(5) & § 1453(b); *see also Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006). Following State Farm's removal of this action, the parties extensively briefed the issue of whether the aggregate amount in controversy exceeds $5,000,000, which resulted in this Court entering an order adopting the Report and Recommendation of Magistrate Judge Gary R. Jones (Dkt. # 26, Sept. 23, 2010) and denying remand. (Order, Dkt. # 28, Nov. 9, 2010). Now, the Court has asked State Farm to analyze whether the allegations in the Third Amended Class Action Complaint are sufficient to support the first prerequisite of CAFA jurisdiction—namely, a proposed class numbering at least 100 members. Regardless of whether discovery ultimately reveals a sufficient number of Florida insureds to warrant certification of the putative classes under Fed. R. Civ. P. 23, Plaintiffs have proposed a class numbering at least 100 and have further presented the factual support to demonstrate their good faith basis for making such an

---

[2] State Farm responds to the concluding paragraph of the Court's Order by noting its willingness to engage in discussions with Plaintiffs for the limited purpose of resolving Plaintiffs' individual claims arising under the GMC Policy. (*See* Order at 4, Dkt. #66, June 30, 2011).

allegation. This is all that is required at this stage in the litigation and jurisdiction is proper. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009).

*Second*, State Farm believes that the Court should enter a bifurcated case management schedule to allow for resolution of Plaintiffs' individual claims under the GMC Policy before reaching the issues related to the stackability of UM coverage or the putative class claims. This bifurcated schedule would provide for the most efficient resolution of a potentially dispositive issue because Plaintiffs' claims for stacked coverage cannot survive unless they prove damages in excess of available liability coverage and the UM limits of the GMC Policy. In fact, Plaintiffs' claims under the GMC Policy are the only claims which, if decided at the outset, have the distinct potential to resolve this entire litigation. The only disputed issue relevant to these claims is limited to whether Plaintiffs' damages meet or exceed the limits of UM coverage under the GMC Policy. Given the procedural history of this case, the parties have already collected some discovery relevant to Plaintiffs' individual damages claims, which should substantially decrease the time needed to prepare those claims for resolution here. Under these circumstances, given the potential impact on the broader controversy at issue, it makes profound sense to adjudicate Plaintiffs' claims under the GMC Policy before the parties and this Court are required to expend substantial resources litigating the stacking and putative class issues, which would become moot in the event that Plaintiffs are unable to prove damages sufficient to trigger the issue of coverage under the Corvette Policy.

*Finally*, it is clear from the face of Plaintiffs' pleadings that Maine law applies to the Corvette Policy under a straightforward application of the *lex loci contractus* doctrine. But

Florida courts have recognized a narrow public policy exception to the *lex loci* rule where a Florida citizen insured can prove both "a paramount Florida public policy" and that the insured provided the insurer with "reasonable notice" of the risk that the subject policy would be subject to Florida law. *See State Farm Mut. Auto. Ins. Co. v. Roach,* 945 So. 2d 1160, 1165 (Fla. 2006). Whether the exception applies to defeat application of the *lex loci* rule requires Plaintiffs to produce evidence, not mere allegations, that Florida law properly applies. Thus, the choice of law issue cannot be resolved on the pleadings alone.

I. **PLAINTIFFS' ALLEGATIONS REGARDING THE NUMBER OF PUTATIVE CLASS MEMBERS ARE SUFFICIENT TO SUPPORT CAFA JURISDICTION.**

Although State Farm does not believe that Plaintiffs will be able to prove a sufficient number of class members to have the putative classes certified under Fed. R. Civ. P. 23, CAFA jurisdiction does not turn on what a plaintiff may ultimately prove, but on whether the alleged facts are sufficient to satisfy the jurisdictional prerequisites. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010); *Vega*, 564 F.3d at 1268 n.12 ("Even if it were later found that the narrowed, Florida-only class numbers fewer than 100, the § 1332(d)(5)(B) limitation applies only to 'proposed' plaintiff classes (as opposed to classes actually certified or that go to trial); jurisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction."). In both the First Amended Class Action Complaint, which formed the basis for State Farm's removal, and the more recent Third Amended Class Action Complaint, Plaintiffs allege that the putative class numbers in the "thousands." (*See* 1st Am. Compl. ¶ 18, Dkt. # 10; 3d Am. Compl. ¶ 23, Dkt. # 73, Aug.

17, 2011). In their most recent pleading, Plaintiffs have also made clear that this allegation is based on their investigation of State Farm's market share in the automobile insurance industry, both in the State of Florida and nationwide, and on statistics regarding residency flow into the State of Florida. (*See*, *e.g.*, 3d Am. Compl. ¶ 23). According to Plaintiffs, their investigation has led them to the informed belief that "Defendant State Farm has issued more than 100 automobile insurance policies" that would qualify the insured as a member of the putative classes. (*See* 3d Am. Compl. ¶¶ 24, 28). Although State Farm is extremely doubtful that Plaintiffs will be able to prove these allegations or satisfy the certification requirements of Fed. R. Civ. P. 23, the pleadings are sufficient to support jurisdiction under CAFA. *See Vega*, 564 F.3d at 1268 n.12; *see also McClendon v. Challenge Fin. Investors Corp.*, No. 1:08-CV-1189, 2009 WL 589245, at *10 (N.D. Ohio Mar. 9, 2009) ("[P]resuming that Plaintiff's factual contention was asserted in good faith and based upon evidentiary support or likely to have evidentiary support after opportunity for investigation and discovery, she alleged that [Defendant] entered into transactions with 'no less than hundreds of persons.' . . . Therefore, there is present here a sufficient putative class size to fall within the CAFA."); *Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 WL 1035018, at *2 (E.D. Ky. Mar. 31, 2007) (same).

II. **THIS COURT SHOULD EXERCISE ITS DISCRETION TO RESOLVE PLAINTIFFS' CLAIMS UNDER THE GMC POLICY AT THE OUTSET OF THIS LITIGATION.**

For the first time in the Third Amended Class Action Complaint, Plaintiffs have alleged separate claims for benefits under the GMC Policy. (3d Am. Compl. ¶¶ 14, 47-61). Plaintiffs seek coverage benefits for Mr. Kelly's alleged bodily injury, pain and suffering,

loss of capacity for enjoyment of life, expense of care, and aggravation of a previously existing condition (*id.* ¶ 52-53, 60), and for Mrs. Kelly's alleged past and future loss of Mr. Kelly's services, companionship and consortium (*id.* ¶ 60).  Plaintiffs contend that the value of their damages exceed the availability liability coverage and the UM limits of the GMC Policy.  (*Id.* ¶¶ 52-55, 58-61).  State Farm is skeptical that Plaintiffs will be able to prove damages in excess of liability coverage and the UM limits of the GMC Policy.  (*Accord id.* ¶ 14).

"A district court has broad authority 'to control the pace of litigation before it.'" *Walter Int'l Prods., Inc. v. Salinas*, No. 09-15971, 2011 WL 3667597, at *11 (11th Cir. Aug. 23, 2011) (quoting *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002)); *see also Johnson v. Bd. of Regents,* 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling.").  In this case, the issue of stackability (which forms the sole basis for Plaintiffs' putative class claims) is triggered if, and only if, the value of Plaintiffs' alleged damages exceed and exhaust the limits of available liability coverage and the UM limits of the GMC Policy.  Thus, adjudicating Plaintiffs' individual claims under the GMC Policy *is the only issue* that could potentially dispose of the remaining claims without requiring the parties or the Court to devote additional unnecessary resources toward resolving them.

    A.    **Plaintiffs' Claims Under the GMC Policy are the Only Claims With the Potential to Resolve This Entire Litigation.**

Plaintiffs claim that they are entitled to collect UM benefits under two State Farm-issued policies—the GMC Policy and the Corvette Policy—based upon the allegations that

their covered damages are greater than the amount of available UM coverage. [CITE]. While State Farm disputes Plaintiffs' right to assert any claim for UM coverage under the Corvette Policy, the dispute related to the GMC Policy is limited to whether Plaintiffs have sustained damages sufficient to require State Farm to pay the UM limits of that policy. In other words, State Farm is prepared to pay whatever UM benefits Plaintiffs can prove they are entitled to under the GMC Policy. If the evidence reveals damages in excess of the UM coverage available under the GMC Policy, State Farm is prepared to pay coverage limits under the GMC Policy and continue to litigate the issue of whether Plaintiffs are entitled to any additional monies by virtue of the Corvette Policy. But, if Plaintiffs' proven damages do not exhaust the UM limits of the GMC Policy, then neither the parties nor this Court need to address the legal issues surrounding whether Plaintiffs otherwise would have entitled to stack the UM coverage under the Corvette Policy. And, because Plaintiffs' putative class claims all hinge on the stacking issues, those claims necessarily must fail if Plaintiffs' individual stacking claims become moot.

    **B.**    **Considerations of Efficiency and Economy Counsel in Favor of Resolving Plaintiffs' Damages at the Outset.**

Deciding Plaintiffs' damages at the outset of the case will permit the parties and the Court to focus on the only issue that is guaranteed to remain a disputed issue of fact until it is resolved through the evidence. As noted above, putting this factual dispute to rest at the beginning of the case may reveal that it is wholly unnecessary to address the more complex legal questions regarding class certification, which state's laws apply to the Corvette policy, and whether Plaintiffs are even entitled to make a claim for stacked UM benefits under the Corvette Policy. It would not benefit the parties or this Court to waste time and resources

delving into these issues before it is clear that they are viable. Alternatively, the time and resources spent establishing Plaintiffs' damages will not go to waste because that issue must be resolved in order to resolve Plaintiffs' claims under the GMC Policy. Addressing this issue sooner, rather than later, will simply streamline the management of this dispute so as to conserve and allocate resources in the most efficient manner.

Moreover, the parties should be able to prepare for a trial on this limited issue in relatively short order. Before Plaintiffs added the putative class claims, the parties spent nearly a year litigating and collecting discovery on Plaintiffs' coverage claims as they pertain to the GMC Policy in the Circuit Court for the Fifth Judicial Circuit, in and of Marion County, Florida (Case No. 09-636-CA-G). The parties need only to complete discovery on Plaintiffs' damages claims and to determine whether summary adjudication or a jury trial is appropriate. Given the potentially dispositive nature of this issue and the limited time it would take to adjudicate the UM claim under the GMC Policy, State Farm believes it would be both efficient and prudent to focus on resolving Plaintiffs' individual claims under the GMC Policy.

### III. THE CHOICE-OF-LAW ISSUE REGARDING THE CORVETTE POLICY CANNOT BE DECIDED ON THE PLEADINGS.

#### A. Maine Law Governs the Corvette Policy Under the *Lex Loci Contractus* Doctrine.

To resolve a choice of law issue in a contract action, Florida courts follow the *lex loci contractus* rule, "which provides that the **law of the state where an insurance contract is executed** is the law that 'governs the rights and liabilities of the parties in determining an issue of insurance coverage.'" *Rando v. Gov't Employees Ins. Co.*, 39 So. 3d 244, 247 (Fla.

2010) (quoting *Roach,* 945 So. 2d at 1163) (emphasis added); *see also Sims v. New Falls Corp.*, 37 So. 3d 358, 360 (Fla. DCA 3d 2010) (recognizing applicability of *lex loci* rule); *State Farm Mut. Auto. Ins. Co. v. Duckworth*, No. 09-15690, 2011 WL 3505267, at *1 (11th Cir. Aug. 11, 2011) (same). Because the Third Amended Class Action Complaint specifically alleges that "Policy B [the Corvette Policy] was originally purchased by Plaintiffs in the State of Maine" (3d Am. Compl. ¶ 6), a direct application of the *lex loci contractus* doctrine dictates that Maine law applies to the Corvette Policy and defeats Plaintiffs' stacking and putative class clams. *See Moody v. Horace Mann Ins. Co.*, 634 A.2d 1309, 1311 (Me. 1993) (holding that anti-stacking policy provision is not void under Maine law).

Plaintiffs' allegation that "Policy B [the Corvette Policy] was subsequently renewed, delivered, or issued for delivery in the State of Florida" (3d Am. Compl. ¶ 7), does not alter this outcome. In briefing State Farm's motion to dismiss the Second Amended Class Action Complaint, Plaintiffs argued in favor of subjecting the out-of-state Corvette Policy to the requirements of Florida law because "'the renewal of a contract of insurance constitutes the making of a new contract for the purpose of incorporating into the policy changes in the statutes regulating insurance contracts.'" *Bell Care Nurses Registry, Inc. v. Continental Cas. Co.*, 25 So. 3d 13, 15-16 (Fla. 3d DCA 2009) (quoting *Metropolitan Prop. & Liab. Ins. Co. v. Gray*, 446 So. 2d 216, 218 (Fla. 5th DCA 1984)). But this rule regarding policy renewals is not a choice of law rule; rather, it merely provides that annually renewable insurance contracts executed in Florida shall be governed by Florida's most up-to-date insurance laws at the time of each renewal. *See, e.g., Adams v. Aetna Cas. & Sur. Co.*, 574 So. 2d 1142,

1148 (Fla. 1st DCA 1991); *May v. State Farm Mut. Auto. Ins. Co.*, 430 So. 2d 999, 1001 (Fla. 4th DCA 1983). State Farm is not aware of a single Florida case incorporating this rule into the choice of law analysis, and this Court should not extend Florida law by doing so here.

      **B.**    **Any Suggested Application of the Public Policy Exception to the *Lex Loci Contractus* Rule Cannot be Resolved on the Pleadings.**

Because the Corvette Policy was executed in Maine, permitting Plaintiffs' stacking and putative class claims to proceed under Florida law requires Plaintiffs to establish the applicability of Florida's narrow public policy exception to the *lex loci contractus* doctrine. *See Roach*, 245 So. 2d at 1164-65. This public policy exception "requires **both** a Florida citizen in need of protection **and** a paramount Florida public policy." *Id.* at 1165 (emphasis in original). Importantly, in the context of insurance contracts, application of this exception also requires that the insured party "provide[d] the insurer with reasonable notice 'of a permanent change of residence,' . . . such that the insurance risk would thereafter be 'centered in Florida.'" *Duckworth*, 2011 WL 3505267, at *1 (internal citations omitted); *see also*, *e.g.*, *Barnier v. Rainey*, 890 So. 2d 357, 359 (Fla. DCA 1st 2004) ("For the public policy exception to be invoked properly, it must be shown that Florida has a significant connection to the insurance coverage, and the insurance company has had reasonable notice that the policy risk is centered in Florida." (citing *Roach*, 245 So. 2d at 1110)). This third prong is intended to protect an insurer from having an out-of-state policy unfairly subjected to Florida's legal requirements and "turns on the clarity with which an insured expressed his intent to make Florida his permanent home." *Id.* "Because 'the public policy exception is intended to be narrow,' it displaces Florida's *lex loci* rule only when all three prongs of the

10

exception, including the reasonable notice requirement, have been satisfied." *Id.* (quoting *Roach*, 245 So. 2d at 1167).

Notwithstanding Plaintiffs' bald allegation that "Defendant State Farm was on notice of Plaintiffs' move to Florida," (3d Am. Compl. ¶ 7), State Farm believes that discovery will reveal evidence sufficient to defeat application of the public policy exception. Specifically, State Farm believes that discovery will reveal evidence that Plaintiffs failed to provide State Farm with sufficient information to place it on "reasonable notice" that the Corvette Policy would be subjected to the requirements of Florida's insurance laws. Thus, to the extent Plaintiffs attempt to invoke the public policy exception as a basis for applying Florida law to the Corvette Policy, State Farm respectfully submits that determining whether the exception properly applies to this case raises questions of fact that cannot be resolved on the pleadings.[3]

### IV.   THE ANTIQUE POLICY ISSUE CAN BE DECIDED NOW AS A MATTER OF LAW.

State Farm believes that, as a matter of law, the holding of *Martin v. St. Paul Fire & Marine Ins. Co.*, 670 So. 2d 997 (Fla. 2d DCA 1996), conclusively entitles State Farm to a dismissal **with prejudice** of Plaintiffs' claims for stacked coverage under the Corvette Policy. The parties have fully briefed this issue, all facts relevant to the analysis are presently before the Court, and it is ripe for decision as a matter of law. Although not dispositive of Plaintiffs' individual claims for damages under the GMC Policy, the *Martin* case provides a purely legal basis for adjudicating all other claims at issue in this case before the parties and

---

[3] Because determination of the choice of law issue could be dispositive of Plaintiffs' stacking claims and the putative class action, State Farm proposes that the Court also permit the parties to discover facts relevant to the choice of law issue during the first phase of limited discovery proposed *supra* Part II.A.

the Court are required to devote substantial time and resources to addressing the choice-of-law and putative class issues.

It is clear from the face of Plaintiffs' pleadings that their stacking and putative class claims invoke Florida law. (*See, e.g.,* 3d Am. Compl. ¶¶ 4, 17, 20-22). Although State Farm believes that Maine law properly applies to the Corvette Policy, Plaintiffs have not asserted any claim against State Farm under Maine law, and whether they could do so is not presently at issue. Instead, construing Plaintiffs' own pleadings in their favor and applying Florida law to the Corvette Policy, State Farm has moved to dismiss the stacking and putative class claims because the *Martin* court clearly determined that Fla. Stat. § 627.727 does not apply to antique automobile insurance policies like the Corvette Policy. The Court can (and should) resolve the issue presented by Plaintiffs' pleadings and State Farm's motion to dismiss the stacking and putative class claims—that is, whether such claims are viable under Florida law. This issues has been fully brief, is a purely legal question, is ripe for decision, and would not preclude a later analysis of whether Plaintiffs could state a claim against State Farm under Maine law. Therefore, for all of the reasons set forth in its briefs and further explained during oral argument on the motion to dismiss the Second Amended Class Action Complaint, all of which are hereby incorporated by reference as if set forth fully herein, State Farm renews its request that the Court dismiss Plaintiffs' individual claims for stacked UM coverage under the Corvette Policy, as well as the putative class claims, as inconsistent with the Florida law stating that "the requirements of section 627.727, Florida Statutes (Supp. 1992), . . . do not require a specialty insurance policy covering only an antique automobile with restricted highway usage to provide uninsured motorist coverage for accidents not

involving the antique." *Martin*, 670 So. 2d at 998.

## CONCLUSION

For the foregoing reasons, State Farm respectfully submits that: (1) the Third Amended Class Action Complaint presents sufficient factual allegations to support this Court's jurisdiction under CAFA; (2) it would be prudent and preferable for the Court to resolve the antique policy issue and/or Plaintiffs' individual claims with respect to the GMC Policy before addressing any other issues related to stacked coverage and the putative class action; and (3) this Court can determine that Maine law properly applies to the Corvette Policy under the *lex loci contractus* doctrine, but additional discovery is necessary to resolve whether the public policy exception warrants the application of Florida law to that policy.

Respectfully submitted this 19th day of September, 2011.

| | |
|---|---|
| | /s/ Cari K. Dawson |
| JOHN W. WEIHMULLER | CARI K. DAWSON* |
| Fla. Bar No. 0442577 | cari.dawson@alston.com |
| jweihmuller@butlerpappas.com | KYLE G.A. WALLACE* |
| BRIAN D. WEBB | kyle.wallace@alston.com |
| Fla. Bar No. 0073989 | ALLISON S. THOMPSON* |
| bwebb@butlerpappas.com | allison.thompson@alston.com |
| | *Admitted pro hac vice |
| BUTLER PAPPAS WEIHMULLER KATZ & CRAIG LLP | ALSTON & BIRD LLP |
| 777 S. Harbour Island Boulevard Suite 500 | 1201 West Peachtree Street |
| Tampa, Florida 33602 | Atlanta, Georgia 30309 |
| (813) 281-1900 | (404) 881-7000 |
| (813) 281-0900 (*Facsimile*) | (404) 881-7777 (*Facsimile*) |

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| METRY KELLY and EUGENIE KELLY, his wife, and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation,<br><br>　　　　Defendant. | Case No. 5:10-cv-194-TJC-GRJ |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the within and foregoing **DEFENDANT'S BRIEF IN RESPONSE TO QUESTIONS OF THE COURT** with the Clerk of Court using the CM/ECF system, which will send automatic email notification to:

> John Piccin, Esq.
> jp@piccinlawfirm.com
> PICCIN LAW FIRM
> Post Office Box 159
> Ocala, FL 34478
>
> Paul S. Rothstein, Esq.
> psr@rothsteinforjustice.com
> Zachary West, Esq.
> z.west@rothsteinforjustice.com
> 626 N.E. First St.
> Gainesville, FL 32601

　　This 19th day of September, 2011.

　　　　　　　　　　　　　　　　　　/s/ Allison S. Thompson
　　　　　　　　　　　　　　　　　　ALLISON S. THOMPSON